# UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF PENNSYLVANIA

LIBERTY RESOURCES, INC.; DISABLED
IN ACTION OF PENNSYLVANIA, INC;
PHILADELPHIA ADAPT; TONY BROOKS;
LIAM DOUGHERTY; FRAN FULTON; and
LOUIS OLIVO;

                Plaintiffs,

-against-

THE CITY OF PHILADELPHIA,

                Defendant.

Case No. 2:19-cv-03846

**BRIEF IN SUPPORT OF PLAINTIFFS'
MOTION FOR CLASS
CERTIFICATION**

Judge: Honorable Harvey Bartle III

# Table of Contents

I.    Introduction ................................................................................................. 1

II.   Statement of Facts ...................................................................................... 3

      A.   The City of Philadelphia Provides a Citywide Pedestrian Rights of Way Program
           with Widespread Barriers to Accessibility .................................................. 3

      B.   The City Has Not Taken Necessary Action to Address the Widespread
           Inaccessibility of its Pedestrian Rights of Way ........................................... 5

      C.   In 2014 the City Stopped Installing Curb Ramps at Corners Adjacent to Street
           Repaving and Resurfacing Projects in Direct Violation of Title II of the ADA and
           this Court's Judgment and Orders in *Kinney v. Yerusalim* ......................... 7

      D.   The City's Failure to Provide Accessible Pedestrian Rights of Way Harms People
           with Disabilities that Affect Their Mobility ................................................. 7

      E.   The City's Failure to Provide Accessible Rights of Way Frustrates the Mission of
           Liberty Resources, Disabled in Action of Pennsylvania, and Philadelphia-ADAPT
           and Causes them to Expend Resources to Address Such Discrimination ................ 10

III.  The Proposed Class ................................................................................. 13

IV.   Legal Argument ...................................................................................... 13

      A.   The Class Meets All of the Requirements of Rule 23(a) ......................... 13

           1.   The Class is so Numerous that Joinder Would be Impracticable .................. 13

           2.   There are Many Questions of Law and Fact Common to the Class, as Well as
                Common Answers to These Questions ........................................... 14

           3.   The Named Plaintiffs' Claims Are Typical of the Class ............................... 15

           4.   Named Plaintiffs and Their Counsel Will Fairly and Adequately Protect the
                Interests of the Proposed Class ................................................... 16

      B.   The Conditions of Rule 23(b)(2) Are Met ............................................. 17

V.    Conclusion .............................................................................................. 18

## Table of Authorities

**Cases**

*Anderson v. Pa. Dep't of Pub. Welfare,*
   1 F.Supp.2d 456 (E.D. Pa. 1998) ........................................ 13

*Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.,*
   211 F.R.D. 457 (S.D. Fla. 2002) ........................................ 14

*Baby Neal v. Casey,*
   43 F.3d 48 (3d Cir 1994) ........................................ 15, 16, 18

*Brooklyn Ctr. for Independence of the Disabled v. Bloomberg,*
   290 F.R.D. 409 (S.D.N.Y. 2012) ........................................ 14

*Californians for Disability Rights v. Cal. Dep't of Transp.,*
   249 F.R.D. 334 (N.D. Cal. 2008) ........................................ 2

*Johnston v. HBO Film Mgmt., Inc.,*
   265 F.3d 178 (3d Cir. 2001) ........................................ 16

*Kerrigan v. Phila. Bd. of Election,*
   248 F.R.D. 470 (E.D. Pa. 2008) ........................................ 13, 14, 15, 16

*Kinney v. Yerusalim,*
   812 F. Supp. 547 (E.D. Pa. 1993) ........................................ 7, 12

*Kinney v. Yerusalim,*
   Civ. No. 92-4101 (E.D. Pa. May 23, 1994) ........................................ 7

*Kirola v. City and Cnty. of S.F.,*
   860 F.3d 1164 (9th Cir. 2017) ........................................ 2

*Ochoa v. City of Long Beach,*
   No. 14 Civ. 4307, Dkt. No. 90 (C.D. Cal. Sept. 15, 2015) ........................................ 2

*Reynoldson v. City of Seattle,*
   Civ. No. 15 Civ. 1608, Dkt. No. 30 (W.D. Wash. May 2, 2016) ........................................ 2

*Taylor v. White,*
   132 F.R.D. 636 (E.D. Pa. 1990) ........................................ 14

*Westchester Indep. Living Ctr., Inc. v. State Univ. of N.Y., Purchase Coll.,*
   331 F.R.D. 279 (S.D.N.Y. 2019) ........................................ 2

*Willits v. City of L.A.*,
   No. 10 Civ. 5782, 2011 WL 7767305 (C.D. Cal. Jan. 3, 2011) ................................. 2

**Statutes**

Philadelphia Traffic Code, Section 12-913(1)(a)(ii)......................................................... 6

Philadelphia Traffic Code, Section 12-913(1)(a)(iv)........................................................ 6

Philadelphia Traffic Code, Section 12-913(1)(a)(x)......................................................... 6

Philadelphia Property Maintenance Code § 4-200.0, PM-302.3 .................................... 6

**Other Authorities**

U.S. Census Bureau, 2018 Am. Cmty. Survey 5-Year Estimates for Philadelphia,
   https://data.census.gov/cedsci/table?q=%20S1810&g=1600000US
   4260000&hidePreview=false&tid=ACSST5Y2018.S1810&vintage=2018. ........................... 14

**Rules**

Fed. R. Civ. P. 23(a) ........................................................................................................ 13

Fed. R. Civ. P. 23(b)(2)................................................................................................... 17

**Regulations**

28 C.F.R. § 35.151 ............................................................................................................ 3

**Table of Exhibits**

**Exhibits to Declaration of Kenneth Brown:**
- Exhibit A:  P000207
- Exhibit B:  P000208
- Exhibit C:  P000209
- Exhibit D:  P000210
- Exhibit E:  P000211

**Exhibits to Declaration of Liam Dougherty:**
- Exhibit A:  P000098-101

**Exhibits to Declaration of David Ferleger:**
- Exhibit A:  Resume of David Ferleger

**Exhibits to Declaration of Meredith J. Weaver:**
- Exhibit A:  Resume of Meredith J. Weaver
- Exhibit B:  Resume of Michelle A. Caiola
- Exhibit C:  Resume of Andrea Kozak-Oxnard
- Exhibit D:  P000117-119
- Exhibit E:  CITY0000377-389

## I.    INTRODUCTION

This case presents the kinds of systemic legal and factual issues for which the Rule 23 class certification procedure was intended. The Complaint alleges that the City of Philadelphia ("the City" or "Defendant") has systematically failed to comply with Title II of the Americans with Disabilities Act ("Title II" or "ADA") and Section 504 of the Rehabilitation Act of 1973 ("Section 504") by failing to provide a system of sidewalks that is accessible to individuals with disabilities that affect their mobility. These are broad anti-discrimination statutes that require public entities like the City to affirmatively conduct system-wide accessibility planning and to develop and effectively implement system-wide policies to ensure that its system of curb ramps, sidewalks, crosswalks, pedestrian crossings and other walkways ("pedestrian rights of way"), when viewed in its entirety, is readily accessible to, and usable by, persons with disabilities. These disability access laws also require municipalities to ensure that pedestrian facilities constructed or altered after the laws' effective dates are accessible to and usable by people with disabilities in accordance with specific technical standards.

The City has failed to comply with these basic, affirmative, and system-wide obligations, thereby impermissibly discriminating against the tens of thousands of residents and visitors with disabilities that affect their mobility. These failures have led to access barriers throughout the City. For example, many corners exhibit barriers such as curb ramps that are broken, steep, crumbling, or have missing or inadequate detectable warnings—a key feature that assists people who are blind or have low vision in identifying when the sidewalk ends in order to avoid inadvertently walking into vehicular lanes. Some corners are missing curb ramps altogether so that individuals who use wheelchairs are unable to utilize the sidewalk.

These barriers discriminate against all residents and visitors with disabilities that affect their mobility in the same manner—by denying them the freedom to travel safely and independently throughout the City's network of pedestrian rights of way to conduct their daily life activities. Moreover, the presence of these critical barriers has placed the City's residents and

visitors with disabilities at heightened risk of grave danger, which could lead to major injury or death.

Federal district courts routinely certify classes in cases such as this one, where plaintiffs allege that a City's systemic non-compliance with the requirements of federal disability access laws denies persons with disabilities access to public entities' pedestrian routes.[1] Furthermore, Plaintiffs are not aware of any case involving city-wide allegations of failure to provide and maintain accessible rights of way where class certification has been denied.

Determining the extent of Defendant's liability for its alleged failure to comply with federal disability access laws will necessarily involve numerous questions of fact and law that are common to the proposed class. These questions, in turn, will inherently generate common answers. Certification of the class is therefore the most efficient and desirable way to address these issues. Certification avoids duplicative litigation and the possibility of conflicting judgments.

Thus, in accordance with Federal Rule of Civil Procedure 23(a) and (b)(2), it is respectfully asserted that this Court should certify the proposed class of:

> "[A]ll persons with disabilities or impairments that affect their mobility—including, for example, people who use wheelchairs or other mobility devices, as well as those who are blind or have low vision—and who use or will use pedestrian rights of way in the City of Philadelphia." Complaint ¶ 100, Dkt. 1.

---

[1] *E.g. Kirola v. City and Cnty. of S.F.*, 860 F.3d 1164, 1164 (9th Cir. 2017) (noting class action certified by District Court below); *Westchester Indep. Living Ctr., Inc. v. State Univ. of N.Y., Purchase Coll.*, 331 F.R.D. 279, 301 (S.D.N.Y. 2019); *Ochoa v. City of Long Beach*, No. 14 Civ. 4307, Dkt. No. 90 (C.D. Cal. Sept. 15, 2015); *Willits v. City of L.A.*, No. 10 Civ. 5782, 2011 WL 7767305 at *5 (C.D. Cal. Jan. 3, 2011); *Californians for Disability Rights v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 350 (N.D. Cal. 2008) (granting certification of injunctive class). *See also Reynoldson v. City of Seattle*, Civ. No. 15 Civ. 1608, Dkt. No. 30 (W.D. Wash. May 2, 2016) (granting parties' stipulated motion to certify a similar class).

## II.    STATEMENT OF FACTS

### A.    The City of Philadelphia Provides a Citywide Pedestrian Rights of Way Program with Widespread Barriers to Accessibility

Philadelphia's pedestrian rights of way system, including sidewalks and curb ramps, is a public program, service, and/or activity provided for the benefit of the City's residents and visitors. Yet, sidewalks, curb ramps, crosswalks, and other paths of pedestrian travel throughout Philadelphia are in a shocking state of disrepair and disintegration. In 2014, the City's Streets Department recognized that some curb ramps it had installed after 1992 did not meet the 1991 Standards for Accessible Design[2] and estimated that nearly 72,000 curb ramps needed to be upgraded citywide. Declaration of Meredith J. Weaver ("Weaver Decl.") Ex. E at CITY0000377, CITY0000379, CITY0000383. In 2016, 2017, and 2018, the Streets Department upgraded a total of 2,452 ramps. Declaration of Liam Dougherty ("Dougherty Decl.") Ex. A at P000099.

In addition to the City's estimates regarding noncompliant curb ramps, Named Plaintiffs encounter diverse, significant barriers throughout Philadelphia's pedestrian rights of way. Plaintiff Tony Brooks lives in Philadelphia and uses a wheelchair for mobility because of a disability. Declaration of Tony Brooks ("Brooks Decl.") ¶¶ 2–3. Mr. Brooks has experienced extensive barriers along the sidewalks in Chinatown, where he must navigate over crumbling sidewalks, missing and uneven curb ramps, and sidewalks with excessive cross-slopes. *Id.* ¶¶ 10, 14. The sidewalks and curb ramps around his apartment are also uneven, severely deteriorating, and dangerous. *Id.* ¶¶ 7–9, 11. In addition, pedestrian right of way barriers in Northeast Philadelphia deter Mr. Brooks from visiting his family there as much as he would like. *Id.* ¶¶ 5, 15. Mr. Brooks frequently encounters non-structural barriers in the pedestrian right of way, including restaurant furniture, bikes, scooters, parked vehicles, debris, curb cuts under water, and piled snow blocking the pedestrian routes. *Id.* ¶¶ 16–20.

---

[2] Pursuant to the ADA, all curb ramps installed after January 26, 1992 are required to comply with the United Federal Accessibility Standards, the 1991 ADA Standards for Accessible Design, or the 2010 ADA Standards for Accessible Design, depending on the date of installation. 28 C.F.R. § 35.151.

Plaintiff Liam Dougherty lives in Philadelphia and uses a wheelchair for mobility because of a disability. Dougherty Decl. ¶ 2. Mr. Dougherty has encountered and continues to encounter significant structural barriers in the pedestrian right of way, such as narrow sidewalks, steep curb ramps, steep cross slopes, large cracks, and severely uneven pavement throughout Philadelphia, including near City Hall and Rittenhouse Square, and in the Chinatown, West Philadelphia, and Fairmount neighborhoods. *Id.* ¶¶ 5–15. Mr. Dougherty also encounters non-structural barriers in Philadelphia's pedestrian rights of way, such as vehicles parked in front of curb ramps and on the sidewalk, and snow piled on curb ramps after being shoveled off of other pedestrian routes. *Id.* ¶¶ 16–19.

Plaintiff Fran Fulton is blind and uses a white cane to navigate pedestrian routes. Declaration of Fran Fulton ("Fulton Decl.") ¶ 2. Ms. Fulton frequently encounters barriers such as uneven and broken sidewalks; dangerous curb ramps that are broken, steep, or lack tactile warnings (also known as truncated domes); and crosswalks with significant potholes and cracked pavement. *Id.* ¶¶ 4–19. She encounters such barriers throughout Philadelphia and especially in Center City, where she lives and engages in many activities. *Id.* ¶¶ 3, 6–18. Ms. Fulton also encounters locations where concrete has been poured to create a haphazard ramp from the curb to the street. *Id.* ¶ 17. These "fake" curb cuts, as Ms. Fulton calls them, are frequently uneven and steep. *Id.* In addition, Ms. Fulton frequently runs into restaurant furniture and signage protruding into the sidewalk, vehicles parked on sidewalks and in crosswalks, construction blockages, and tall snow pileups, all of which obstruct the paths of travel. *Id.* ¶¶ 20–25.

Plaintiff Louis Olivo uses a wheelchair for mobility because of a disability and has lived in Philadelphia for over 58 years. Declaration of Louis Olivo ("Olivo Decl.") ¶¶ 2–3. He encounters barriers in Philadelphia's pedestrian rights of way nearly every day as he tries to commute to work, visit family, volunteer, and run errands. *Id.* ¶ 3. Near his house, he passed a dangerous four-square-foot pothole in the middle of a crosswalk for over a year before it was filled. *Id.* ¶¶ 4–5. Mr. Olivo regularly encounters inadequate, dangerous, and missing curb ramps

in Center City, Northeast Philadelphia, and the Gray's Ferry area of South Philadelphia. *Id.* ¶¶ 9–15.

Orlando Acosta, Kenneth Brown, Caitlin Chasar, Latoya Maddox, and Germán Parodi, all of whom are members of the putative class, provide further evidence of the City's inaccessible and dangerous pedestrian rights of way program having experienced barriers that mirror those alleged by the Named Plaintiffs, including:

- Deteriorating, cracked, uplifted, and uneven sidewalks, crosswalks, and curb cuts (Declaration of Orlando Acosta ("Acosta Decl.") ¶¶ 4, 6–9, 19; Declaration of Kenneth Brown ("Brown Decl.") ¶¶ 6–9, 11, Exs. A–C; Declaration of Caitlin Chasar ("Chasar Decl.") ¶¶ 8–10, 13–14, 23; Declaration of Latoya Maddox ("Maddox Decl.") ¶¶ 21–23, 26, 28, 32; Declaration of Germán Parodi ("Parodi Decl.") ¶¶ 11, 16–18, 20);

- Curb cuts that are too steep, are cross-sloped, lack truncated domes, or pool with water (Acosta Decl. ¶¶ 10–11; Brown Decl. ¶¶ 11, 13; Chasar Decl. ¶¶ 8, 10, 13; Maddox Decl. ¶¶ 23, 29, 31–32, 38; Parodi Decl. ¶ 12);

- Missing curb cuts (Brown Decl. ¶ 10; Maddox Decl. ¶¶ 25, 30; Parodi Decl. ¶ 19);

- Obstacles such as restaurant furniture, signage, vehicles, and snow in the path of travel (Acosta Decl. ¶¶ 12–19; Brown Decl. ¶¶ 17–19; Chasar Decl. ¶¶ 16–17, 19–21; Maddox Decl. ¶¶ 33–34, 36–37; Parodi Decl. ¶ 13);

- A lack of temporary accessible pedestrian routes during construction (Acosta Decl. ¶¶ 20–22; Brown Decl. ¶¶ 20–22, Ex. E; Chasar Decl. ¶ 22; Maddox Decl. ¶¶ 27, 35; Parodi Decl. ¶ 14).

**B.    The City Has Not Taken Necessary Action to Address the Widespread Inaccessibility of its Pedestrian Rights of Way**

For decades, the City has disregarded its obligations under federal accessibility laws. Notably, despite the inaccessible state of its pedestrian rights of way, the City does not have a Transition Plan to bring this citywide program into compliance with Title II of the ADA or

5

Section 504 of the Rehabilitation Act. Weaver Decl. Ex. D at P000117, P000118 (response to item 3).[3] Since at least 2014, the City's main approach to pedestrian right of way accessibility improvements has been through its Curb Ramp Partnership Program and 3-1-1 programs, through which citizens may submit requests for remediation to accessibility barriers. However, the City appears not to complete requests for curb ramps where it determines the existing ramps are "safe" and thus not warranted for upgrade. *See* Dougherty Decl. ¶ 21, Ex. A at P00098, P00099 (Table 1 indicates that 71 requested ramp upgrades were "Not Warranted (Safe)"). In addition, the City allocates very little funding to these programs, resulting in the upgrade of only 2,452 curb ramps over the 2016, 2017, and 2018 fiscal years. *Id.* Furthermore, requests made through the ADA Ramp Partnership Program, 3-1-1, and the Streets Department have not been effective for obtaining remediation of barriers. Maddox Decl. ¶¶ 17–18, 36.

Furthermore, the City does not have adequate regulations and/or enforcement procedures to ensure accessibility of its pedestrian rights of way. For example, Philadelphia's Property Maintenance Code requires that "[a]ll sidewalks, walkways . . . and similar areas shall be kept in a proper state of repair, and maintained free from hazardous conditions," Philadelphia Code § 4-200.0, PM-302.3, yet the City does not have *any* records reflecting enforcement of this requirement from 2013 through 2018, and there is no monetary fine attached to notices that are issued thereunder. Weaver Decl. Ex. D at P000117, P000118 (response to item 2).

In addition, Philadelphia's Traffic Code prohibits stopping or parking vehicles on sidewalks and crosswalks or in a way that blocks a curb cut. Section 12-913(1)(a)(ii), (iv), (x). Yet these parking violations are rampant. *See* Acosta Decl. ¶¶ 12–14, 16; Brooks Decl. ¶ 17; Brown Decl. ¶¶ 17–19, Ex. D; Chasar Decl. ¶¶ 16–17, 19–20; Dougherty Decl. ¶¶ 16–18; Fulton

---

[3] In response to a request for "Any analysis or evaluation of the accessibility of pedestrian rights of way . . . in Philadelphia to individuals who use mobility devices [including] any transition plans created pursuant to Title II of the Americans with Disabilities Act and its implementing regulations and/or Section 504 of the Rehabilitation Act," the City stated that "[t]here are *no responsive records*," noting that "[t]he Philadelphia Department of Streets does not have records responsive to [this request]." Weaver Decl. Ex. D at P000117, P000118.

Decl. ¶¶ 20–21; Maddox Decl. ¶ 34; Olivo Decl. ¶ 16; Parodi Decl. ¶ 13. The City's regulations and/or enforcement related to restaurant furniture and signage placed in pedestrian rights of way, accessible paths of travel around construction zones, and snow removal are similarly inadequate. *See* Acosta Decl. ¶¶ 17–18, 20–22; Brooks Decl. ¶¶ 16, 18, 20; Brown Decl. ¶¶ 20–22; Chasar Decl. ¶¶ 21–22 Dougherty Decl. ¶¶ 6, 17–19; Declaration of Thomas Earle ("Earle Decl.") ¶¶ 11, 17; Fulton Decl. ¶¶ 20, 22–25; Maddox Decl. ¶¶ 26–27, 33; Olivo Decl. ¶ 17; Parodi Decl. ¶ 14.

C.    **In 2014 the City Stopped Installing Curb Ramps at Corners Adjacent to Street Repaving and Resurfacing Projects in Direct Violation of Title II of the ADA and this Court's Judgment and Orders in *Kinney v. Yerusalim***

In February 1993, this Court issued a class-wide injunction in *Kinney v. Yerusalim*, ordering that the City "shall install curb ramps or slopes on every City street, at any intersection having curbs or other barriers to access, where bids for resurfacing were let after January 26, 1992." 812 F. Supp. 547, 553 (E.D. Pa. 1993) (Hon. Harvey Bartle III), *aff'd*, 9 F.3d 1067 (3d Cir. 1993). The court supplemented its February 2, 1993 Order shortly thereafter, ordering that, "as [the City] resurfaces streets in the future, [it] shall install said curb ramps or slopes at the time the street is resurfaced." *Kinney v. Yerusalim*, Civ. No. 92-4101 (E.D. Pa. May 23, 1994). However, in 2014, the City's Streets Department discontinued ramp upgrades during repaving— blatantly flouting civil rights laws and the court's order—and transitioned to a fully request-based system called the "Curb Ramp Partnership Program." Weaver Decl. Ex. E at CITY0000380–384. At that time, the City estimated that nearly 72,000 curb ramps needed to be upgraded at $7,500 per ramp, but planned to dedicate only $3.2 million for ramp upgrades each year. *Id.* at CITY0000379, CITY0000381 Thus, it would take *almost 170 years* to upgrade the local network of curb ramps to ADA compliance under the "Curb Ramp Partnership Program."

D.    **The City's Failure to Provide Accessible Pedestrian Rights of Way Harms People with Disabilities that Affect Their Mobility**

The presence of access barriers throughout the City's pedestrian rights of way systemically denies persons with mobility disabilities access to basic civic services, including transportation, employment, medical care, cultural events and institutions, religious worship, and

social gatherings. Indeed, the first-hand accounts of Named Plaintiffs and class members indicate that they are continually forced to risk injury, damages to their mobility devices, anxiety, and delay trying to travel on or around the inaccessible system of pedestrian rights of way in the course of their daily activities. Acosta Decl. ¶¶ 4, 6–11, 13–15, 18–22; Brooks Decl. ¶¶ 4–19; Brown Decl. ¶¶ 6–13, 15, 17–18, 20–24; Chasar Decl. ¶¶ 7–11, 13–17, 19, 21–22; Dougherty Decl. ¶¶ 5, 7–9, 11–19; Earle Decl. ¶¶ 6–7, 9–11, 13–17, 19–21; Fulton Decl. ¶¶ 4, 6–11, 13–23; Maddox Decl. ¶¶ 8–9, 21–31, 33, 35–38; Olivo Decl. ¶¶ 3, 6–18; Parodi Decl. ¶¶ 9–20. Such pervasive barriers are not only impermissibly discriminatory for each class member who experiences them; they also give rise to a common set of experiences shared by all Plaintiffs who are forced to engage with these inaccessible rights of way in trying to conduct their daily lives.

For example, as a result of barriers in the pedestrian right of way, Mr. Brooks has experienced injuries and delay. He has flipped over in his wheelchair due to uneven sidewalks and curb ramps many times, causing head injuries, aching limbs, bruises, and scrapes. Brooks Decl. ¶¶ 4, 6–7, 11–12. In October 2018, Mr. Brooks encountered a curb ramp that was so steep that when he attempted to go up it, he flipped backwards in his chair, resulting in months of ongoing pain in his elbows. *Id.* ¶ 12. More recently, Mr. Brooks's chair flipped forward when it got stuck on a lip in an uneven sidewalk near his apartment, which broke his power assist device and caused him weeks of pain in his hands, wrists, and arms. *Id.* ¶ 7. The poor condition of the sidewalks on the blocks surrounding his apartment results in Mr. Brooks being forced to travel in the street to avoid barriers. *Id.* ¶ 9. This is dangerous, and Mr. Brooks is afraid that he could get seriously injured because drivers may not see him. *Id.* Barriers in the Chinatown area impede Mr. Brooks's ability to attend events at the convention center, go grocery shopping at local markets, and eat at restaurants. *Id.* ¶ 10.

Accessibility barriers in the pedestrian right of way have caused Mr. Dougherty to fall out of his mobility devices on multiple occasions. Dougherty Decl. ¶¶ 5, 7, 9, 11. On one such occasion he had to be taken by ambulance to a hospital where he received stitches for a cut on his forehead. *Id.* ¶ 11. More recently, Mr. Dougherty's power chair tipped over on its side when

he tried to traverse a part of the sidewalk that was very broken up and uneven with several holes. *Id.* ¶ 7. He broke the fall with his hands but could not right his approximately 250-pound chair from its side. *Id.* He was stranded for about 10 minutes until a stranger came by who could help him. *Id.* Mr. Dougherty feels lucky to have only suffered scrapes on that occasion. *Id.* In West Philadelphia, Mr. Dougherty encounters so many barriers in the pedestrian rights of way that he frequently is forced to travel in bike and traffic lanes to avoid them. *Id.* ¶ 8. Mr. Dougherty would like to visit the restaurants, coffee shops, and bars in the Fairmount area where he grew up, but is deterred from going there as often as he would like because of the poor state of the pedestrian rights of way in that neighborhood. *Id.* ¶ 15.

Ms. Fulton has lived in Philadelphia for 47 years and currently lives in the Center City neighborhood, but finds it increasingly frustrating to navigate the neighborhood due to the state of the sidewalks and the increasingly common protrusion of restaurant signs and furniture in the right of way. Fulton Decl. ¶¶ 3–4, 20. Uneven and broken sidewalks have caused her to fall countless times, resulting in sprained ankles, skinned knees, and multiple scars. *Id.* ¶ 7. Accessibility barriers in the pedestrian right of way impede her ability to travel efficiently in the city because she must go very slowly to traverse barriers and sometimes must turn around and take another path, especially when she encounters unannounced construction. *Id.* ¶¶ 6–25. Vehicles parked in crosswalks, on sidewalks, and in front of curb ramps force Ms. Fulton to move into the street to continue on the pedestrian route—an especially dangerous ordeal for Ms. Fulton as she cannot see hazards that await her in the road. *Id.* ¶¶ 20–21.

Accessibility barriers regularly interfere with Mr. Olivo's ability to visit family, work, volunteer and run errands. Olivo Decl. ¶¶ 5, 7, 9–15, 18. Missing curb cuts force Mr. Olivo to roll out of his way in order to travel from one sidewalk block to another. ¶ 15.

Other class members report similar harm resulting from the City's failure to provide accessible pedestrian rights of way. They are forced to travel very slowly or completely out of their way to avoid falling or getting stuck due to barriers, which has happened in the past to many of them. Acosta Decl. ¶¶ 4, 6–15; Brown Decl. ¶¶ 6–9, 11, 15, 17–22, Exs. A–C, Ex. E;

Chasar Decl. ¶¶ 8–16, 18–20, 22; Maddox Decl. ¶¶ 21–22, 28–31, 33, 35, 37–38; Parodi Decl. ¶¶ 16–20. Barriers in the pedestrian right of way force them to risk their safety by traveling in the street. Acosta Decl. ¶¶ 13, 21–22; Brown Decl. ¶¶ 17–21; Chasar Decl. ¶¶ 17, 21; Maddox Decl. ¶¶ 25–27; Parodi Decl. ¶ 13. And they avoid going to certain neighborhoods because the sidewalks and curb cuts are in such poor condition; and to new areas because they do not know whether they will be able to navigate the pedestrian rights of way when they get there. Brown Decl. ¶¶ 23–24; Chasar Decl. ¶¶ 7, 15; Maddox Decl. ¶¶ 23–24; Parodi Decl. ¶ 19.

### E.    The City's Failure to Provide Accessible Rights of Way Frustrates the Mission of Liberty Resources, Disabled in Action of Pennsylvania, and Philadelphia-ADAPT and Causes them to Expend Resources to Address Such Discrimination

Plaintiff Liberty Resources, Inc. ("Liberty Resources") is an independent living center located in Philadelphia that serves persons with disabilities throughout the city. Earle Decl. ¶ 2. Founded in 1980, Liberty Resources is a non-profit, consumer-controlled organization that advocates and promotes independent living for all persons with disabilities and serves more than 4,000 consumers in Philadelphia. *Id.* ¶ 3. The majority of Liberty Resources' board members and staff are persons with disabilities. *Id.* ¶ 4. Plaintiff Liberty Resources assists consumers with disabilities that affect their mobility who reside in, work in, and/or regularly travel to Philadelphia. *Id.* ¶ 6.

Liberty Resources also has many staff and board members who have disabilities that affect their mobility. Earle Decl. ¶¶ 12, 18. Liberty Resources' consumers, staff members, and board members have used, and will continue to use, Philadelphia's pedestrian rights of way but are impeded by the pervasive barriers. *Id.* ¶¶ 6–21. The City's failure to provide accessible pedestrian rights of way has caused Liberty Resources to dedicate staff time and organizational focus to evaluating and addressing barriers that limit access to pedestrian routes for its employees and consumers. *Id.* ¶¶ 22–28. For example, Liberty Resources has engaged in public advocacy with the City for many years on this issue through correspondence to and meetings

10

with City officials, providing testimony at City Council meetings, and submitting requests for barrier remediation on behalf of Liberty Resources' consumers. *Id.* ¶ 23.

Liberty Resources' consumers struggle to safely reach Liberty Resources' services and its advocacy and community events due to barriers in the City's pedestrian rights of way. Earle Decl. ¶ 7. Liberty Resources' consumers find it unduly difficult to travel safely around Philadelphia to get to meetings, medical appointments, and cultural activities, all of which Liberty Resources encourages as aspects of independent living. *Id.* ¶¶ 3, 6, 9–10, 13–16. Defendant's failure to design and maintain accessible sidewalks and pedestrian routes thus impairs Liberty Resources' mission. *Id.* ¶ 8. The City's failure to maintain accessible sidewalks following snow events also directly impacts Liberty Resources. *Id.* ¶ 17. Many of its staff members are prevented from traveling to work entirely due to the lack of snow removal from curb cuts. *Id.* This is also true for consumers who need to access Liberty Resources' services. *Id.* ¶ 11. On at least one occasion, after multiple unsuccessful attempts to secure the City's action to clear snow piled on curb cuts surrounding key transportation hubs downtown, Liberty Resources' staff members took it upon themselves to shovel the snow off of these curb cuts so that the organization's staff could get to work and its consumers could access important services. *Id.*

Plaintiff Disabled in Action of Pennsylvania, Inc. ("DIA-PA"), a non-profit corporation incorporated in the Commonwealth of Pennsylvania, is led by people with disabilities. Parodi Decl. ¶¶ 4, 5. DIA-PA is dedicated to advocating on behalf of the disability community. *Id.* ¶ 4, 6. DIA-PA's primary organizational function is to assist persons with disabilities in achieving equality with nondisabled persons and to advocate on behalf of and with persons with disabilities to eradicate discrimination against people with disabilities in all aspects of community life. *Id.* ¶ 7. Ensuring access to pedestrian rights of way is critical to DIA-PA's mission. *Id.* ¶ 8. In addition, DIA-PA's participants use and want to use the City's pedestrian right of way system and are harmed by the violations of law described in this Complaint. *Id.* ¶ 9. Plaintiff DIA-PA has been advocating for accessible pedestrian rights of way in Philadelphia for decades. *Id.*

11

¶¶ 21–23. Shortly after the passage of the ADA, DIA-PA brought litigation against the City to enforce its obligation to install curb ramps in conjunction with street resurfacing projects. *See Kinney v. Yerusalim*, 812 F. Supp. 547 (E.D. Pa. 1993).

Plaintiff Philadelphia ADAPT ("Philly ADAPT") is the local chapter of a national grass-roots community that organizes disability rights activists to ensure the civil and human rights of people with disabilities to live in freedom. Maddox Decl. ¶ 4. Access to the City's pedestrian right of way system is critical to Philly ADAPT's mission because it promotes freedom of movement and independence for individuals with disabilities. *Id.* ¶ 6. In addition, sidewalks are a prominent place for Philly ADAPT activists' public speech activities. *Id.* Philly ADAPT, and its organizers and activists are directly affected and harmed by the City's failure to provide accessible pedestrian rights of way. *Id.* ¶¶ 7–20.

Philly ADAPT and DIA-PA have partnered to engage City representatives in various capacities with the goal of securing greater accessibility throughout the City's pedestrian rights of way. Maddox Decl. ¶¶ 12, 14–16; Parodi Decl. ¶¶ 21–23. DIA-PA and Philly ADAPT have spent the past several years attempting to informally collaborate with the City to develop solutions to the critical condition of Philadelphia's pedestrian rights of way. Parodi Decl. ¶ 23; Maddox Decl. ¶¶ 12, 14–16. From 2009 through 2014, representatives of DIA-PA and Philly ADAPT met with City representatives on a regular basis to discuss the disability community's concerns, including the inaccessibility of Philadelphia's pedestrian rights of way. Parodi Decl. ¶ 22; Maddox Decl. ¶¶ 14, 15. Since 2014, DIA-PA and Philly ADAPT have continued to advocate for the City to prioritize accessibility in the pedestrian rights of way, including by providing testimony at city council meetings, engaging in discussions with Councilmember Helen Gym's office regarding the need for greater accessibility when construction temporarily blocks sidewalks, and advocating for the City to fill the City ADA Coordinator position that had been vacant since approximately 2000. Parodi Decl. ¶ 23; Maddox Decl. ¶¶ 16, 18–19.

## III.    THE PROPOSED CLASS

Consistent with Federal Rules of Civil Procedure 23(a) and 23(b)(2), Plaintiffs respectfully request that the Court certify a class consisting of all persons with disabilities or impairments that affect their mobility—including, for example, people who use wheelchairs or other mobility devices, as well as those who are blind or have low vision—and who use or will use pedestrian rights of way in the City of Philadelphia. Complaint ¶ 100, Dkt. 1.

Plaintiffs seek only injunctive and declaratory relief on behalf of the class. Plaintiffs do not seek monetary damages.

## IV.    LEGAL ARGUMENT

In accordance with Federal Rule of Civil Procedure 23(a), class certification is proper if: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). In addition, the proposed class must be certifiable under one of the three sub-provisions of Rule 23(b). Here, the proposed class meets all of the requirements of Rule 23(a) and is certifiable under Rule 23(b)(2).

### A.    The Class Meets All of the Requirements of Rule 23(a)

#### 1.    The Class is so Numerous that Joinder Would be Impracticable

The proposed class is so numerous that joinder of all members is impracticable. There is no number necessary to satisfy the numerosity requirement and the court may use common sense assumptions to support a finding of numerosity. *Kerrigan v. Phila. Bd. of Election*, 248 F.R.D. 470, 473–74 (E.D. Pa. 2008). Where the class numbers in the thousands, common sense dictates that the numerosity requirement has been satisfied. *Id.* at 474 (finding that plaintiffs' "good faith estimate" of the size of the class at nearly 3,000 individuals satisfied the numerosity requirement). "[S]tatistics tending to show that joinder would be impracticable may be sufficient to satisfy Rule 23(a)(1)." *Anderson v. Pa. Dep't of Pub. Welfare*, 1 F.Supp.2d 456, 461, 468 (E.D. Pa. 1998) (relying on nationwide census bureau statistics to extrapolate the approximate

size of the proposed class of individuals with mobility and vision impairments in southeastern Pennsylvania and granting class certification); *Taylor v. White*, 132 F.R.D. 636, 646–47, 649 (E.D. Pa. 1990) (rejecting defendants' argument that statistical evidence is insufficient and granting class certification); *see also Brooklyn Ctr. for Independence of the Disabled v. Bloomberg*, 290 F.R.D. 409, 413, 418 (S.D.N.Y. 2012) (granting class certification; determining numerosity by census estimate of the number of persons with disabilities in New York City); *Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 462–63 (S.D. Fla. 2002) (finding numerosity requirement satisfied by, *inter alia*, census figures in ADA action).

Here, U.S. Census data indicates that more than 143,000 non-institutionalized Philadelphia residents have an ambulatory difficulty and more than 49,000 non-institutionalized Philadelphians have a vision difficulty. U.S. Census Bureau, 2018 Am. Cmty. Survey 5-Year Estimates for Philadelphia, https://data.census.gov/cedsci/table?q=%20S1810&g=1600000US4260000&hidePreview=false&tid=ACSST5Y2018.S1810&vintage=2018. In addition, many thousands of persons with disabilities that affect mobility likely visit Philadelphia each year for tourism, business, and education. Accordingly, joinder is highly impracticable and class treatment is appropriate.

> 2.    There are Many Questions of Law and Fact Common to the Class, as Well as Common Answers to These Questions

There are questions of law or fact common to the proposed class. Federal Rule of Civil Procedure 23(a)(2) requires that there be "questions of law or fact common to the class." Commonality does not require an identity of claims or facts among class members but will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class. *Kerrigan*, 248 F.R.D. at 474. The instant case is a quintessential civil rights class action alleging systemic discrimination: Plaintiffs' claims rest upon a core set of failed policies and procedures that result in an overall failure to ensure the accessibility of the City's pedestrian rights of way program. These allegations raise legal and factual questions that affect

14

all persons with disabilities that affect their mobility throughout the city in the same way and are therefore capable of common answers.

Plaintiffs' claims give rise to numerous questions of law and fact, the answers to which will be applicable to the class as a whole, including:

(1)  Whether the City has failed to provide meaningful access to Philadelphia's pedestrian right of way program to persons with impairments that impact mobility in violation of Title II of the ADA and Section 504;

(2)  Whether Defendant's system-wide policies have resulted in its failure to provide compliant, accessible curb ramps whenever Defendant resurfaces or alters streets; and

(3)  Whether Defendant has failed to ensure that its sidewalk program is kept free of obstacles—including broken pavement, protruding objects, construction zones, and piled snow—impeding the access of people with disabilities that affect mobility throughout Philadelphia.

These common questions of law and fact depend on common contentions, which are not affected by the circumstances of any individual class member. Such questions are therefore capable of generating common answers and thus are appropriate for class-wide resolution. *Baby Neal v. Casey*, 43 F.3d 48, 56–57 (3d Cir 1994). Furthermore, Rule 23(b)(2) classes such as this, which seek injunctive relief, often by their very nature present common questions satisfying Rule 23(a)(2). *Kerrigan*, 248 F.R.D. at 474.

3.    The Named Plaintiffs' Claims Are Typical of the Class

Typicality is satisfied as long as there is a strong similarity of legal theories and the named plaintiffs do not have unique circumstances. *Id*. Factual differences will not render a claim atypical if the plaintiffs' and class members' claims arise from the same practice or course of conduct and are based on the same legal theory. *Baby Neal*, 43 F.3d at 58. Actions requesting

declaratory and injunctive relief to remedy conduct directed at the class "clearly fit this mold."
*Id.*

Here, Plaintiffs' claims and those of the class arise from the same policies, procedures,
and practices of the City and are based on the same legal theory. Similar to members of the
proposed class, Named Plaintiffs either have disabilities that affect their mobility, or represent
individuals with such disabilities. *See e.g.* Earle Decl. ¶¶ 2–5, 6, 12, 18; Parodi Decl. ¶¶ 2–7;
Maddox Decl. ¶¶ 4–5; Brooks Decl. ¶ 2; Dougherty Decl. ¶ 2; Fulton Decl. ¶ 2; Olivo Decl. ¶ 2.
Named Plaintiffs and members of the proposed class are routinely denied access to the City's
pedestrian routes as a result of Defendant's failure to provide an accessible pedestrian right of
way program. *See e.g.* Earle Decl. ¶¶ 6–21; Parodi Decl. ¶¶ 9–20; Maddox Decl. ¶¶ 7–38;
Brooks Decl. ¶¶ 4–20; Dougherty Decl. ¶¶ 5–19; Fulton Decl. ¶¶ 6–25; Olivo Decl. ¶¶ 5–18.
Named Plaintiffs also seek the same declaratory and injunctive relief on behalf of the whole
class. Complaint ¶¶ 137–40, Dkt. 1.

Because the Named Plaintiffs seek the same relief, rely on the same legal theories, and
experienced the same injuries as the rest of the class, their claims are typical of the class, and the
typicality requirement of Rule 23(a)(3) has been satisfied.

    4.    <u>Named Plaintiffs and Their Counsel Will Fairly and Adequately Protect
the Interests of the Proposed Class</u>

Named Plaintiffs and their counsel will fairly and adequately protect the interests of the
class. To assess adequacy of representation, the court determines (a) whether the plaintiffs'
interests conflict with those of the class, and (b) whether the plaintiffs' attorneys are capable of
representing the class. *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 185 (3d Cir. 2001).
Defendant has the burden of establishing that the representative plaintiffs will not adequately
represent the class. *Kerrigan*, 248 F.R.D. at 477.

Here, Named Plaintiffs will adequately protect the interests of the class because they are
each long time members of the local community, are deeply committed to improving access for
persons with disabilities, do not have any conflicts of interest with class members, and are

prepared to act vigorously to pursue relief for the whole class. *See*, Earle Decl. ¶¶ 2–3, 22–32; Parodi Decl. ¶¶ 2–4, 7–8, 24–27; Maddox Decl. ¶¶ 4–6, 11–20, 39–42; Brooks Decl. ¶¶ 3, 21–24; Dougherty Decl. ¶¶ 3–4, 20–26; Fulton Decl. ¶¶ 3, 26–29; Olivo Decl. ¶¶ 2–3, 20–23. Moreover, there is no conflict between the interests of the Named Plaintiffs and those of the other members of the class since they all seek the same relief—an injunction to require the City to take the affirmative steps necessary to ensure that its pedestrian rights of way program, when viewed in its entirety, is accessible and usable by persons with disabilities that affect their mobility. *See, e.g.*, Earle Decl. ¶¶ 31–32; Parodi Decl. ¶¶ 26–27; Maddox Decl. ¶ 41; Brooks Decl. ¶ 23; Dougherty Decl. ¶ 25; Fulton Decl. ¶ 28; Olivo Decl. ¶ 22. None of the Named Plaintiffs seek any individual compensation or damages of any kind. Complaint ¶¶ 136–40, Dkt. 1.

In addition, Plaintiffs' counsel also meet the requirements of Rule 23(g), and should therefore be appointed class counsel. Plaintiffs are represented by experienced and qualified counsel who are recognized experts in class action litigation and in the protection of the rights of persons with disabilities. See Weaver Decl. ¶¶ 4–13; Declaration of David Ferleger ("Ferleger Decl.") ¶¶ 2–11. Plaintiffs' counsel are thus well-qualified to litigate the class-wide claims of the Complaint and ably meet the adequacy standards of Rule 23(g). Counsel have done extensive work investigating the claims in this action and have more than sufficient resources to vigorously litigate this case. In addition, counsel does not have any conflicts of interest with class members. See Weaver Decl. ¶ 14; Ferleger Decl. ¶ 12. Thus, the adequacy requirement of Rule 23(a) is satisfied as to both Named Plaintiffs and Plaintiffs' Counsel.

## B.    The Conditions of Rule 23(b)(2) Are Met

The proposed class also meets the requirements of Rule 23(b)(2) because the City "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) "was designed specifically for civil rights cases seeking broad

declaratory or injunctive relief for a numerous and often unascertainable or amorphous class of persons." *Baby Neal*, 43 F.3d at 59 (internal quotation marks omitted). The requirements of Rule 23(b)(2) are "almost automatically satisfied in actions primarily seeking injunctive relief." *Id.* at 58.

Plaintiffs' Complaint seeks class-wide injunctive relief to remedy the City's discrimination against individuals with disabilities affecting mobility and certification is appropriate pursuant to Rule 23(b)(2). The claims brought in this case are precisely the type of claims that Rule 23(b)(2) was intended to cover. Here, Plaintiffs seek broad declaratory and injunctive relief—remediation, ongoing maintenance, and system-wide improvements in the City's pedestrian rights of way program—on behalf of a class of all persons with disabilities or impairments that affect their mobility and who use or will use pedestrian rights of way in the City of Philadelphia. Additionally, the Proposed Class seeks only class-wide injunctive relief to address the alleged deficiencies and does not seek any damages. Therefore, certification of the proposed class under Rule 23(b)(2) is proper. Additionally, because the claims of all class members are tied to the City's affirmative, program-wide obligations to improve the accessibility of its pedestrian rights of way, a failure to certify the class would result in duplicative claims and attendant risk of inconsistent judgments.

## V.    CONCLUSION

Accordingly, the Court should grant Named Plaintiffs' motion to certify the Class, appoint Named Plaintiffs the class representatives, and appoint David Ferleger and Disability Rights Advocates as Class Counsel.

Dated:  April 7, 2020            By: /s/ Meredith J. Weaver
                                     Meredith J. Weaver*
                                     CA Bar # 299328
                                     mweaver@dralegal.org
                                     DISABILITY RIGHTS ADVOCATES
                                     2001 Center Street, Fourth Floor
                                     Berkeley, CA 94704-1204
                                     Tel: (510) 665-8644

Fax: (510) 665-8511

David Ferleger
david@ferleger.com
DAVID FERLEGER LAW OFFICE
413 Johnson St.
Jenkintown, PA 19046
Tel: (215) 887-0123

Michelle Caiola*
mcaiola@dralegal.org
Andrea Kozak-Oxnard*
akozakoxnard@dralegal.org
DISABILITY RIGHTS ADVOCATES
655 Third Avenue, 14th Floor
New York, NY 10017-5621
Tel: (212) 644-8644
Fax: (212) 644-8636

*Attorneys for Plaintiffs*

*Admitted *Pro Hac Vice*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LIBERTY RESOURCES, INC, et al., <br><br>                 Plaintiffs, <br> v. <br><br> THE CITY OF PHILADELPHIA <br><br>                 Defendant | Case No. 2:19-cv-03846 <br><br> **CERTIFICATE OF SERVICE** |

I hereby certify that the foregoing **PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** is hereby filed electronically and available for viewing and downloading from the ECF system; and has been served on Defendant's counsel by ECF's electronic notification today, April 7, 2020.

By: /s/ Meredith J. Weaver
    Meredith J. Weaver*
    mweaver@dralegal.org
    DISABILITY RIGHTS ADVOCATES
    2001 Center Street, Fourth Floor
    Berkeley, CA 94704-1204
    Tel: (510) 665-8644
    Fax: (510) 665-8511