IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LIBERTY RESOURCES, INC., et al.   :         CIVIL ACTION
                                        :
         v.                           :
                                        :
CITY OF PHILADELPHIA            :         NO. 19-3846

MEMORANDUM

Bartle, J.                                      October 27, 2021

       This class action involves claims of pervasive disability discrimination concerning the installation, alteration, and maintenance of sidewalk curb ramps on Philadelphia streets.[1]

       Plaintiffs, a group of individuals with disabilities and disability advocacy organizations, have commenced this class action against the City of Philadelphia for violating Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131 et seq., and Section 504 of the Rehabilitation Act, 29 U.S.C. §§ 794 et seq. Plaintiffs request both declaratory and injunctive relief. They seek to compel the City to complete new construction and alteration to sidewalks and streets in a

---

1.   The court certified "a class of all persons with disabilities or impairments that affect their mobility-- including, for example, people who use wheelchairs or other mobility devices, as well as those who are blind or have low vision--and who use or will use pedestrian rights of way in the City of Philadelphia." Liberty Res., Inc. v. City of Philadelphia, Civ. A. No. 19-3846, 2020 WL 3816109, at *2 (E.D. Pa. July 7, 2020).

manner that fully complies with federal accessibility standards,
including the installation of ADA-compliant curb ramps and
upgrading of noncompliant curb ramps when resurfacing streets
under 28 C.F.R. § 35.151.  They also seek an order compelling
the City to maintain the accessibility of its existing
pedestrian rights-of-way under 28 C.F.R. § 35.133.[2]

       Before the court are cross-motions of the parties for
partial summary judgment under Rule 56 of the Federal Rules of
Civil Procedure.  Plaintiffs move for partial summary judgment
against the City "for its failure to comply with its obligations
. . . to install ADA-compliant curb ramps where they do not
already exist and upgrade non-compliant curb ramps, whenever it
repaves or resurfaces streets," as well as for its "failure to
maintain ADA-compliant and accessible curb ramps."  They clarify
that they only seek summary judgment at this juncture that "the
City's policies violated and continue to violate the law," and
"not an order that specific curb ramps or a specific number of
curb ramps violate the law."  Pls.' Reply Br. at 10, Doc. # 89.

---

2.   This court has previously dismissed plaintiffs' claims to
the extent they seek an injunction compelling the City to
prepare a Self-Evaluation under 28 C.F.R § 35.105, create a
Transition Plan under 28 C.F.R. § 35.150(d), and provide
"program access" to the pedestrian right-of-way by ensuring that
pedestrian infrastructure is readily accessible to persons with
disabilities and free from barriers such as snow, parked cars,
and other objects.  See Liberty Res., Inc. v. City of
Philadelphia, Civ. A. No. 19-3846, 2020 WL 3642484 (E.D. Pa.
July 6, 2020).

The City moves for partial summary judgment on plaintiffs' claims to the extent plaintiffs challenge the City's generalized policies on curb ramp installation rather than assert ADA violations at the specific locations plaintiffs have identified in discovery.  The City also moves for summary judgment with respect to any violation of the ADA that accrued beyond the two-year statute of limitations.[3]

I

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A dispute is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986).  The court views the facts and draws all inferences in favor of the nonmoving party.  See In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).

---

3.   The City also moved for summary judgment on plaintiffs' claims to the extent they intend to base liability on the curb ramps of streets outside of the City's jurisdiction, such as those under the jurisdiction of the Pennsylvania Department of Transportation.  The plaintiffs do not oppose this part of defendant's motion.

When briefing a motion for summary judgment and response, the parties must support each factual assertion or dispute with either a citation to the record or by showing that the materials cited do not establish the absence or the presence of a disputed fact.  Fed. R. Civ. P. 56(c)(1).  The court need consider only the materials cited by the parties in the summary judgment record.  Fed. R. Civ. P. 56(c)(3).  "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for the purposes of the motion."  Fed. R. Civ. P. 56(e)(2).  "Judges are not like pigs, hunting for truffles buried in briefs." United States v. Hoffecker, 530 F.3d 137, 162 (3d Cir. 2008) (internal quotations omitted).

II

Plaintiffs' claims are grounded in the ADA,[4] which provides in relevant part, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

---

4.   The court will consider the Rehabilitation Act claims together with the ADA claims because "the substantive standards for determining liability are the same."  McDonald v. Pa. Dep't of Pub. Welfare, 62 F.3d 92, 95 (3d Cir. 1995).

The ADA is implemented by regulations.  At issue are
two regulations that require installation and maintenance of
curb ramps.  First, since January 26, 1992, the ADA has imposed
certain duties on public entities to install curb ramps when
they construct or alter their streets:  "Newly constructed or
altered streets, roads, and highways must contain curb ramps or
other sloped areas at any intersection having curbs or other
barriers to entry from a street level pedestrian walkway."
28 C.F.R. § 35.151(i)(1).  A street is "altered" when it is
resurfaced.  Kinney, 812 F. Supp. at 552.  Thus, when a public
entity resurfaces a street, it must "design[] and
construct[ curb ramps] in such manner that [they are] readily
accessible to and usable by individuals with disabilities," but
only "to the maximum extent feasible."  § 35.151(a)(1), (b)(1).

Section 35.151(c) of the alteration regulation
supplies criteria for the design of accessible curb ramps which
vary depending on when the adjacent street was resurfaced.
Street alterations begun after January 26, 1992 but before March
15, 2012 must comply with either the Uniform Federal
Accessibility Standards or the 1991 ADA Standards for Accessible
Design.  Alterations begun between September 10, 2010 and March
15, 2012 can conform to either of those standards or to the
2010 ADA Standards for Accessible Design.  Alterations begun
after March 15, 2012, must comply with the 2010 standards.  The

regulation also authorizes "[d]epartures from particular

requirements . . . when it is clearly evident that equivalent

access to the facility or part of the facility is thereby

provided."  § 35.151(c)(1).

Distinct from the alteration regulation is an ADA

regulation that requires public entities to maintain curb ramps.

It provides, "A public entity shall maintain in operable working

condition those features of facilities and equipment that are

required to be readily accessible to and usable by persons with

disabilities by the Act or this part."  28 C.F.R. § 35.133(a).

The regulation does not "prohibit isolated or temporary

interruptions in service or access due to maintenance or

repairs."  § 35.133(b).

### III

Plaintiffs as noted above seek partial summary

judgment against the City for its policies on curb ramp

installation, alteration, and maintenance.  Plaintiffs first

rely on the undisputed history and policies of the City with

respect to the installation, alteration, and maintenance of curb

ramps on its more than 1,900 miles of streets within its

borders.

Nearly thirty years ago, at the inception of the ADA,

this court ordered the City to install sidewalk curb ramps at

intersections when it resurfaces the adjoining streets.  Kinney

v. Yerusalim, 812 F. Supp. 547, 553 (E.D. Pa.), aff'd, 9 F.3d

1067 (3d Cir. 1993); see also Kinney v. Yerusalim, Civ. A.

No. 92-4101 (E.D. Pa. May 23, 1994) (Doc. # 27).  It is

undisputed that after Kinney, the City began to install curb

ramps and thereafter replace deteriorating curb ramps at

pedestrian crossing points every time it resurfaced the

adjoining streets.  The City expanded this activity in 2008 to

include all curb ramps adjacent to resurfaced streets regardless

of the ramp condition.

     The City followed this practice until 2014, when it

started the "Curb Ramp Partnership Program."  Under that

program, the City stopped upgrading curb ramps during street

resurfacings as a matter of course.  Instead, the City visually

inspected and installed curb ramps only at locations where

citizens requested them.  The City earmarked twenty percent of

its annual street resurfacing budget, approximately

$3.2 million, for curb ramp installation.  At the time, the City

estimated that nearly 72,000 ramps needed to be upgraded at a

cost of $7,500 per ramp.  Plaintiffs calculate that at that rate

it would have taken almost 170 years for the City to upgrade

every curb ramp in its street network.  Since plaintiffs filed

this lawsuit, however, the City has revised its policy again and

reverted to installing curb ramps on streets with every

resurfacing.

Plaintiffs also cite the citywide aerial imagery conducted by the City in 2018 to compile data on the existence of curb ramps together with a spreadsheet created by the City with the dates on which each street segment was last resurfaced. Using this information, plaintiffs have identified specific intersections that are missing curb ramps where the City has resurfaced the adjacent street since 1993.  Plaintiffs calculate that 9,050 of the 21,063 curb ramp locations where streets were resurfaced between 2015 and 2019 are missing curb ramps.

Plaintiffs have enlisted two experts to study curb ramp conditions.  Plaintiffs' expert Josh Safdie surveyed forty-nine randomly selected intersections along streets resurfaced since 1993.  Safdie opines that 74.2% of curb ramp locations at these intersections do not comply with accessible design standards in one or more ways--for example, the cross slope of a curb ramp at Higbee and Reach Streets was too steep, and a ramp-to-street transition at Pennypack Street and Teal Avenue is not flush.  Plaintiffs also enlisted Robert Thomas as an expert to complete a similar survey on streets the City repaved from 2010 through 2014.  Thomas opines that 74.7% of those curb ramp sites were noncompliant for similar reasons.

The City has evidence disputing the plaintiffs' interpretation of and the inferences they draw from the data the City produced.  The City also has an accessibility expert,

-8-

Bill Hecker, who contests plaintiffs' experts.  Hecker opines

that Safdie and Thomas applied incorrect ADA standards, failed

to consider whether compliance is technically infeasible, and

discounted other factors such as construction tolerances.

Plaintiffs concede that determinations as to technical

infeasibility, equitable facilitation, and the applicability of

construction tolerances on which the City has the burden of

proof are appropriately left to the trial phase.  See Pls.'

Reply Br. at 11.  In sum, there exist genuine disputes of

material fact concerning whether specific curb ramps or the

absence of curb ramps at specific locations violate the ADA.

Plaintiffs as noted above seek only a declaration at

this juncture that the City's policies violated and continue to

violate the law and not an order related to specific curb ramp

violations.  As will be discussed in detail below, liability

against the City cannot be imputed based on its general policies

without reference to specific violations of the ADA.

Accordingly, the motion of plaintiffs for partial summary

judgment will be denied.

IV

The City first moves for summary judgment on

plaintiffs' claims under the alteration regulation, 28 U.S.C.

§ 35.151, to the extent plaintiffs challenge the City's general

policies on curb ramp alterations without references to specific

sites.  The City argues that for plaintiffs to obtain any relief
they must prove that specific intersections do not comply with
the applicable regulations concerning curb ramps.

The court agrees that § 35.151 requires site-specific
proof.  Plaintiffs must establish that the City has failed to
meet legal obligations as to specific curb ramps and cannot
simply show that its general policies do not conform to the
regulation.  Am. Council of Blind of N.Y., Inc. v. City of New
York, 495 F. Supp. 3d 211, 253 (S.D.N.Y. 2020).

A public entity's obligation to install curb ramps,
and the applicable design standard, varies depending on when the
adjoining street was altered or constructed.  See 28 C.F.R.
§ 35.151(c).  To prove that a curb ramp did not conform to the
relevant standard, the plaintiff must come forward with specific
evidence to that effect.  See Am. Council, 495 F. Supp. 3d at
253; Lonberg v. City of Riverside, Civ. A. No. 97-237, 2007 WL
2005177, at *4 (C.D. Cal. May 16, 2007).  In addition, § 35.151
affords public entities certain defenses, and the availability
of those defenses depends on site-specific factors such as
feasibility, which is measured by the "existing physical or site
constraints" at the "time of construction."  HIP Heightened
Indep. & Progress, Inc. v. Port Auth. of N.Y. & N.J., 693 F.3d
345, 353 (3d Cir. 2012) (citation omitted).  Section 35.151 also
provides for different design requirements for curb ramps

-10-

installed in different time periods.  Plaintiffs' general
allegations of citywide disability discrimination are simply
incompatible with the level of specificity that proving a
violation of § 35.151 requires.

Plaintiffs argue their generalized challenge to the
City's policies is sufficient under Kinney v. Yerusalim,
812 F. Supp. 547, 553 (E.D. Pa. 1993), aff'd, 9 F.3d 1067
(3d Cir. 1993).  Kinney is inapposite.  That action was
litigated in the early 1990s shortly after the ADA's passage.
At the time, the City simply was not building any curb ramps
when resurfacing streets.  812 F. Supp. at 549.  The issue in
Kinney was whether a street resurfacing is an "alteration" under
§ 35.151.  Id.  This court held that it is and ordered the City
to install curb ramps on street segments for which the City had
taken resurfacing bids since January 26, 1992, the effective
date of the ADA.  Id. at 553.  No one argued that specific
challenges were necessary since it was undisputed that no
streets then had curb ramps.

In sum, to prove violations of § 35.151, plaintiffs
must prove violations as to specific curb ramps at specific
intersections.  Accordingly, the court will grant the City's
motion for partial summary judgment to the extent that
plaintiffs seek to impute liability on the City without doing
so.  Insofar as that plaintiffs reference violations with

-11-

respect to specific curb ramps and specific intersections,

however, there are genuine disputes of material fact that must

be resolved at trial.

V

The City next moves to dismiss plaintiffs' alteration

claims to the extent that they are barred by a statute of

limitations.  Since the statute of limitations is an affirmative

defense, the City has the burden of proof to show that

plaintiffs' claims with respect to individual curb ramps are

time-barred.  See Ebbert v. DaimlerChrysler Corp., 319 F.3d 103,

108 (3d Cir. 2003).

The ADA has no statute of limitations.  Thus, the

court borrows one for a comparable state cause of action.

See, e.g., Disabled in Action of Pa. v. Se. Pa. Transp. Auth.

(DIA), 539 F.3d 199, 208 (3d Cir. 2008).  The parties agree

Pennsylvania's two-year statute of limitations for personal

injury claims applies here.  See 42 Pa. Const. Stat. § 5524.

The parties disagree, however, as to when plaintiffs'

claims accrued.  Although the court applies the state statute of

limitations to plaintiffs' ADA claims, federal law controls when

those claims accrue.  DIA, 539 F.3d at 209.  Congress may set an

accrual date for claims under a federal statute through express

language or "by implication from the structure and text of the

statute."  Id. (citation omitted).  When the accrual date is not

set by statute or by implication, the discovery rule applies by
default, that is, a claim accrues when the plaintiff "discovers
or, with due diligence should have discovered, the injury that
forms the basis for the claim."  Id. (citation omitted).

The City contends that plaintiffs' alteration claims
accrued at each intersection when the City last resurfaced the
street.  Plaintiffs counter that the discovery rule applies so
that the statute of limitations begins to run when any plaintiff
"knew or had reason to know of the dates of City alterations
that resulted in failure to install, remediate, or maintain any
particular curb ramps."  Alternatively, plaintiffs urge that
their claims are timely because the City's failure properly to
alter curb ramps comprises a continuing violation.

In DIA, our Court of Appeals held that claims over
alterations to public transit facilities accrue when
construction is completed.  539 F.3d at 209.  The Court
explained that under the text and structure of the relevant ADA
section, 42 U.S.C. § 12147(a), completion of the noncompliant
alteration constitutes the discriminatory act that starts the
clock ticking.  See 539 F.3d at 210-11.  Although the Court
analyzed the wording of § 12147 with its phrase "upon the

completion of . . . alterations,"[5] the Court explained it would

reject the discovery rule "even if [that] clause was absent from

the statute."  Id. at 211.  In reaching that conclusion, the

Court pointed out the absurd result that would occur if the

discovery rule were in place.  See id. at 216-17.  The Court

provided the following illustration:

> [A]n individual with a disability relocates
> to Philadelphia many years from now and
> attempts to use the 15th Street or City Hall
> Courtyard for the first time. A court might
> fairly conclude that this individual neither
> discovered, nor, having moved from some
> distant locale, should have discovered, the
> inaccessibility of these stations until his
> arrival there.

> Id. at 216.

If the discovery rule applied in that scenario, claims

related to facility alteration would accrue at different times

for different plaintiffs depending on when they discovered or

had reason to discover the violations.  To avoid the "danger" of

this "variable accrual date," the Court reasoned that the date

of completion supplied a "bright-line rule" that would be

---

5.   Section 12147(a) reads, "With respect to alterations of an
existing facility . . . used in the provision of designated
public transportation services . . . it shall be considered
discrimination, for purposes of section 12132 of this title
and section 794 of Title 29, for a public entity to fail to make
such alterations . . . in such a manner that, to the maximum
extent feasible, the altered portions of the facility are
readily accessible to and usable by individuals with
disabilities . . . upon the completion of such alterations."

fairest to plaintiffs and public entities alike.  See id. at
216-17.

Section 35.151(i)(1) provides that "[n]ewly
constructed or altered streets . . . must contain curb ramps."
Under the analysis of DIA, the discriminatory act therefore
occurs when a public entity finishes "alter[ing]" a street that
does not "contain curb ramps."  Accordingly, the court holds the
completion of the resurfacing of the adjoining street is the
date when plaintiffs' alteration claims accrued under § 35.151
with respect to each curb ramp.

Plaintiffs insist the analysis of DIA is limited to
claims under the ADA public transit facilities section, § 12147,
and that the discovery rule should apply to curb ramp alteration
claims under § 35.151 instead.  Plaintiffs are incorrect.  They
identify no meaningful difference between § 12147 and § 35.151.
To be sure, § 35.151 lacks the phrase "upon completion" and is
not termed in past tense, but these differences are not
essential to DIA's holding.  In accordance with DIA, an ADA
claim accrues on the date of the completion of the
discriminatory act, and the text, structure, and policy
considerations of the relevant ADA section help discern when
that discriminatory act accrues.

Applying DIA's accrual rule to curb ramp alteration
claims also vindicates the City's interest in repose.  The date

-15-

of completion is a fixed point in time by which the City can
predict its liability.  By contrast, under the discovery rule,
any pedestrian with a disability affecting mobility could first
learn of a noncompliant curb ramp decades after the alteration
took place.  Allowing such a suit is not in conformity with the
statute and implementing regulations.

In American Council of Blind of New York, Inc. v. City
Of New York, the court applied the completion date of an
alteration as the time when a § 35.151 claim accrues.
495 F. Supp. 3d 211, 243 (S.D.N.Y. 2020).  As with plaintiffs'
suit here, American Council involved widespread claims based on
obligations under the ADA triggered by street work.  The
plaintiffs in American Council sought a ruling that the City of
New York was liable for not installing accessible pedestrian
signals at intersections when it altered the intersection's
pedestrian crossings and traffic signals.  Like the Court in
DIA, American Council recognized that without a constant accrual
date, "public entities would never have 'the benefit of a
statute of repose' as they could be dragged into the courts
decades later for non-compliant alterations."  Id. (quoting
Forsee v. Metro. Transp. Auth., Civ. A. No. 19-4406, 2021 WL
1547468, at *9 (S.D.N.Y. Mar. 31, 2020)).

None of the cases plaintiffs cite persuades the court
that the discovery rule should apply here.  Cohn v. Pa. State

-16-

Univ., Civ. A. No. 19-2857, 2020 WL 738496 (E.D. Pa. Feb. 12,
2020), involved a university's educational programming, and not
any construction or alteration to the physical environment.  The
other two cases are unpersuasive because they endorse applying
the discovery rule when an individual discovers an alteration
years after its completion.  See Venus v. Seville Food, LLC,
Civ. A. No. 14-2476, 2017 WL 2364192, at *10 (D.N.J. May 31,
2017); Voices for Independence (VFI) v. Pa. Dep't of Transp.,
Civ. A. No. 06-78, 2007 WL 2905887, at *15 (W.D. Pa. Sept. 28,
2007).  For that reason, these cases are contrary to the
analysis of DIA.

        Plaintiffs alternatively contend the City's policies
on curb ramp upgrading and installation after street
resurfacings constitute a continuing violation.  The continuing
violation doctrine is a narrow "equitable exception to the
timely filing requirement".  Cowell v. Palmer Twp., 263 F.3d
286, 292 (3d Cir. 2001) (citation omitted).  Under this
doctrine, an action is timely "when a defendant's conduct is
part of a continuing practice" and "the last act evidencing the
continuing practice falls within the limitations period."  Id.
(quoting Brenner v. Local 514, United Bhd. of Carpenters &
Joiners of Am., 927 F.2d 1283, 1295 (3d Cir. 1991)).  A
continuing violation can be based only on "continual unlawful

acts, not continual ill effects from an original violation."
Id. at 293 (citation omitted).

Plaintiffs' argument is unavailing.  They identify
only the City's policies as a continuing violation but, as
explained above, they may sue the City only over specific
intersections.  In any event, the City's activities at each
intersection are "merely discrete acts" reflecting the
"individual effects" of the City's policies.  Am. Council,
495 F. Supp. 3d at 246 (citation omitted).  As other courts have
found, the continuing violation doctrine cannot be based on the
"purported continuing impact from the City's former policy of
installing curb ramp lips."  Kirola v. City & Cnty. of San
Francisco, Civ. A. No. 07-3685, 2021 WL 1334153, at *7 (N.D.
Cal. Mar. 12, 2021), appeal filed (9th Cir. April 5, 2021).

In its motion for partial summary judgment, the City,
which has the burden of proof, does not identify whether any
claims are time-barred at any specific curb ramps or
intersections.  The court will not forage for them through the
record like a "pig[], hunting for truffles." Hoffecker, 530 F.3d
at 162.  Thus, the City's motion for partial summary judgment
against plaintiffs' claims under § 35.151 on statute of
limitations grounds will be denied.  The City, of course, is not
precluded from producing relevant proof at trial.

VI

The City next moves for partial summary judgment on
plaintiffs' claims under the maintenance regulation, 28 C.F.R.
§ 35.133, to the extent they are time-barred.  As explained
above, an ADA claim accrues on the date of the discriminatory
act, and DIA instructs the court to review the relevant ADA
section to discern when that act occurs.  Section 35.133
requires public entities to "maintain in operable working
condition" its existing curb ramps save for "isolated or
temporary interruptions" to access.

The City argues that like plaintiffs' claims under
§ 35.151, a § 35.133 claim accrues two years after "maintenance
work completed" at the curb ramp.  Plaintiffs counter that their
§ 35.133 claims are timely because the regulation imposes an
"ongoing obligation" to maintain curb ramp accessibility that is
"not tied to the date of any construction or alteration of
accessible features."

The Court holds that a failure-to-maintain claim under
§ 35.133 accrues at each existing curb ramp each day that it is
in a noncompliant state.  Plaintiffs are correct that § 35.133
imposes an ongoing obligation on the City to maintain its
existing curb ramps in operable working condition.  Whereas a
claim against a public entity accrues as to a curb ramp under
§ 35.151 when it resurfaces a street, the duty to maintain an

-19-

existing curb ramp under § 35.133 is not tethered to any

specific event.  Practical reasons also demand this result:

while a street resurfacing is a discrete act, the failure to

maintain a curb ramp is not.  The failure to maintain a curb

ramp therefore is a continuing violation of the ADA.

Accordingly, the City's motion for partial summary judgment

against plaintiffs' § 35.133 claims on statute of limitations

grounds will be denied.