UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LIBERTY RESOURCES, INC.; DISABLED IN ACTION OF PENNSYLVANIA, INC; PHILADELPHIA ADAPT; TONY BROOKS; LIAM DOUGHERTY; FRAN FULTON; and LOUIS OLIVO,<br><br>               Plaintiffs,<br>-against-<br><br>THE CITY OF PHILADELPHIA,<br><br>               Defendant. | Case No. 19-cv-03846<br><br>**PLAINTIFFS' PRETRIAL MEMORANDUM**<br><br>Judge: Hon. Harvey Bartle III<br><br>Trial Pool Date: January 3, 2022 |

<u>**PLAINTIFFS' PRETRIAL MEMORANDUM**</u>

Plaintiffs Liberty Resources, Inc.; Disabled In Action of Pennsylvania, Inc.; Philadelphia ADAPT; Tony Brooks; Liam Dougherty; Fran Fulton; and Louis Olivo, by and through their attorneys, respectfully submit this Pretrial Memorandum pursuant to this Court's Order of November 10, 2021 (ECF No. 103), and Local Rule 16.1(c). Plaintiffs expressly reserve all rights to modify or supplement this Pretrial Memorandum until the time of trial if new information is made known.[1]

## I.   BRIEF STATEMENT OF THE NATURE OF THE ACTION AND THE BASIS ON WHICH THE JURISDICTION OF THE COURT IS INVOKED

This is a class action brought against the City of Philadelphia ("Defendant" or "City") on behalf of all persons with disabilities that affect their mobility—including, for example, people who use wheelchairs or other mobility devices, as well as those who are blind or have low vision—and who use or will use the pedestrian rights of way in the City of Philadelphia. While

---

[1] Because Plaintiffs are submitting their Pretrial Memorandum at the same time as the due date for Defendant's Pretrial Memorandum, Plaintiffs also reserve the right to supplement this Pretrial Memorandum to the extent relevant to counter Defendant's designations and to include any appropriate objections.

9.3% of Philadelphia's population has an "ambulatory difficulty," and 3.7% has a "vision difficulty" per the U.S. Census Bureau's 2019 American Community Survey,[2] the City's failure to install, remediate, and maintain curb ramps in violation of federal law precludes Class Members from accessing pedestrian routes throughout the city. Many curb ramps are broken, steep, crumbling, contain detectable warnings with hazards, or are missing altogether.  Plaintiffs will present evidence demonstrating that the City has implemented non-complaint street resurfacing policies at over 200 miles of City streets within the relevant statute of limitations period and that the City lacks an adequate curb ramp maintenance program. Both of these failures result in significant barriers to the safety and independence of class members – and Plaintiffs will present evidence of barriers at specific corners corroborating the inadequacy of the City's policies and practices. Such barriers hinder Class Members' ability to travel freely around the city, limiting their right to work, obtain education, socialize, volunteer, worship, seek medical access, and engage in civic life.

The Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504") are broad anti-discrimination statutes that require public entities like the City to install curb ramps in compliance with applicable accessibility standards[3] where alterations are performed at any intersection having curbs or other barriers to entry from a street level

---

[2] *Census – Table Results*, U.S. CENSUS BUREAU,
https://data.census.gov/cedsci/table?q=philadelphia%20disability&tid=ACSST1Y2019.S1810
(last visited December 4, 2021) (filter Place category to "Philadelphia city, Pennsylvania"); *see also Disability Glossary*, U.S. CENSUS BUREAU,
https://www.census.gov/topics/health/disability/about/glossary.html#par_textimage_952582087
(Nov. 21, 2021).
[3] Since the ADA was implemented, there have been three standards for accessible design: the Uniform Federal Accessibility Standards (UFAS), the 1991 Standards for Accessible Design (1991 Standards); and the 2010 ADA Standards for Accessible Design (2010 Standards). Curb ramps and other facilities altered or constructed after July 26, 1992 but prior to September 15, 2010, were required to comply with either UFAS or the 1991 Standards; those altered or constructed on or after September 15, 2010, and before March 15, 2012, could comply with any of the three standards; and those altered or constructed on or after March 15, 2012 must comply with the 2010 Standards. 28 C.F.R. § 35.151(c).

pedestrian walkway and to maintain those ramps thereafter including through policies providing for regular and effective maintenance.

Title II of the ADA, 42 U.S.C. § 12132, mandates that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." Section 504 provides in pertinent part: "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance." 29 U.S.C. § 794.

A violation of Title II is established when: (1) plaintiffs are "qualified individuals" with a disability; (2) defendant is subject to Title II; and (3) defendant discriminated against plaintiffs by reason of their disabilities. *Kinney v. Yerusalim*, 9 F.3d 1067, 1070–71 (3rd Cir. 1993); see also *Kerrigan v. Phila. Bd. of Election*, No. CV-07-687, 2008 WL 3562521, at *9–10 (E.D. Pa. Aug. 14, 2008). Claims brought under Section 504 are subject to the same framework. *Kinney*, 9 F.3d at 1070–71; *Kerrigan*, 2008 WL 3562521 at *9–10.

Unlawful discrimination by reason of disability includes a public entity's failure to ensure that when it constructs new facilities or alters existing facilities, the newly constructed or altered facilities (including curb ramps adjacent to street resurfacing projects) are made accessible to and usable by individuals with disabilities. 28 C.F.R. § 35.151(a), (b); *see* 42 U.S.C. § 12132; *Kinney*, 9 F.3d at 1073–74.

Since July 26, 1992, Title II's implementing regulations have specifically required public entities to install compliant curb ramps "at any intersection having curbs or other barriers to entry from a street level pedestrian walkway" whenever they newly construct or alter sidewalks, streets, roads, and/or highways. 28 C.F.R. § 35.151(i); *see also Kinney*, 9 F.3d at 1072; *Cohen v. City of Culver City*, 754 F.3d 690, 696 (9th Cir. 2014). A street resurfacing project by a public entity is an alteration triggering pedestrian route accessibility requirements under the meaning of the regulation. *Kinney*, 9 F.3d at 1073–74. The ADA's alteration requirement also mandates

3

remediation of existing curb ramps that, at the time of the relevant alteration, do not comply with the accessibility standards that were in place at the time the curb ramp was installed. *See* 28 C.F.R. § 35.151(a)(1), (b)(1), (c)(5) ("Newly constructed or altered facilities or elements covered by §§ 35.151(a) or (b) that were constructed or altered before March 15, 2012 ***and that do not comply with the 1991 Standards or with UFAS*** shall, on or after March 15, 2012, be made accessible in accordance with the 2010 Standards") (emphasis added).

For facilities constructed after 1992, "the regulations require compliance with specific architectural accessibility standards." *Tennessee v. Lane*, 541 U.S. 509, 532 (2004) (citing 28 CFR § 35.151); *see also Mote v. City of Chelsea*, 391 F. Supp. 3d 720, 742 (E.D. Mich. 2019) (holding that curb ramps constructed or renovated after 1992 must comply with ADA architectural standards). These standards were initially adopted by the U.S. Department of Justice in 1991 as the 1991 Standards for Accessible Design ("1991 Standards") and were updated in 2010 as the 2010 Standards for Accessible Design ("2010 Standards"). To be "readily accessible," "any part of a newly constructed or altered facility must be constructed in conformance with" the standards in place at the time the facility was newly constructed or altered. *Mote*, 391 F. Supp. 3d at 738–39.

Unlawful discrimination by reason of disability also includes a public entity's failure to maintain in operable working condition such facilities that are required to be accessible under the ADA—including curb ramps installed after 1992 and those that were required to be installed in conjunction with street resurfacing or other alterations. 28 C.F.R. §§ 35.133, 35.104; *see* 42 U.S.C. § 12132; *see also Cupolo v. Bay Area Rapid Transit*, 5 F. Supp. 2d 1078, 1083 (N.D. Cal. 1997) ("Accessibility features must be repaired promptly and the public entity must take reasonable steps to accommodate individuals with disabilities who would otherwise use a malfunctioning feature." (citing 49 C.F.R. § 37.161(b))). Facilities required to be accessible— and thus required to be maintained in accessible condition—include "roads, walks, and passageways." *See* 28 C.F.R. § 35.104.

Plaintiffs seek declaratory and injunctive relief for Defendant's systemic failure to comply with its obligations, under Title II of the ADA and Section 504, to:

(1) Install ADA-compliant curb ramps where they do not already exist at any intersection having curbs or other barriers to entry from a street level pedestrian walkway adjacent to streets altered, resurfaced or repaved on or after August 26, 2017, per 28 C.F.R. § 35.151;

(2) Remediate existing curb ramps that do not currently comply with the standards that were in place at the time of the ramp's original installation at any intersection adjacent to streets altered, resurfaced or repaved on or after August 26, 2017, per 28 C.F.R. § 35.151; and

(3) Maintain curb ramps to be readily accessible to and usable by Class Members, per 28 C.F.R. § 35.133.[4]

This Court has jurisdiction over claims arising under Title II and Section 504 pursuant to 28 U.S.C sections 1331 and 1343. This Court has jurisdiction to issue a declaratory judgment pursuant to 28 U.S.C sections 2201 and 2202.

## II.    BRIEF STATEMENT OF THE FACTS OF THE CASE

The evidence presented by Plaintiffs at trial will reflect that there are approximately 2,550 miles of streets within Philadelphia, made up by three main types of streets: Local Network streets, Federal Aid Municipal ("FAM") streets, and State routes. The Local Network makes up the majority of the City's streets, at about 1,900 miles, and the FAM network comprises roughly 300 miles of Philadelphia's streets. The evidence will show that the City exercises control over both Local Network and FAM streets, including through the allocation of funds and project coordination.

---

[4] This submission of the factual statement and the claims relevant to the upcoming trial does not include other claims which the court dismissed or limited in its pretrial orders in this case. Plaintiffs reserve their rights to seek revision of those orders under Fed. R. Civ. P. 54(b) or to challenge those orders post-trial.

Plaintiffs will show that Defendant has implemented policies and practices that fail to comply with the federal alteration requirements because it has explicitly omitted the installation or remediation of curb ramps in conjunction with street resurfacing from 2014 through 2019, has and continues to implement an incorrect interpretation of the ADA's safe harbor, and does not adequately assess the state of existing facilities when determining whether remediation is necessary. Plaintiffs will also demonstrate that Defendant does not provide for any systemic affirmative maintenance of existing curb ramps, in violation of the requirement that public entities maintain existing accessible features of their pedestrian rights of way.

Plaintiffs will present evidence demonstrating that Defendant conducted over 200 miles of resurfacing projects on Local Network and FAM streets under its legally deficient curb ramp policies within the relevant statute of limitations period. Plaintiffs will also present testimony at trial—paired with corroborating documentary evidence—demonstrating that specific curb ramp locations where Defendant conducted such resurfacing pursuant to the legally deficient policies within the applicable statute of limitations are not in compliance with the applicable accessibility standards. In addition, Plaintiffs will present testimony and documentary evidence showing specific locations where the City's failure to perform maintenance has resulted in access barriers.

Plaintiffs will demonstrate that missing curb ramps, steep ramps, broken concrete, lips and other inadequately constructed or maintained curb ramps cause Plaintiffs and members of the Class to tip over in their wheelchairs, to trip and fall, and to travel in the vehicular way to avoid the barriers and risk altogether.

Plaintiffs will further offer testimony and evidence from their architectural experts, Josh Safdie, Managing Principal of KMA, LLC, and Robert Thomas, Partner in Charge of Campbell Thomas & Co., regarding specific curb ramp locations that are non-compliant with the accessibility laws. Mr. Safdie and Mr. Thomas each surveyed and recorded measurements and observations at various intersections throughout Philadelphia, identifying non-compliant and missing curb ramps. Mr. Safdie will also testify regarding the City's best course of action for

development and implementation of an effective curb ramp monitoring and maintenance program.

### III. INFORMATION ADEQUATE TO FRAME AN ORDER GRANTING THE RELIEF SOUGHT

Plaintiffs seek the following remedies[5]:

1. A declaration of law per 28 U.S.C Sections 2201 and 2202, that Defendant has systemically failed to comply with its obligations, under Title II of the ADA and Section 504, to:

   a. Install ADA-compliant curb ramps where they do not already exist, at any intersection having curbs or other barriers to entry from a street level pedestrian walkway adjacent to streets altered, resurfaced or repaved on or after August 26, 2017, per 28 C.F.R. § 35.151;

   b. Remediate existing curb ramps that do not currently comply with the standards that were in place at the time of the ramp's original installation at any intersection adjacent to streets altered, resurfaced or repaved on or after August 26, 2017, per 28 C.F.R. § 35.151;

   c. Ensure that newly constructed or altered facilities (including curb ramps adjacent to street resurfacing projects) are made accessible to and usable by individuals with disabilities, per 28 C.F.R. § 35.151(a), (b); and

   d. Maintain curb ramps to be readily accessible to and useable by Class Members, per 28 C.F.R. § 35.133.

2. A court order and judgment for the following injunctive and other relief:

   a. Requiring Defendant to develop and implement a plan to remediate non-compliant curb ramps, for curb ramps adjacent to streets altered, resurfaced or repaved on or after August 26, 2017;

---

[5] *See supra* note 4.

b. Requiring Defendant to develop and implement a plan to install curb ramps, where they do not already exist, at any intersection with a street level pedestrian walkway adjacent to streets altered, resurfaced or repaved on or after August 26, 2017;

c. Requiring Defendant to develop and implement a plan to ensure that when it constructs or alters Local Network or FAM streets, the newly constructed or altered facilities (including curb ramps adjacent to street resurfacing projects) are made accessible to and usable by individuals with disabilities;

d. Requiring Defendant to develop and implement a plan to ensure that curb ramps under its jurisdiction are maintained, to provide full usability for persons with disabilities that affect mobility;

e. Requiring Defendant to develop and implement a plan to ensure that when it constructs or alters curb ramps the newly constructed or altered curb ramps comply with federal accessibility standards; and

3. An order for Plaintiffs' reasonable attorneys' fees and costs.

## IV. NAMES AND ADDRESSES OF ALL WITNESSES INTENDED TO BE CALLED AT TRIAL

Plaintiffs identify the following fact witnesses they intend to call or may call at trial.

Plaintiffs reserve their rights to cross-examine any witnesses called by Defendant at trial.

1. Thomas Earle, CEO of Liberty Resources, Inc., c/o Plaintiffs' counsel, 655 Third Avenue, Fourteenth Floor, New York, NY 10017[6];

2. German Parodi, President of the Board of Directors, Disabled In Action of Pennsylvania, c/o Plaintiffs' counsel;

3. Tony Brooks, c/o Plaintiffs' counsel;

4. Liam Dougherty, c/o Plaintiffs' counsel;

---

[6] This address applies for all references to Plaintiffs' counsel as contact for witnesses.

5.      Fran Fulton, c/o Plaintiffs' counsel;

6.      Louis Olivo, c/o Plaintiffs' counsel;

7.      Josh Safdie, Managing Principal, KMA, LLC, c/o Plaintiffs' counsel;

8.      Robert Thomas, Partner, Campbell Thomas & Company, c/o Plaintiffs' counsel;

9.      Andrew Schwarz, Partner, OSKR, c/o Plaintiffs' counsel;

10.     Michael Carroll, Deputy Managing Director for Transportation, Infrastructure & Sustainability, City of Philadelphia, c/o Defendant's counsel, 1515 Arch St., Philadelphia, PA 19102;[7]

11.     Nancy Sen, Director of Transportation Planning & Analysis, Streets Department, City of Philadelphia, c/o Defendant's counsel;

12.     Morgan Hugo, Recording Secretary, DIA-PA; Member, Philly ADAPT; Independent Living Specialist, Liberty Resources; c/o Plaintiffs' counsel;

13.     Kenneth Brown, c/o Plaintiffs' counsel;

14.     Hadley Yates, solely for the purpose of authenticating photographs, c/o Plaintiffs' counsel;

15.     Michelle McCandles, solely for the purpose of authenticating photographs, c/o Plaintiffs' counsel;

16.     Matthew Pillischer, solely for the purpose of authenticating photographs, c/o Plaintiffs' counsel;

17.     Sunil Gill, Engineering Manager, Transportation Planning and Analysis Unit, Streets Department, City of Philadelphia, c/o Defendant's counsel;

18.     Dan Call, Senior Lead GIS Analyst, Office of Innovation and Technology, City of Philadelphia, c/o Defendant's counsel;

19.     Bill Hecker, Principal, Hecker Design, LLC, c/o Defendant's counsel;

20.     S. Lynne Stokes, Ph.D., Professor, Department of Statistical Science at Southern Methodist University, c/o Defendant's counsel;

21.     Any and all witnesses identified or called by Defendant;

22.     Any impeachment and rebuttal witnesses as necessary;

---

[7] This address applies for all references to Defendant's counsel as contact for witnesses.

23. Any custodian of records necessary to authenticate documents.

## V.   SCHEDULE OF EXHIBITS TO BE OFFERED BY PLAINTIFFS AT TRIAL

A list of exhibits that Plaintiffs intend to offer at trial is attached hereto as Exhibit A. Plaintiffs reserve the right to use any exhibits identified by Defendant in its Pretrial Memorandum or otherwise. Plaintiffs further reserve the right to use any documents produced during discovery for the purposes of cross-examination or impeachment.

## VI.   ESTIMATE OF THE NUMBER OF DAYS REQUIRED FOR TRIAL

Plaintiffs estimate that five days will be required for their chief case in trial.

## VII.   SPECIAL COMMENTS REGARDING LEGAL ISSUES, STIPULATIONS, AMENDMENTS OF PLEADINGS, OR OTHER APPROPRIATE MATTERS

### A.   <u>Legal Issues</u>

Certain issues have been decided by the Court as a matter of law, as set forth in its Memorandum and Order dated October 27, 2021, regarding the parties' Motions for Partial Summary Judgment. (ECF No. 96).

Plaintiffs also provide the following comments regarding additional legal issues to help clarify the issues the Court will need to address at trial:

### 1.   <u>Jurisdiction for Federal Aid Municipal ("FAM") Streets</u>

Defendant has jurisdiction over local *and* FAM streets and is liable for curb ramps abutting these streets that are not in compliance with the ADA. According to the relevant regulations, "[e]ach facility or part of a facility ***constructed by, on behalf of, or for the use of*** a public entity shall be designed and constructed in such manner that the facility or part of the facility is readily accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.151(a)(1) (emphasis added); see also § 35.151(b)(1) (same for facilities "***altered by***, on behalf of, or for the use of") (emphasis added). Plaintiffs will present evidence at trial showing that FAM streets are constructed or altered by, on behalf of, and for the use of the City, that the City includes FAM street resurfacing in its Six-Year Capital Program plans and budgets, and that the City consistently refers to these streets as within "City Responsibility".

10

When a public entity decides to allocate funding for street alteration, it is required to alter the adjacent curb ramps to make them accessible for individuals with disabilities. *Kinney*, 9 F.3d at 1071, 1075; 28 C.F.R. § 35.151(b). The decision to undertake resurfacing is within the City's purview and control; the supplementary funds received by the City to support the network of FAM streets do not diminish the fact that the City exercises decision-making power over the FAM streets. As a result, when the City decides to make an alteration by resurfacing FAM streets, it is required to comply with the applicable accessibility standards.

2.  ADA Safe Harbor Provision

Defendant cannot rely on the safe harbor provision of the ADA as a defense to its failure to upgrade a curb ramp during street resurfacing if the curb ramp, ***at the time of the resurfacing***, did not comply with the corresponding technical and scoping ***specifications that were in effect at the time of the construction*** of the curb ramp. *See* 28 C.F.R. § 35.151(a)(1), (b)(1), (c)(5) ("Newly constructed or altered facilities or elements covered by §§ 35.151(a) or (b) that were constructed or altered before March 15, 2012 ***and that do not comply with the 1991 Standards or with UFAS*** shall, on or after March 15, 2012, be made accessible in accordance with the 2010 Standards") (emphasis added). *See also* 28 C.F.R. § 35.150(b)(2)(i).

The ADA's safe harbor provision provides that:

> Elements that have not been altered in existing facilities on or after March 15, 2012 and that ***comply*** with the corresponding technical and scoping specifications for those elements in either the 1991 Standards or in the Uniform Federal Accessibility Standards (UFAS) . . . are not required to be modified in order to comply with the requirements set forth in the 2010 Standards.

28 C.F.R. § 35.150(b)(2)(i) (emphasis added). The use of the present-tense verb "comply" in the regulation makes clear that the safe harbor is assessed based on the curb's ***current status*** at the time of resurfacing. A federal technical manual discussing the safe harbor provision also switches from past to present tense when discussing curb alterations, highlighting that the compliance with the historical standards must be measured at the time of the resurfacing:

11

> [I]f a curb ramp *was built or altered* prior to March 15, 2012, *and complies* with the requirements for curb ramps in either the 1991 ADA Standards . . . or UFAS, it does **not** have to be modified to comply with the requirements in the 2010 Standards.

*Supplement to the 2013 DOJ/DOT Joint Technical Assistance*, Information and Technical Assistance on the Americans with Disabilities Act (Dec 1, 2015), https://www.ada.gov/doj-fhwa-ta-supplement-2015.html (italics emphasis added; bold emphasis original). As such, the safe harbor provision applies only to facilities that were built prior to March 15, 2012, and *still* comply with the standards that were applicable at the time of construction. Accordingly, if a curb ramp has fallen out of compliance with either the 1991 Standards or the UFAS at the time the adjacent street is resurfaced, the ramp is required to be brought back into compliance. This is also consistent with the ADA's maintenance requirement.

       3.    <u>Exclusion of Technical Infeasibility Testimony by Defendant's Expert Bill Hecker</u>

"Under the Federal Rules of Evidence, a trial judge acts as a gatekeeper to ensure that any and all expert testimony or evidence is not only relevant, but also reliable." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008) (internal citations and quotation marks omitted). Whether the trier of fact is a judge or a jury, the Court must assess the admissibility of an expert's proposed testimony per Federal Rule of Evidence 702. *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 832-33 (3d Cir. 2020).

Should Defendant seek to elicit testimony from its architectural rebuttal[8] expert, Bill Hecker, regarding his opinion that compliance with ADA requirements for specific curb ramps was "technically infeasible", Plaintiffs intend to argue that the Court should exclude or strike such testimony. Mr. Hecker's opinion pertaining to technical infeasibility is not supported by a reliable methodology.

---

[8] Mr. Hecker was retained by Defendant solely for the purpose of conducting a "rebuttal analysis of the accessibility allegations, findings and opinions of the two architectural accessibility experts [,Joshua Safdie and Robert Thomas,] retained by the Plaintiffs in this matter." ECF No. 80-9 at 6.

When evaluating factors to consider in evaluating whether a particular methodology is reliable, the court may consider various criteria, including: (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put. *Pineda*, 520 F.3d at 247–48 (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (3d Cir. 1994)).

Ultimately, "[r]eliability requires that the testimony be based on the methods and procedures of science rather than on subjective belief or unsupported speculation." *Miller v. BGHA, Inc.*, No. 19 Civ. 1293 (HB), 2021 WL 2681277, at *2 (E.D. Pa. June 30, 2021) (quoting *Schneider ex rel. Est. of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003) (internal quotation marks omitted)). Mr. Hecker did not follow reliable methodology in opining that ADA compliance was technically infeasible. Under the ADA, "technically infeasible" means that alteration of a facility "has little likelihood of being accomplished because existing structural conditions would require removing or altering a load-bearing member which is an essential part of the structural frame; or because other existing physical or site constraints prohibit modification or addition of elements, spaces, or features which are in full and strict compliance with the minimum requirements for new construction and which are necessary to provide accessibility." ADAAG § 4.1.6(1)(j). The City carries the burden of demonstrating technical infeasibility. *Hip Heightened Indep. & Progress, Inc. v. Port Auth. of N.Y. & N.J.*, 693 F.3d 345, 353 (3d Cir. 2012); *see Kirola v. City & Cty. of San Francisco*, No. 07 Civ. 3685, 2021 WL 1334153, at *13 (N.D. Cal. Mar. 12, 2021) (finding the city failed to carry its burden of demonstrating technical infeasibility where its expert did not testify regarding constraints and the city did not address the plaintiffs' expert testimony regarding accessibility issues).

Instead of assessing technical infeasibility based on reliable methodology, Mr. Hecker's report set forth his subjective belief and unsupported speculations based solely upon visual observation of certain street corners surveyed by Plaintiffs' experts. For example, although Mr. Hecker opined that compliance with the ADA was "technically infeasible" because certain issues were "obvious," he conducted only visual observations of many curb ramps without taking any measurements and without reviewing the city's scope of work for the intersections observed. *See* Declaration of Rebecca J Sobie in Support of Plaintiffs' Pretrial Memorandum ("Sobie Decl."), Ex. B, Excerpts from the Deposition of Bill Hecker at 31:8–11; 40:11–41:12; 87:19–88:9; 95:13–16; 98:14–22.

Moreover, in opining that a limited public right of way rendered compliance technically infeasible, Mr. Hecker did not obtain information or consider records regarding public right of way lines, again determining that where the public right of way ended was instead "relatively obvious." *See Id.* at 73:17–74:11; 97:11–15. Critically, Mr. Hecker did not review any records related to the city's scope of work or the city's determinations of technical infeasibility because in his opinion the scope was "obvious" based on his observations. *See Id.* at 75:12–76:2; 76:6–17; 80:21–82:8; 92:12–93:4; 95:4–16; 97:6–10. Accordingly, Mr. Hecker's rebuttal opinions regarding technical infeasibility are not backed by a reliable methodology.

**B.** <u>**Stipulations**</u>

Plaintiffs have provided Defendant with proposed stipulations and are awaiting Defendant's response.

DATED:  December 13, 2021

Rebecca J Sobie*
rsobie@dralegal.org
(No NY Bar No., CA Bar No. 179562)
Rebecca Serbin*
rserbin@dralegal.org
DISABILITY RIGHTS ADVOCATES
655 Third Avenue, 14th Floor
New York, NY 10017-5621
Tel: (212) 644-8644

Meredith J. Weaver*
mweaver@dralegal.org
DISABILITY RIGHTS ADVOCATES
2001 Center Street, Fourth Floor
Berkeley, CA 94704-1204
Tel: (510) 665-8644

David Ferleger
david@ferleger.com
DAVID FERLEGER LAW OFFICE
413 Johnson St.
Jenkintown, PA 19046
Tel: (215) 887-0123

*Attorneys for Plaintiffs*

*Admitted *Pro Hac Vice*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LIBERTY RESOURCES, INC.; DISABLED IN ACTION OF PENNSYLVANIA, INC; PHILADELPHIA ADAPT; TONY BROOKS; LIAM DOUGHERTY; FRAN FULTON; and LOUIS OLIVO, <br><br> Plaintiffs, <br> -against- <br><br> THE CITY OF PHILADELPHIA, <br><br> Defendant. | No. 19-cv-03846 |

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing **PLAINTIFFS' PRETRIAL MEMORANDUM** is hereby

filed electronically and available for viewing and downloading from the ECF system; and has

been served on Defendant's counsel by ECF's electronic notification today, December 13, 2021.

*Rebecca J Sobie*
Rebecca J Sobie*
rsobie@dralegal.org
DISABILITY RIGHTS ADVOCATES
655 Third Avenue, 14th Floor
New York, NY 10017-5621
Tel: (212) 644-8644

*Attorney for Plaintiffs*

*Admitted Pro Hac Vice

# EXHIBIT A

**PLAINTIFFS' EXHIBIT LIST**[1]

| EXHIBIT NUMBER | DOCUMENT TITLE/DESCRIPTION | BATES NUMBERS (WHERE APPLICABLE) |
|---|---|---|
| P1 | City of Philadelphia's Answers to Plaintiffs' First Set of Interrogatories | |
| P2 | City of Philadelphia's Answers to Plaintiffs' Second Set of Interrogatories | |
| P3 | City of Philadelphia's Answers to Plaintiffs' First Set of Requests for Admissions | |
| P4 | City of Philadelphia's Responses to Plaintiffs' First Requests for Production of Documents | |
| P5 | Excel spreadsheet assessing ADA ramps (inspected 2013-2014) | CITY0000104 |
| P6 | Mayor's Office of Transportation and Utilities: Meeting Notes- Meeting with ADAPT, July 22, 2014 | CITY0000105–07 (Ex. 11 to Carroll Depo.) |
| P7 | Excel spreadsheets containing complaints about ADA accessible ramps | CITY0000108 |
| P8 | Multiple excel spreadsheets containing 311 service requests for ADA partner / ramps | CITY0000109 (Ex. 34 to Sen Depo.) |
| P9 | Multiple excel spreadsheets containing 311 service requests for ADA partner / ramps, and information re: previous inspections of ADAP | CITY0000110 |
| P10 | Multiple excel spreadsheets tracking special requests received | CITY0000111 |
| P11 | Streets Department Presentation dated March 11, 2013 | CITY0000119–28 |
| P12 | ADA Curb Ramp Partnership- June 16, 2014 Meeting | CITY0000370–76 (Ex. 9 to Carroll Depo.) |
| P13 | Email from Nancy Sen to Morgan Hugo and Daniel Lopez re: curb cut issues with response letter attached, July 10, 2018 | CITY0000410–12 (Ex. 31 to Sen Depo) |
| P14 | Email from Morgan Hugo to Steve Mottershead and Nancy Sen re: curb cut issues, April 4, 2018 | CITY0000436–41 |
| P15 | Email from Morgan Hugo to Steve Mottershead and Nancy Sen re: 2019 ADA Ramp Request and public availability, April 4, 2018 | CITY0000470–75 (Ex. 33 to Sen Depo.) |

---

[1] Plaintiffs reserve the right to use any documents on Defendants' exhibit list in their case in chief and to use documents not listed here for impeachment purposes. Plaintiffs do not waive any objections to the admissibility of the documents listed here.

| P16 | Philadelphia Complete Streets Design Handbook, 2017 | CITY0000730–893 |
|---|---|---|
| P17 | Excel spreadsheets containing 311 complaints about ADA accessible ramps- 2018 | CITY0000894 |
| P18 | ADA Technically Infeasible Form Instructions & Form | CITY0000924–25, CITY0000954–55 |
| P19 | District 6 Curb Ramp Design Form: CS-4401 | CITY000956–60 |
| P20 | Resurfacing Summary Reports | CITY0000963–68, CITY0000974–84, CITY0001180, CITY0001183–85, CITY0001746, CITY0006688, CITY0006695–97, CITY0006699 CITY0006704, CITY0006707, CITY0006709, CITY0006714–18, CITY0006723, CITY0006735, CITY0006740, CITY0006745, CITY0006749–50, CITY0006753–55, CITY0006758, CITY0006764–66, CITY0006768–70, CITY0006772–91 |
| P21 | Letter from Drexel University students to Philadelphia Streets Department re: Drexel's ADA Curb Ramp Analysis and list of 27 curbs marked high priority, May 7, 2015 | CITY0001177–78 (Ex. 40 to Sen Depo.) |
| P22 | Letter from PennDOT to City of Philadelphia re: "Americans with Disabilities Act: Policy and Design Guidance Publication 13M, Design Manual Part 2 (DM-2) Chapters 6, 7 and9, and Sidewalk Policy), November 14, 2008 | CITY0001759–61 (Ex. 27 to Sen Depo.) |
| P23 | Federal Aid Routes in Philadelphia | CITY0002336 |
| P24 | Email from Morgan Hugo to Nancy Sen, Charles Horton and Daniel Lopez re: curb cut issues, June 29, 2018 & attachments | CITY0002720–25 |
| P25 | Email chain with Nefertiri Sickout, Nancy Sen and Daniel Lopez re: meeting to discuss responding to Morgan Hugo's June 29 email with complaints, June to July 2018 | CITY0002749–2756 (Ex. 32 to Sen Depo.) |

| P26 | Email chain re: ramp installation at 9th and Arch, July 19, 2018 | CITY0003268–70 |
| P27 | Six-Year Capital Program for Fiscal Years 2016-2021 | CITY0003764-3906 |
| P28 | Six-Year Capital Program for Fiscal Years 2020-2025 | CITY0005117-5326 |
| P29 | Philadelphia Roadway Network Table, with email chain, May 6, 2020 | CITY0005327-CITY0005752 |
| P30 | Memorandum re cancellation of four public works bids for Milling & Casting Adjustment Prep, May 20, 2020 | CITY0005753–5760 (Ex. 23 to Carroll and Sen Depos.) |
| P31 | Streets Department Plan for 2020 Street Resurfacing and ADA Curb Ramp Upgrade and Installation Project | CITY0005927–5928 (Ex. 24 to Carroll, Sen and 30(b)(6) Depos.; Ex. F to Carroll Decl. iso Def's MPSJ) |
| P32 | ADA Ramp Inspection Tool for 2020 Paving Season- draft user guide, March 4, 2020 | CITY0005929–5934 |
| P33 | Ramp Inspection Checklist, May 29, 2020 | CITY0005935–5936 |
| P34 | Criteria for Banning Pedestrian Crossing at an Uncontrolled Intersection | CITY0005937–5938 |
| P35 | Excel spreadsheet including resurfacing data from January 1, 1993 to June 16, 2020 | CITY0005956 |
| P36 | City of Philadelphia, Department of Streets- Adding Detectible Strip Area STD, July 7, 2020 | CITY0006096 (Ex. 44 to 30(b)(6) Depo.) |
| P37 | "Overview of apps for contract development of ramps triggered by paving," November 9, 2020 | CITY0006126–6177 |
| P38 | Capital Budget: Philadelphia Streets Department, 11/1/20 | CITY0006188–6237 |
| P39 | ADA Ramp User Guide- Handling 311 Requests for ADA Ramps, June 21, 2012 | CITY0006358–6366 |
| P40 | Spreadsheet tracking monthly 311 curb requests for curb ramps, January to December 2019 | CITY0006370–6371 |
| P41 | Excel spreadsheet reflecting resurfacing data for select intersections | CITY0006792 |
| P42 | Email chain with Morgan Hugo, Nancy Sen, Steve Mottershead and others re: Curb Cut Issues, March-April 2018 | P000083–92 |
| P43 | Letter from Nefertiri Sickout to Liam Dougherty dated July 30, 2018 | P000098–101 |
| P44 | Email chain and images from Liam Dougherty to Daniel Lopez, Nolan Atkinson and Nefertiri Sickout re: City Services Meeting follow-up, June-August 2018 | P000102–108 |
| P45 | Photograph of 20th Street & Rodman Street | P000209 |

| P46 | Photographs of W. Columbia Avenue & N. 51st Street | P000217–218 |
| P47 | Photograph of S. Broad Street & Chestnut Street | P000252 |
| P48 | Photographs of Market Street & 63rd Street | P000258–66 |
| P49 | Photograph of S. Broad Street & Sansom Street | P000281 |
| P50 | Photographs of Crescentville Road & Adams Avenue | P000293, P000309, P000315 |
| P51 | Photograph of Market Street & S. 16th Street | P000523 |
| P52 | Email from Sunil Gill to Morgan Hugo re the sidewalk accessibility guidelines, August 2018 | P000567–570 |
| P53 | Email chain between Morgan Hugo and Charlotte Castle re: Vision Zero comments, July 14, 2017 | P000899–900 |
| P54 | Email chain between Morgan Hugo to Charles Horton re: ADA Curb Cuts, August 2016 | P000930–934 |
| P55 | Email chain between Morgan Hugo and Nancy Sen "RE: New Curb Cut to address", September 10, 2018-September 11, 2018 | P001115–17 |
| P56 | Photographs of 11th Street & Market Street | P001124–25 |
| P57 | Photograph of 7th & Clymer | P001131 |
| P58 | Photograph of 7th St. & Ionic St | P001340 |
| P59 | Video of 7th St. & Ionic St | P001341 |
| P60 | Email chain between Morgan Hugo and Nancy Sen re: Curb Cub Issues, March-April 2018 | P001366–68 |
| P61 | Email from Morgan Hugo to Rodney Whitmore re: Curb Cuts Submitted Recently, June 15, 2018 | P001384–1386 |
| P62 | Photograph of S. 3rd Street & Market Street | P001618 |
| P63 | Photograph of 17th Street & Ludlow Street | P001895 |
| P64 | Photograph of Walnut Street & Juniper Street | P001896 |
| P65 | Photographs of Adams Avenue & Horrocks Street | P001897–1900 |
| P66 | Photographs of Adams Avenue & Church Street | P001901–05 |
| P67 | Photographs of Bleigh Avenue & Pennway Street | P001906–07, P001910 |
| P68 | Photographs of Bleigh Avenue & Montour Street | P001911–15 |
| P69 | Photographs of Bleigh Avenue & Tabor Avenue | P001916–20 |
| P70 | Photographs of Bleigh Avenue & Bingham Street | P001921–25 |
| P71 | Photographs of Bleigh Avenue & Rising Sun Avenue | P001926–30 |
| P72 | Photographs of W. Montgomery Avenue & N. Lambert Street | P001931–32, P001935–39 |
| P73 | Photographs of W. Montgomery Avenue & N. 21st Street | P001940–44 |
| P74 | Photographs of W. Montgomery Avenue & N. Van Pelt Street | P001945–49 |
| P75 | Photographs of W. Montgomery Avenue & 22nd Street | P001950–54 |

| P76 | Photographs of W. Montgomery Avenue & Judson Street | P001955–59 |
| P77 | Photographs of W. Montgomery Avenue & N. 24th Street | P001960–64 |
| P78 | Photographs of W. Montgomery Avenue & Bambrey Street | P001965–69 |
| P79 | Photographs of S. 20th Street & Morris Street | P001975–79 |
| P80 | Photographs of S. 20th Street & Montrose Street | P000208, P001980–84 |
| P81 | Expert Report of Josh Safdie, and appendices and exhibits thereto | |
| P82 | KMA Curb Ramp Short Reports | KMA0078–89, KMA0096–104, KMA0110–114, KMA0125–130, KMA0150–156, KMA0161–170, KMA0175–186, KMA0188–191, KMA0197–205, KMA0206–259, KMA0276–291, KMA0301–313, KMA0324–370, KMA0375–382, KMA0387–403 |
| P83 | Expert Report of Robert Thomas, and appendices and exhibits thereto | |
| P84 | Expert Report of Andrew Schwarz, and appendices and exhibits thereto | |
| P85 | Expert Rebuttal Report of Bill Hecker, and appendices and exhibits thereto | |
| P86 | Expert Rebuttal Report of S. Lynne Stokes, Ph.D., and appendices and exhibits thereto | |