## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LIBERTY RESOURCES, INC.; DISABLED IN ACTION OF PENNSYLVANIA, INC; PHILADELPHIA ADAPT; TONY BROOKS; LIAM DOUGHERTY; FRAN FULTON; and LOUIS OLIVO;<br><br>                Plaintiffs,<br>-against-<br><br>THE CITY OF PHILADELPHIA,<br><br>                Defendant. | Case No. 2:19-cv-03846<br><br><br>**BRIEF IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT**<br><br><br>Judge: Honorable Harvey Bartle III |

**Table of Contents**

I.    Introduction ................................................................................................................ 1

II.   Statement of Facts .................................................................................................... 1

   A.   The Settlement Agreement .................................................................................... 1

   B.   Litigation History ................................................................................................... 4

      1.   This Case Was on the Eve of Trial When it Settled. .......................................... 4

      2.   The Parties Engaged in Three Rounds of Settlement Negotiations,
         Beginning Soon After the Case was Filed. ........................................................ 6

III.  Legal Argument ......................................................................................................... 7

   A.   The Settlement Class is Identical to the Class Previously Certified by the Court
      and Should Now be Certified for the Purpose of Settlement ................................ 7

   B.   Preliminary Approval of the Settlement Agreement is Proper ............................. 8

      1.   The Agreement Satisfies Rule 23(e)(2) ............................................................. 8

      2.   The Traditional Third Circuit Factors for Approval of a Class Settlement
         Agreement Are Also Met .................................................................................... 13

   C.   The Court Should Direct Distribution of the Notice of Settlement and
      Schedule a Fairness Hearing ................................................................................ 16

IV.   Conclusion ................................................................................................................. 19

## Table of Authorities

**Cases**

*Fulton-Green v. Accolade, Inc.*, No. CV 18-274,
 2019 WL 4677954 (E.D. Pa. Sept. 24, 2019) ........................................................... 13

*Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481 (3d Cir. 2017).................................... 8, 14

*In re Baby Products Antitrust Litigation*, 708 F.3d 163 (3d Cir. 2013) ....................... 14

*In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001)....................................... 14, 15

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,*
 148 F.3d 283 (3d Cir. 1998)................................................................................ 14, 16

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004)........................... 14

*Ripley v. Sunoco, Inc.*, 287 F.R.D. 300 (E.D. Pa. 2012)............................................... 16

*Sourovelis v. City of Philadelphia*, 515 F. Supp. 3d 343 (E.D. Pa. 2021) ................. 9, 14

**Statutes**

28 U.S.C. § 1715.......................................................................................................... 18

**Rules**

Fed. R. Civ. P. 23 ................................................................................................... passim

**Regulations**

28 C.F.R. § 35.133 ....................................................................................................... 11

28 C.F.R. § 35.151 ....................................................................................................... 11

## I.      INTRODUCTION

This civil rights class action lawsuit arises out of allegations concerning the compliance of the City's pedestrian facilities with federal accessibility laws. Plaintiffs Liberty Resources, Inc., Disabled in Action of Pennsylvania, Inc., Philadelphia ADAPT, Tony Brooks, Liam Dougherty, Fran Fulton, and Louis Olivo (collectively, "Named Plaintiffs") alleged that the City's pedestrian facilities contained barriers resulting in non-compliance in violation of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act. Defendant, the City of Philadelphia, (the "City") has and continues to deny Plaintiffs' allegations and to dispute that it has any liability or has committed any wrongdoing. On the eve of trial, after extensive fact and expert discovery and dispositive motion practice, Plaintiffs and the City (together with Named Plaintiffs, the "Parties") reached a settlement agreement (the "Agreement"), submitted herewith as Exhibit 1 to the Declaration of Meredith J. Weaver in Support of Joint Motion for Preliminary Approval (hereinafter "Weaver Decl."). The Agreement will achieve substantial long-term improvements to the City's pedestrian infrastructure through the installation and upgrade of curb ramps throughout the City of Philadelphia, enhancing access to jobs, schools, and community life for individuals with disabilities that affect their mobility.

For the reasons set forth below, the Agreement, which is the product of robust, arm's length negotiations and thorough litigation over more than three years, is fair, reasonable, and adequate, and merits preliminary approval. The Parties therefore jointly request that this Court (1) grant preliminary approval of the Agreement; (2) certify the Settlement Class; (3) approve the notice to be provided and the method for provision of such notice; and (4) issue an order setting deadlines for objections and scheduling a Fairness Hearing.

## II.     STATEMENT OF FACTS

### A.  **The Settlement Agreement**

The relief obtained by the Agreement will immediately impact the lives of Settlement Class members, who will be able to use thousands of newly installed and upgraded curb ramps within the first three years of the Settlement Period. *See generally*, Agreement; Declaration of

Latoya Maddox in Support of Joint Mot. for Preliminary Approval (hereinafter "Maddox Decl.") ¶¶ 6–10; Declaration of Liam Dougherty in Support of Joint Mot. for Preliminary Approval (hereinafter "Dougherty Decl.") ¶¶ 6–9; Declaration of Thomas H. Earle in Support of Joint Mot. for Preliminary Approval (hereinafter "Earle Decl.") ¶¶ 3–6; Declaration of Tony Brooks in Support of Joint Mot. for Preliminary Approval (hereinafter "Brooks Decl.") ¶¶ 4–9. Importantly, Settlement Class members will also be able to submit requests for the City to promptly address issues with curb ramps they encounter. Agreement § 5. This work will increase access to jobs, healthcare, education, and community life. Brooks Decl. ¶¶ 5–8; Earle Decl. ¶¶ 4–6; Maddox Decl. ¶¶ 6–9; Dougherty Decl. ¶ 6. The Agreement will become effective on the date that the Court issues final approval and will remain in effect for fifteen fiscal years (the "Settlement Period"). Agreement § 2. Over the Settlement Period, the City will Install[1] or Remediate at least 10,000 curb ramps (the "Curb Ramp Obligation"), with 2,000-ramp milestones every three fiscal years. *Id.* § 4. These tri-annual milestones are cumulative. *Id.*

Subject to limited exceptions, the City will meet the Curb Ramp Obligation through:

- Installing accessible curb ramps whenever the City (or a third-party acting on the City's behalf) newly constructs a road or street with a pedestrian walkway;

- Remediating existing but non-compliant curb-ramps, and/or Installing new accessible curb ramps whenever the City (or a third-party acting on the City's behalf) alters a road or street with a pedestrian walkway;

- Installing and Remediating up to fifty curb ramps each year in response to requests from Philadelphia residents; and

- Ensuring the compliance of curb ramps that are Installed or Remediated in the City by third parties.

---

[1] Capitalized terms not defined herein have the same meaning as ascribed to them in the Agreement.

*Id.* §§ 3–5. In addition to the City's general Maintenance of existing curb ramps so that they remain in operable working condition (*id.* § 3), the City will also enable Philadelphia residents to submit requests to Maintain up to 50 specific curb ramps each year, subject to limited exceptions. *Id.* § 5.

The Agreement also provides for transparent reporting, including an annual status report in which the City will provide information on the specific curb ramps Installed or Remediated in the previous fiscal year; the number and location of ramps the City plans to Install or Remediate; and the number, location, and basis of any banned pedestrian crossings. *Id.* § 6. Under the Agreement, the City will also ensure that personnel involved with curb ramp Installation, Remediation, or Maintenance are trained regarding such work and any relevant requirements under the Agreement, including accessibility laws regarding curb ramps. *Id.* § 7.

The Parties intend the Agreement to resolve any and all claims that either were or could have been asserted in this case on behalf of the Settlement Class based on the allegations in the Complaint (ECF No. 1), thus bringing finality to the City and avoiding the costs and uncertainty of future litigation. Accordingly, in exchange for the relief to be provided by the City, the Named Plaintiffs and/or Settlement Class will release the following claims against the Defendant:

- The Individual and Organizational Plaintiffs release any and all claims that relate to or arise from any of the City's alleged actions, omissions, incidents, or conduct under the ADA, Section 504, or similar statutes related to the Accessibility, Installation, Remediation, or Maintenance of the City's Pedestrian Facilities at any time prior to the end of the Settlement Period.

- The Settlement Class releases any claim for injunctive or declaratory relief that arises from any of the City's alleged actions, omissions, incidents, or conduct under the ADA, Section 504, or similar statutes related to the Accessibility, Installation, Remediation, or Maintenance of the City's Pedestrian Facilities, at any time prior to the end of the Settlement Period.

Agreement § 12. Importantly, this release does not include claims to enforce the Agreement or claims for money damages by members of the Settlement Class who are not Named Plaintiffs. *Id.*

Additional provisions of the Agreement include:

- That this Court retains jurisdiction for purposes of enforcement of the Agreement. *Id.* § 9.
- An inspection provision allowing Plaintiffs, Class Counsel, or a hired third party to inspect curb ramp work in order to monitor compliance. *Id.* § 10.
- The payment of Class Counsel's attorneys' fees and costs through the Effective Date of the Agreement in the amount of $1,100,000. *Id.* § 11.
- The payment of Class Counsel's reasonable attorneys' fees, expenses, and costs for work necessary to monitor, implement, and administer the Agreement, up to $60,000 every three years. *Id.*
- A dispute resolution process for disputes about the Agreement. *Id.* § 13.
- The process by which the Parties will request preliminary and final approval by the District Court, including the notice procedures described more fully below. *Id.* § 14.

Finally, that the Agreement constitutes the entirety of the settlement agreement between the Parties and cannot be amended, modified, or supplemented except by a written document approved by the Court. *Id.* § 17.

## B.  <u>Litigation History</u>

### 1.  <u>This Case Was on the Eve of Trial When it Settled.</u>

Plaintiffs filed this civil rights class action on August 26, 2019, seeking injunctive and declaratory relief on behalf of individuals with disabilities that impact their mobility who use pedestrian rights of way in Philadelphia, PA. ECF No. 1 (the "Complaint"). Plaintiffs alleged that the City fails to ensure meaningful access to its pedestrian rights of way; fails to install and

remediate curb ramps in conjunction with new construction and alterations; and fails to maintain

accessible features of pedestrian rights of way in violation of Title II of the Americans with

Disabilities Act ("Title II") and Section 504 of the Rehabilitation Act of 1973 ("Section 504").

*Id.* ¶¶ 109–135. The City vigorously disputed Plaintiffs' allegations and denied any liability or

wrongdoing arising out of the state of the City's pedestrian facilities.

In April 2020, Defendant filed a motion to dismiss portions of Plaintiffs' Complaint. ECF

No. 39. On July 6, 2020, the Court granted the City's motion and dismissed Plaintiffs' complaint

"to the extent that plaintiffs allege that failure of the City to maintain pedestrian rights of way

itself constitutes exclusion from participation in or denial of the benefits of services, programs,

or activities under [Title II], and Section 504" and "to the extent that plaintiffs allege a claim for

relief requiring the City to create Self-Evaluation and Transition Plans under 28 C.F.R.

§ 35.105(a) and 28 C.F.R. § 35.150(d)." ECF No. 50. Plaintiffs moved for an entry of judgment

on those claims to allow immediate appeal, which the Court denied. ECF Nos. 54, 59.

On July 7, 2020, the day after granting the City's motion to partially dismiss, this Court

granted Plaintiffs' unopposed motion to certify the case as a class action pursuant to Federal

Rule of Civil Procedure 23(a) and (b)(2). ECF Nos. 34, 36, 52; *see also* ECF No. 51. The

certified class is defined as "a class of all persons with disabilities or impairments that affect

their mobility – including, for example, people who use wheelchairs or other mobility devices, as

well as those who are blind or have low vision – and who use or will use pedestrian rights of way

in the City of Philadelphia." ECF No. 52 at 1. The Court appointed Liberty Resources, Inc.,

Disabled in Action of Pennsylvania, Inc., Philadelphia ADAPT, Tony Brooks, Liam Dougherty,

Fran Fulton, and Louis Olivo as class representatives. *Id.* Additionally, David Ferleger Law

Office and Disability Rights Advocates ("DRA") were appointed as class counsel (together,

"Class Counsel") pursuant to Rule 23(g). *Id.* at 2.

Following Defendant's Answer, ECF No. 60, the Parties conducted factual discovery

through March 2021, including substantial document production and depositions of key

witnesses. Fact discovery resulted in the production of over 7,000 pages of documents by the

City and almost 2,000 pages of documents by Plaintiffs. The Parties then engaged in expert discovery, and by the end of June 2021, had exchanged expert reports and deposed each other's testifying experts. Weaver Decl. ¶¶ 18, 21.

In July 2021, the Parties filed cross-motions for partial summary judgment. *See* ECF Nos. 79, 80. On October 27, 2021, the Court denied Plaintiffs' motion and denied in part and granted in part Defendant's motion. ECF No. 96. The Parties then quickly began preparing for trial which was scheduled to begin on February 2, 2022. ECF No. 108; *see also*, ECF No. 112. Trial preparations were in full swing when the Parties filed a joint request to stay the case for settlement discussions on January 19, 2022. ECF No. 115. At the time of the stay, the Parties had already exchanged pre-trial disclosures and objections, filed pretrial memoranda, and each filed a motion *in limine*, thus the Parties and their counsel had a significant understanding of the evidence at issue as well as the risks and benefits of continuing the litigation through trial. *See* ECF Nos. 106, 107, 109, 113; Weaver Decl. ¶ 24.

2. The Parties Engaged in Three Rounds of Settlement Negotiations, Beginning Soon After the Case was Filed.

At the request of the Parties, in November 2019, the Court placed this case in Civil Suspense for 90 days and referred it to Magistrate Judge Elizabeth T. Hey for settlement discussions. ECF Nos. 14, 15. During early negotiations, the Parties conferred without the Magistrate Judge's assistance regarding potential settlement, voluntarily exchanged documents relevant to the Parties' positions, exchanged settlement term proposals, and then held an in-person settlement conference with Judge Hey on February 4, 2020. ECF Nos. 23, 24; *see also* Weaver Decl. ¶¶ 14–17. The Parties were unable to settle during this 90-day period, so active litigation commenced. *See* ECF Nos. 27, 28.

From September 2020 through March 2021 the Parties engaged in a second round of settlement discussions with the assistance of Magistrate Judge Hey. *See* ECF Nos. 65, 67, 68, 71, 72, 74; Weaver Decl. ¶ 19. During this time, the Parties exchanged at least eight drafts of settlement term sheets and agreement proposals, met regularly to discuss these proposals, and

held two settlement conferences with Magistrate Judge Hey. Weaver Decl. ¶ 19; ECF Nos. 67, 74. At the end of March 2021, the Parties were again at an impasse and Plaintiffs terminated negotiations in order to focus resources on expert discovery and dispositive motion briefing. Weaver Decl. ¶ 20.

In October 2021, after this Court's rulings on the Parties' cross-motions for summary judgment, negotiations resumed. Weaver Decl. ¶ 22. Just two weeks prior to the start of trial, on January 19, 2022, the Parties jointly moved to stay the trial for settlement discussions, which the Court granted. ECF Nos. 115, 116. The Parties focused solely on settlement discussions for the next six months, including exchanging numerous drafts of settlement term sheets and agreement proposals, meeting via Zoom to discuss settlement provisions, and engaging Magistrate Judge Hey to assist with finalizing the terms of the Agreement. *See* ECF Nos. 119, 121, 125, 128, 130, 131; Weaver Decl. ¶¶ 25–26, 32–34.

The Parties negotiated and finalized all substantive terms of the Agreement before negotiation of attorneys' fees and costs began. Weaver Decl. ¶¶ 26, 28. The resulting settlement will significantly improve access to the City of Philadelphia for individuals with mobility disabilities.

## III.    LEGAL ARGUMENT

### A.    <u>The Settlement Class is Identical to the Class Previously Certified by the Court and Should Now be Certified for the Purpose of Settlement</u>

In July 2020, the Court certified "a class of all persons with disabilities or impairments that affect their mobility – including, for example, people who use wheelchairs or other mobility devices, as well as those who are blind or have low vision – and who use or will use pedestrian rights of way in the City of Philadelphia" pursuant to Fed. R. Civ. P. 23(a) and (b)(2). ECF No. 52; *see also* ECF No. 51. The Court appointed the Named Plaintiffs as class representatives and appointed DRA and David Ferleger Law Office as class counsel. *Id.*

The Settlement Class is identical to the class previously certified by the Court. Agreement § 14.3. The breadth of the Settlement Class is congruent with the breadth of the

7

settlement as the Agreement did not carve out any portion of the class previously certified by the Court. The Parties contend there is no reason to revisit the certified class definition and respectfully request that the Court maintain the original certified class as the Settlement Class, appoint the Named Plaintiffs as class representatives for the Settlement Class, and appoint Class Counsel to represent the Settlement Class for substantially the same reasons as the Court previously found.

### B. <u>Preliminary Approval of the Settlement Agreement is Proper</u>

Before granting preliminary approval of a settlement of a class action, a court must make a finding that the settlement at issue is "fair, reasonable, and adequate." *Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 488 (3d Cir. 2017) (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 316 (3d Cir. 1998)); *see also* Fed. R. Civ. P. 23(e)(2). The decision to approve a settlement agreement is "left to the sound discretion of the district court." *Halley*, 861 F.3d at 488 (quoting *In re Prudential*, 148 F.3d at 299). Here, the Agreement is fair, reasonable, and adequate because it satisfies the considerations outlined in Federal Rule of Civil Procedure 23(e)(2) as well as the additional factors used by courts in this Circuit to assess class action settlements.

### 1. <u>The Agreement Satisfies Rule 23(e)(2)</u>

Federal Rule of Civil Procedure 23(e)(2) requires the Court to consider the following factors to determine whether a proposed class settlement is fair, reasonable, and adequate:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i)   the costs, risks, and delay of trial and appeal;
>> (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv)  any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). When considering preliminary approval of a settlement agreement, the Court must find that it "will *likely* be able to [] approve the proposal under Rule 23(e)(2)." *Id.* 23(e)(1)(B) (emphasis added).

"These [Rule 23(e)(2)] factors are in many respects a codification of various factors set forth in *Girsh* [*v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)], which the Third Circuit has directed courts to use in establishing the fairness of a class action settlement." *Sourovelis v. City of Philadelphia*, 515 F. Supp. 3d 343, 355 (E.D. Pa. 2021). However, when these factors were added to Rule 23 in 2018, the Advisory Committee noted that "[t]he goal of this amendment is not to displace any factor [outlined by a Circuit Court], but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2), advisory committee's note (Dec. 1, 2018). Accordingly, the Parties focus first on the Rule 23(e)(2) factors, all of which support preliminary approval.

### a. The Class Representatives and Class Counsel Competently Represented the Class. Fed R. Civ. P. 23(e)(2)(A).

This factor addresses "the actual performance of counsel acting on behalf of the class." Fed. R. Civ. P. 23(e)(2), advisory committee's note (Dec. 1, 2018). When appointing Class Counsel in July 2020, the Court recognized that the class is "represented by counsel with significant experience in class action and disability-rights litigation and knowledge of those areas of law. Counsel have done extensive work investigating the claims in this action." ECF No. 51 at 10. The Court's assessment of Class Counsel's qualifications holds true today. *Compare* ECF Nos. 34-12, 34-13 *with* Weaver Decl. ¶¶ 36–48. The Court also found that the class representatives' interests did not conflict with the interests of potential class members as they are "longtime residents of Philadelphia who are deeply committed to improving access for themselves and others with disabilities in the City." ECF No. 51 at 8. The same class representatives, who have remained engaged in this case, now seek preliminary approval of the Agreement.

Since the Court's decision certifying the class, Class Counsel, together with the class representatives, have continued to work diligently to litigate this case, up to and including rulings on multiple dispositive motions and preparation for trial. Weaver Decl. ¶¶ 18–24. Class Counsel and the class representatives were thus able to fully evaluate the strengths and weaknesses of the claims and defenses before reaching the proposed settlement agreement presented to the Court today. *Id.* ¶¶ 5–10. Class Counsel are also prepared to provide notice to the Settlement Class in accordance with the Notice of Proposed Settlement of Class Action Lawsuit, attached as Exhibit E to the Agreement (hereinafter "Notice of Settlement"), and monitor the Agreement over the full fifteen-year Settlement Period. Weaver Decl. ¶¶ 12–13, 41. Thus, this factor supports preliminary approval.

> b. *The Agreement was Negotiated at Arm's Length Over the Course of This Multi-Year Litigation. Fed. R. Civ. P. 23(e)(2)(B).*

As outlined above, the settlement process was extensive, involved, and conducted at arm's length from the very beginning of this case in 2019. Over the course of more than three years, the Parties engaged in multiple rounds of settlement negotiations both with the assistance of Magistrate Judge Hey and independently. The final round began in tandem with trial preparations and intensified when the Court stayed the proceedings two weeks before trial was set to begin. *See* Section II.A, *supra*.

The settlement negotiations included numerous settlement conferences before Magistrate Judge Hey, many virtual and, prior to the COVID-19 pandemic, in-person meetings between the Parties, and dozens of written proposals and responses. Weaver Decl. ¶¶ 14–17, 19, 22–23, 25–26, 32–34. Many issues were heavily contested, and the resulting compromises are based on careful deliberation by the Parties. *See e.g.* ECF Nos. 39, 44–45 (briefing on Defendant's motion to partially dismiss), ECF Nos. 77, 81 (briefing on Defendant's motion to compel disclosure), ECF Nos. 79–80, 84–86, 88–89, 91 (briefing on the Parties' cross-motions for partial summary judgment). The arm's length nature of the negotiations is further evidenced by the fact that the Parties did not negotiate attorneys' fees and costs (including for future monitoring) until after

reaching an agreement on the key merits issues. Weaver Decl. ¶¶ 26, 28. This final piece of the settlement—settlement of fees and costs—was achieved again with the assistance of Magistrate Judge Hey. *Id.* ¶¶ 32–34. Accordingly, the second Rule 23(e)(2) factor also supports preliminary approval.

> c. *The Relief Provided for the Class is Robust. Fed. R. Civ. P. 23(e)(2)(C).*

This factor in part balances the "relief that the settlement is expected to provide to class members" against "the cost and risk involved in pursuing a litigated outcome." Fed. R. Civ. P. 23(e)(2), advisory committee's note (Dec. 1, 2018). The Agreement will achieve improvements to curb ramps throughout the City of Philadelphia that will ensure those curb ramps are in accordance with the ADA's standards. The City will Install, Remediate, and Maintain curb ramps over which it has responsibility as required by 28 C.F.R. § 35.151 and 35.133. *See* Agreement § 3. The City will Remediate or Install 10,000 ADA-compliant curb ramps over the course of the fifteen-year settlement term, with tri-annual 2,000-ramp cumulative milestones. *Id.* § 4. The City will also implement a request system to allow residents of Philadelphia who encounter inaccessible curb ramps to submit requests for the Installation, Remediation, or Maintenance of specific curb ramps under City control. *See id.* § 5. This will facilitate Settlement Class member involvement. With these significant improvements, the Agreement will ensure that all residents of and visitors to Philadelphia are able to safely cross the street, improving access to jobs, schools, and community life for individuals with mobility disabilities. Brooks Decl. ¶¶ 5–8; Earle Decl. ¶¶ 4–6; Maddox Decl. ¶¶ 6–9; Dougherty Decl. ¶ 6.

By settling now, the Settlement Class will be able to go about their daily lives in a safer manner much sooner than if they had to wait until the conclusion of the litigation and potential appeal. Settlement further provides finality to the City and avoids the costs and uncertainty of future litigation, while simultaneously improving the pedestrian access for residents and visitors.

The Parties have weighed the benefits of the Agreement against the risks of proceeding to trial, the costs of the trial and potential appeal, as well as the delay associated with waiting until

11

after trial and appeal for the Settlement Class to obtain relief, or for the City to fully resolve this matter. Weaver Decl. ¶¶ 5–11. In assessing the risks and benefits of settlement, the Parties were informed by a fully developed case, including extensive discovery, dispositive motion practice, and trial preparation. Ultimately, although the Agreement represents a compromise between the Parties and each side contends that it would have likely prevailed at trial, they also acknowledge the time and risks associated with and inherent in any litigation, and that the Agreement will provide substantial benefits to the Settlement Class while avoiding those delays and risks.

This factor also considers the reasonableness of the agreed-upon attorneys' fees.[2] Fed. R. Civ. P. 23(e)(2)(C)(iii). Here, the agreed-upon $1,100,000 for Class Counsel's attorneys' fees and costs was negotiated at arm's length, with the assistance of Magistrate Judge Hey, only after the Parties reached an agreement on the substantive relief provided to the Settlement Class in the Agreement. Weaver Decl. ¶¶ 27–34. This agreed-upon amount represents a significant discount from Class Counsel's lodestar—approximately 34%—which was calculated only after Class Counsel executed billing judgment which included discounting all the time spent on this case by one of DRA's Senior Staff Attorneys. *Id.* ¶¶ 27, 29–30. As there is no settlement fund, this negotiated amount does not take anything from the Settlement Class and the negotiated $60,000 tri-annual cap for future attorneys' fees and costs will facilitate Class Counsel's robust monitoring of implementation over the fifteen-year Settlement Period. *Id.* ¶¶ 13, 41. Considering the longevity of this litigation settled on the eve of trial, the reasonable expenditure of counsel's time documented in carefully maintained contemporaneous time records, and the significant experience of Class Counsel, the Parties contend it is likely that the Court will find the

---

[2] The remaining sub-factors of Rule 23(e)(2)(C), "[ii] the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims" and "[iv] any agreement required to be identified under Rule 23(e)(3)" are not applicable.

negotiated amount of $1,100,000 for Class Counsel's attorneys' fees and costs reasonable. These considerations weigh in favor of preliminary approval.[3]

> d. The Proposal Treats All Class Members Equitably. Fed. R. Civ. P. 23(e)(2)(D).

The Court certified the class under Rule 23(b)(2) because Plaintiffs sought declaratory and injunctive relief that would apply to the class as a whole. *See* ECF Nos. 51, 52. The Court recognized "[t]here is no conflict between the interests of the named plaintiffs and those of the other class members because they all seek the same declaratory and injunctive relief." ECF No. 51, at 8. As a Rule 23(b)(2) settlement, the Agreement provides only for injunctive relief, attorneys' fees and costs, and future monitoring costs. *See* Agreement. The only provision that treats unnamed Settlement Class members differently from the Named Plaintiffs is the release of claims, which is more limited in scope for unnamed members of the Settlement Class. *See id.* § 12. This factor thus also weighs in favor of preliminary approval.

> 2. <u>The Traditional Third Circuit Factors for Approval of a Class Settlement Agreement Are Also Met</u>

"When the Rules Committee amended Rule 23(e), the Committee did not intend to override traditional factors to assess fairness in a class settlement." *Fulton-Green v. Accolade, Inc.*, No. CV 18-274, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019). The non-exhaustive *Girsh* factors traditionally used by courts in the Third Circuit to assess whether to approve a class action settlement include:

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

---

[3] When moving for final approval, the Parties will also seek approval of the $1,100,000 in Class Counsel's attorneys' fees and costs. That motion will include an analysis of the reasonableness of this negotiated amount using the Third Circuit's method for evaluating attorneys' fee awards.

*Halley*, 861 F.3d at 488 (citing *Girsh*, 521 F.2d at 157).[4]  A settlement is deemed reasonable so long as a majority of the *Girsh* factors weigh in favor of settlement. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 243 (3d Cir. 2001). Here, analysis of the relevant *Girsh* factors weighs strongly in favor of approving the Agreement.

> a.  *The Settlement Provides Substantial Benefits to the Class While Avoiding Unnecessary Litigation and Undue Delay (Girsh factors 1, 4 and 5)*

The first *Girsh* factor "captures the probable costs, in both time and money, of continued litigation." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535–36 (3d Cir. 2004) (internal quotations omitted). The fourth and fifth factors taken together weigh the risks of establishing liability and damages, "survey the possible risks of litigation in order to balance the likelihood of success and the potential . . . award if the case were taken to trial against the benefits of an immediate settlement." *In re Prudential*, 148 F.3d at 319. For the reasons outlined in Section III.B.1.c, *supra*, these factors are satisfied.

---

[4] In addition, courts in the Third Circuit may consider the following *Prudential* factors, when appropriate:

> [1] the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; [2] the existence and probable outcome of claims by other classes and subclasses; [3] the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; [4] whether class or subclass members are accorded the right to opt out of the settlement; [5] whether any provisions for attorneys' fees are reasonable; and [6] whether the procedure for processing individual claims under the settlement is fair and reasonable.

*Halley*, 861 F.3d at 488–89. "For settlements seeking only injunctive relief, as is the case here, the only applicable *Prudential* factor not necessarily covered by the *Girsh* factors is the reasonableness of attorneys' fees." *Sourovelis*, 515 F.Supp.3d at 355 n.7. Additionally, in *In re Baby Products Antitrust Litigation*, the Third Circuit added that "one of the additional inquiries for a thorough analysis of settlement terms is the degree of direct benefit provided to the class." 708 F.3d 163, 174 (3d Cir. 2013). Both of these factors were addressed in the analysis of the Rule 23(e)(2) factors in Section III.B.1, *supra*.

   *b. The Class Representatives Support the Settlement (<u>Girsh</u> factor 2)*

   Notice has not begun, so the Agreement has not yet been shared with Settlement Class Members. However, the Named Plaintiffs, as evidenced by declarations appended to this motion, support the Agreement. *See* [declarations]. For example, Thomas Earle, the Chief Executive Officer of Liberty Resources, Inc., recognizes that "the settlement significantly facilitates safer independence" for people with disabilities that affect mobility. Earle Decl. ¶ 4. To him personally, as someone who is legally blind, "[t]he settlement gives [him] peace of mind knowing [he] can safely navigate the sidewalks and streets." *Id.* ¶ 5. Similarly, Latoya Maddox, the president of Disabled in Action of Pennsylvania, Inc., expressed how accessible curb ramps "will benefit many members of the disability community," and they "will make it safer for [her] to navigate around Philadelphia in [her] wheelchair." Maddox Decl. ¶¶ 8, 10. Furthermore, in addition to their excitement for more accessible curb ramps, three of the individual Named Plaintiffs who use mobility aids highlighted their appreciation for the monitoring component of the settlement. Dougherty Decl. ¶ 9; Brooks Decl. ¶ 4. At the preliminary approval stage, this positive reaction by the Named Plaintiffs to the Agreement is sufficient to show that the second *Girsh* factor will likely be satisfied.

   *c. The Case was Well-Developed and on the Eve of Trial at the Time of Settlement (<u>Girsh</u> factor 3)*

   The third *Girsh* factor "captures the degree of case development that class counsel [had] accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Cendant*, 264 F.3d at 235 (quoting *In re General Motors Corp. Pick–Up Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768, 813 (3d Cir.1995)). When the Court most recently stayed this case to allow the Parties to focus on settlement negotiations, the Parties were two weeks away from a nine-day trial on the merits of Plaintiffs' claims regarding new construction, alterations and maintenance. *See* Section II.B.1, *supra*. The Parties were in the midst of extensive trial preparation and had already exchanged thousands of pages of discovery, deposed fact witnesses, conducted expert discovery,

briefed dispositive motions, and filed pre-trial memoranda and motions *in limine*. *See id*. The arm's length settlement negotiations were thus informed by the significant discovery and motion practice exchanged over the course of the multi-year litigation, satisfying the third *Girsh* factor. *See* Section II.B.2, *supra*.

> d.  The Risk of Maintaining a Class Through Trial is Neutral (*Girsh* factor 6)

While class certification is conditional and may be reconsidered at any time, *see In re Prudential*, 148 F.3d at 321, the risk that the class here would not be maintained through trial is low. Defendant has not challenged class certification at any point in this case. *See* ECF No. 36. Further, due to the nature of the Settlement Class, it is not likely that the Named Plaintiffs will cease to be members of this group such that they would become inadequate class representatives. Because "there is no apparent reason why the Court would decertify or modify the class at any time during the litigation . . . the sixth *Girsh* factor is neutral." *Ripley v. Sunoco, Inc.*, 287 F.R.D. 300, 313 (E.D. Pa. 2012).

When considered together, the relevant *Girsh* and Rule 23(e)(2) factors support preliminary approval of the Agreement. Because the proposed class action settlement is fundamentally "fair, adequate, and reasonable," the Court should preliminarily approve the Agreement through entry of the Proposed Order Granting Motion for Preliminary Approval of Class Settlement Certifying Settlement Class; Directing Issuance of Settlement Notice; and Scheduling Hearing on Final Approval ("Proposed Order").

### C.  **The Court Should Direct Distribution of the Notice of Settlement and Schedule a Fairness Hearing**

"The court must direct notice in a reasonable manner to all class members who would be bound by the proposal" if the parties have shown the court will likely be able to "approve the proposal under Rule 23(e)(2); and [] certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(i) & (ii). As outlined above, this Court has already certified an identical class and the Agreement satisfies the factors outlined in Rule 23(e)(2) as well as the

traditional Third Circuit *Girsh* factors. Accordingly, the Parties respectfully request that the Court direct the distribution of notice and schedule a fairness hearing.

Actions under Rule 23(b)(2), like this one, have no strict notice requirements, leaving the form and method of notice to the court's discretion. *See* Fed. R. Civ. P. 23(c)(2)(A). A class settlement notice must provide the proposed terms for payment of attorneys' fees and costs and be distributed to the class "in a reasonable manner." *Id.* 23(h)(1). Here, the form of notice and method of distribution have been agreed to by the Parties and are reasonable. *See* Agreement § 14.

The substance of the notice is designed to inform potential Settlement Class members of the primary features of the Agreement. The Notice of Settlement includes (i) a brief statement of this Action, the settlement embodied in the Agreement, and the claims released by the Settlement Class; (ii) the date and time of the Fairness Hearing (once set by the Court); (iii) the deadline for submitting objections to the proposed Agreement; and (iv) the web page, address and telephone numbers that may be used to obtain a copy of the Agreement. *See* Agreement Ex. E, Notice of Settlement.

As set forth in Section 14 of the Agreement, the Parties recommend to the Court that notice to the Settlement Class be provided as follows:

- Within twenty (20) days after this Court grants preliminary approval of the Agreement, the City will cause a copy of the Notice of Settlement in English and Spanish, and a copy of the Agreement to be posted and remain posted on the City's official website through the objection deadline;

- Within twenty (20) days after this Court grants preliminary approval of the Agreement, DRA and the David Ferleger Law Office will post on their respective websites a copy of the Notice of Settlement in English and Spanish (as provided by the City) and a copy of the Agreement;

- Within thirty (30) days after this Court grants preliminary approval of the Agreement, the City will cause the Notice of Settlement to be published in a main local media outlet in English and Spanish; and

- Class Counsel will distribute the Notice of Settlement to local disability rights organizations.

*See* Agreement § 14 & Ex. F, Proposed Order at 7–8.[5]

The Parties request that the Court set a schedule for notice that allows Settlement Class members to object to (or otherwise comment on) the Agreement. As outlined in the Agreement and the Proposed Order, any Settlement Class member may object to this Agreement by mailing written objections to the District Court at least thirty (30) days before the Fairness Hearing, with a copy of such objections mailed concurrently to Class Counsel and Counsel for the City. *Id.*

The Parties also request that the Court schedule a Fairness Hearing (in accordance with CAFA's timelines) to establish the fairness of the Agreement and to order final approval. *See* Agreement Ex. F, Proposed Order at 9; 28 U.S.C. § 1715(d). Set forth below are possible dates for issuance of notice, deadlines for objections and written response to objections (if any), the Fairness Hearing to determine final approval, and related orders and deadlines, assuming that the Court preliminarily approves the Agreement on November 15, 2022—approximately one month—after this filing; these dates are provided only as a possible schedule, subject to the Court's preferences and calendar:

---

[5] In addition to the notice to Settlement Class members, Defendant will serve notice on the appropriate Pennsylvania state official and appropriate federal official within ten days of filing this motion, pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715(b). Such notice will include: (1) a copy of the complaint and any materials filed with the complaint, or information about how to electronically access these materials; (2) notice of any scheduled judicial hearing; (3) the proposed notification to class members, including that they cannot be excluded from the class; and (4) the Agreement. 28 U.S.C. § 1715(b)(1)–(8).

| Event/Deadline | Timeline | Date |
|---|---|---|
| Preliminary Approval granted | | November 15, 2022 |
| Notice period begins & continues for 60 days | 20 days after preliminary approval (Agreement ¶ 14.5.2) | December 5, 2022 |
| Objection deadline | 30 days before Fairness Hearing (Agreement ¶ 14.6.1) | February 6, 2023 |
| Deadline for Joint Motion for Final Approval, Statements of Compliance, and Objection Responses | 2 weeks before Fairness Hearing | February 22, 2023 |
| Fairness Hearing | No sooner than 110 days after preliminary approval | March 8, 2023 |

## IV.    CONCLUSION

In light of the foregoing, the Parties jointly request that the Court certify the Settlement Class, order preliminary approval of the Agreement, approve the proposed form and method of the notice, and issue the proposed scheduling order, including scheduling a Fairness Hearing to determine final approval.

Dated: October 14, 2022

BY: */s/ Meredith J. Weaver*
Meredith J. Weaver*
mweaver@dralegal.org
CA Bar No. 299328
Stuart Seaborn*
sseaborn@dralegal.org
DISABILITY RIGHTS ADVOCATES
2001 Center Street, Fourth Floor
Berkeley, CA 94704-1204
Tel: (510) 665-8644

BY: */s/ David Ferleger*
David Ferleger
david@ferleger.com
DAVID FERLEGER LAW OFFICE
413 Johnson St.
Jenkintown, PA 19046
Tel: (215) 887-0123

Erin Gallagher*
egallagher@dralegal.org

BY: */s/ Sean McGrath*

Diana P. Cortes
City Solicitor
Benjamin Field
Chief Deputy City Solicitor
Sean McGrath
Deputy City Solicitor
CITY OF PHILADELPHIA LAW DEPARTMENT
1515 Arch Street, 15th Floor
Philadelphia, PA 19102
(215) 683-5038
diana.cortes@phila.gov

Kymberly K. Evanson, Admitted Pro Hac Vice
Paul L. Lawrence, Admitted Pro Hac Vice
Pacifica Law Group LLP
1191 Second Avenue, Suite 2000
Seattle, WA 98101
(206) 245-1700

Rebecca Serbin*
rserbin@dralegal.org
DISABILITY RIGHTS ADVOCATES
655 Third Avenue, 14th Floor
New York, NY 10017-5621
Tel: (212) 644-8644

*Admitted *Pro Hac Vice*

*Attorneys for Plaintiffs*

Kymberly.Evanson@pacificalawgroup.com

*Attorneys for Defendant City of Philadelphia*