UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LIBERTY RESOURCES, INC.; DISABLED IN ACTION OF PENNSYLVANIA, INC; PHILADELPHIA ADAPT; TONY BROOKS; LIAM DOUGHERTY; FRAN FULTON; and LOUIS OLIVO,<br><br>　　　　　　　　Plaintiffs,<br>-against-<br><br>THE CITY OF PHILADELPHIA,<br><br>　　　　　　　　Defendant. | No. 19-cv-03846<br><br><br>**DECLARATION OF MEREDITH J. WEAVER IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL** |

I, Meredith J. Weaver, declare as follows:

　　　1.　　This declaration is based upon my personal knowledge. If called to testify, I could testify competently to the facts described in this declaration.

　　　2.　　I submit this declaration in support of the Parties' Joint Motion for Preliminary Approval of Settlement Agreement.

　　　3.　　I am an attorney duly licensed to practice law in the States of California, Oregon, and Washington and have been admitted *pro hac vice* to this Court for the purpose of representing Plaintiffs Liberty Resources, Inc.; Disabled In Action of Pennsylvania, Inc.; Philadelphia ADAPT; Tony Brooks; Liam Dougherty; Fran Fulton; and Louis Olivo in the above-captioned matter.

### THE PROPOSED SETTLEMENT AGREEMENT IS FAIR AND REASONABLE

　　　4.　　Attached hereto as **Exhibit 1** is a true and correct copy of the settlement agreement entered into by Plaintiffs and Defendant, the City of Philadelphia ("the City") on October 13, 2022 (hereinafter "Agreement").

　　　5.　　As described more fully below, the case was settled on the eve of trial after three separate rounds of settlement negotiations. Over the course of the multi-year litigation and

settlement discussions, many issues were heavily contested, and the resulting compromises in the Agreement are based on our careful deliberations.

6. Because of the late stage of the case, the Parties had the benefit of fact and expert discovery, dispositive motion practice, and trial preparation. This enabled Plaintiffs to fully evaluate the strengths and weaknesses of the claims and defenses.

7. Class Counsel have weighed the benefits of the proposed class settlement against the risks of proceeding to trial, the costs of trial and potential appeal, and the delay for the Settlement Class to obtain relief that would result from proceeding to trial even if successful. Class Counsel have discussed these factors with Named Plaintiffs.

8. Class Counsel believes Plaintiffs would likely have prevailed at trial, but there are risks inherent in any litigation and, even if successful, any relief awarded to the Settlement Class after trial (and potential appeal) would have been significantly delayed. So, in consultation with the Named Plaintiffs, we determined that obtaining the immediate relief reflected in the Agreement was the best option for the Settlement Class.

9. In an early order partially dismissing Plaintiffs' Complaint, the Court found that relief for Plaintiffs' claim regarding meaningful access to the City's pedestrian rights of way claim was not available in this litigation because the pedestrian rights of way are not a program, service, or activity of the City. ECF No. 50. This decision impacted Plaintiffs' leverage to achieve broader relief with respect to sidewalks. However, overall, we are satisfied that the inevitable give and take of settlement, has produced a fair, reasonable result with significant benefits for the Plaintiff class.

10. By settling now, upon final approval the Settlement Class will immediately begin seeing the benefits of the Agreement. The City will install or remediate at least 2,000 curb ramps within the first three years of the Settlement Period. And, at the end of these first three years, there will be an efficient, straightforward request system for Settlement Class members to request installation, remediation, or maintenance of curb ramps. These benefits would not have occurred as quickly without settlement and may not have occurred at all.

11. Furthermore, over the course of the Settlement Period, Class Members will benefit from 10,000 newly accessible curb ramps, each of which will provide previously unavailable freedom of movement. And under the Agreement the City's processes will incorporate necessary accessibility improvements in conjunction with all new construction and alterations to City-controlled streets.

12. If the Court preliminarily approves the Agreement, Class Counsel will provide notice to the Settlement Class in accordance with the Notice of Settlement that is attached to the Agreement as Exhibit E and/or any other notice procedures as ordered by the Court.

13. If the Court grants final approval, Class Counsel is prepared to monitor the Agreement throughout the fifteen-year Settlement Period. During this period of monitoring, Class Counsel will be able to recoup attorneys' fees, expenses, and costs subject to a tri-annual $60,000 cap. This negotiated amount, which includes reasonable payment to any third party retained to provide technical expertise, will support Class Counsel's robust monitoring of the City's implementation of the Agreement, to ensure the Settlement Class receives all the benefits of the Agreement.

## LITIGATION AND SETTLEMENT NEGOTIATION HISTORY

14. The Parties first met in person on October 11, 2019 to discuss the possibility of a negotiated resolution to Plaintiffs' claims. Prior to this meeting, Plaintiffs provided the City with a proposed remedial plan outline.

15. On October 30, 2019, following additional discussions among counsel, the Parties submitted by letter a joint request to the Court to (i) stay further activities in the litigation for a period of 90 to 180 days and (ii) order a settlement conference.

16. During the stay of litigation, the Parties conferred three times, voluntarily produced documents related to settlement negotiations, and exchanged written settlement term sheets in advance of their first settlement conference with Magistrate Judge Hey.

17. The Parties attended an in-person settlement conference with Magistrate Judge Hey on February 4, 2020. Shortly thereafter, Plaintiffs reported to the Court that the stay should not continue, and the Court transferred the case out of Civil Suspense.

18. By the end of fact discovery in March 2021, the City produced more than 7,000 pages of documents and Plaintiffs produced almost 2,000 pages of documents in response to requests for production. Plaintiffs also issued requests for admission, conducted a Rule 34 inspection of relevant City software, deposed two of the City's high-ranking Streets Department officials in October 2020, and deposed the City's designee pursuant to Federal Rule of Civil Procedure 30(b)(6) in December 2020.

19. From September 2020 through March 2021, while fact discovery was ongoing, the Parties engaged in a second round of settlement discussions with the assistance of Magistrate Judge Hey. During these negotiations, the Parties exchanged at least eight drafts of settlement term sheets and agreement proposals, met regularly to discuss these proposals between December 2020 and January 2021, and attended two settlement conferences with Magistrate Judge Hey on November 17, 2020 and February 25, 2021.

20. Given the status of the negotiations following the February 2021 settlement conference with Magistrate Judge Hey, in late March 2021 Plaintiffs determined that it would be best for the class to focus resources on expert discovery and dispositive motion briefing, and therefore terminated settlement discussions. The Parties submitted a joint report to Magistrate Judge Hey on April 26, 2021 stating that the Parties had reached an impasse and would cease settlement negotiations to continue toward trial preparation.

21. In April 2021, Plaintiffs identified three testifying experts—two architectural experts and a statistical expert—and served their reports on the City. Each architectural expert surveyed fifty or more intersections to assess curb ramps' compliance with technical accessibility standards and prepared a report on their findings. The statistical expert performed statistical calculations based on one of the architectural expert's findings and prepared a report with those calculations and an explanation of how he prepared the sample sets that each of the architectural

experts surveyed. In June 2021, the City produced expert reports for two rebuttal experts. All experts were deposed in June 2021.

22. In October 2021, following the Court's ruling on the Parties cross-motions for summary judgment, the Parties began a third round of settlement negotiations while simultaneously preparing for trial.

23. From October 2021 through January 2022, the Parties exchanged at least ten settlement term sheets or draft proposals and conferred via email, phone, or zoom many times to discuss the proposals. The Parties provided regular updates about the status of settlement negotiations to Magistrate Judge Hey who held two status conferences with the Parties during that time.

24. In November 2021, while these settlement discussions were ongoing, the Parties exchanged pre-trial disclosures and objections thereto. Plaintiffs then amended their pretrial disclosures in December 2021, and the City amended its pretrial disclosures in January 2022. Plaintiffs sent the City proposed stipulated facts on December 9, 2021, and both parties filed pretrial memoranda on December 13, 2021.

25. After the Court stayed the case to allow the Parties to focus on settlement negotiations, the Parties exchanged another several drafts of the Agreement and continued to meet via phone or zoom and confer via email to discuss the proposals.

26. On May 3, 2022, the Parties reached an agreement on the substantive terms of the Agreement and turned to negotiating attorneys' fees and costs.

## ATTORNEYS' FEES AND COSTS

27. The Agreement provides for $1,100,000 in attorneys' fees and costs incurred through final approval and a tri-annual cap of $60,000 for reasonable attorneys' fees, expenses, and costs incurred for performing all work reasonably necessary to monitor, implement, and administer the Agreement.

28. The Parties did not negotiate attorneys' fees and costs for work through final approval, or the cap for Class Counsel's future attorneys' fees and costs necessary to monitor the Agreement until after the substantive terms of the Agreement on behalf of the Settlement Class were finalized.

29. On May 6, 2022, I sent a letter to counsel for the Defendant outlining Plaintiffs' demand for attorneys' fees and costs incurred through final approval, based on Class Counsel's combined lodestar of $1,677,403 for attorneys' fees and $150,821.07 in costs. I attached Class Counsel's contemporaneous billing records to this correspondence in support of the demand.

30. Class Counsel conducted substantial billing judgment and good faith reductions to reach the lodestar, including discounting all fees for work performed on this matter by Disability Rights Advocate's Senior Staff Attorney with the highest billing rate.

31. On May 6, 2022, I also provided counsel for Defendant with Plaintiffs' proposal for a tri-annual monitoring cap of $240,000 based on the monitoring tasks provided in the Agreement and Class Counsel's experience monitoring other class settlements.

32. Over the next two months, the Parties exchanged multiple counters to settle Plaintiffs' demands attorneys' fees and costs, negotiating separate numbers for fees and costs through final approval and a tri-annual cap for monitoring.

33. By the end of June 2022, the Parties determined that a settlement conference with Magistrate Judge Hey would help expedite an agreement on attorneys' fees and costs.

34. Magistrate Judge Hey held two telephonic settlement conference with the Parties on July 8, 2022 and July 12, 2022. With her assistance, the Parties reached an agreement to settle Plaintiffs' attorneys' fees and costs.

35. If the Court grants preliminary approval of the Agreement, the Parties will file a joint motion to ask for approval of Class Counsel's attorneys' fees and costs agreed to by the Parties in the Agreement, pursuant to Federal Rule of Civil Procedure 23(h). The papers for such motion will include an analysis of the reasonableness of the negotiated attorneys' fees and costs award using the Third Circuit's method for evaluating attorneys' fee awards.

**CLASS COUNSEL QUALIFICATIONS - DRA**

36. Disability Rights Advocates ("DRA") is a 501(c)(3) nonprofit public interest organization exclusively dedicated to advancing the civil rights of persons with disabilities. DRA represents clients with disabilities who face discrimination or other violations of civil rights or federal statutory protections in class action and impact litigation. DRA is generally acknowledged to be one of the leading public interest disability rights legal organizations in the country. DRA attorneys regularly lecture to local, state, and national legal and professional organizations on the law applicable to persons with disabilities. DRA regularly co-counsels with private firms and other non-profits to expand our impact, increase litigation resources, and spread the risk of taking on precedent-setting disability rights class actions.

37. DRA has served as lead counsel in over 100 disability civil rights class actions in the United States and its systemic reform litigation in areas such as education access, public transportation, voting access, emergency preparedness, and health care access has benefited countless persons with disabilities.

38. DRA has specialized expertise in class action litigation concerning access to the pedestrian rights of way of public entities, including:

    a. *Barden v. City of Sacramento*, No. CIV-S-99-497 MCE/JFM (E.D. Cal.), a class action resulting in the first opinion by a circuit court holding that sidewalks and pedestrian rights of way are covered programs, services, and activities and therefore subject to the program access requirements of Title II of the Americans with Disabilities Act. *See Barden*, 292 F.3d 1073 (9th Cir. 2002).

    b. *Californians for Disability Rights v. Cal. Dep't of Transp.*, No. C-06-5125 SBA (N.D. Cal.), a statewide class action on behalf of pedestrians with mobility and vision disabilities seeking access to sidewalks and pedestrian rights of way.

  c. *Ochoa v. City of Long Beach*, No. 14-04307 DSF FFM (C.D. Cal.), a class action on behalf of pedestrians with mobility disabilities seeking access to sidewalks and pedestrian rights of way within the city of Long Beach, California.

  d. *Westchester Indep. Living Center, Inc. v. State Univ. of N.Y. Purchase College*, No. 7:16-cv-5949-CS-JCM (S.D.N.Y), a class action on behalf of students, staff, and visitors seeking access to pedestrian routes on a public university campus.

  e. *Am. Council of the Blind of New York v. City of New York*, 1:18-cv-05792 (PAE) (S.D.N.Y.), a class action on behalf of blind and low-vision pedestrians seeking access to pedestrian crossings within New York City.

  f. *Am. Council of the Blind of Metropolitan Chicago v. City of Chicago*, 1:19-cv-06322 (N.D. Ill.), a class action on behalf of blind and low-vision pedestrians seeking access to pedestrian crossings within the city of Chicago, Illinois.

  g. *Cline v. West Los Angeles College*, 22-2335-MWF (KSx) (C.D. Cal.), a putative class action on behalf of students, staff, and visitors who have difficulty walking long distances, seeking access to the programs, activities, and services on a public community college campus.

39. DRA, together with David Ferleger Law Office, were appointed as Class Counsel in this action in July 2020.

40. The current DRA attorneys in this matter are highly qualified and, together with David Ferleger, have competently served as Class Counsel for the duration of this case. The current DRA attorneys admitted *pro hac vice* in this action are:

  a. <u>Stuart Seaborn</u>: Mr. Seaborn is the Managing Director of Litigation at DRA. Mr. Seaborn earned his J.D. from the UCLA School of Law in 1998 and B.A. from the University of California, Berkeley in 1995. He first joined DRA in 2011 and specializes in systemic litigation on behalf of persons with disabilities. He has achieved multiple national precedents on matters of first impression in the area of disability rights, and was lead counsel in *Ochoa*, referenced above. Prior to joining DRA, Mr. Seaborn

had a solo civil rights practice, worked as a litigator at Disability Rights California, and was a trial attorney at the San Francisco Regional Office of the Antitrust Division of the U.S. Department of Justice.  Mr. Seaborn has also taught courses on disability law and litigation at UC Davis King Hall School of Law and is an adjunct professor at UC Hastings School of Law.

b. <u>Meredith J. Weaver</u>: I am a Senior Staff Attorney at DRA.  I received my B.A. from Brown University in 2010 and my law degree in 2014 from the University of Texas at Austin School of Law.  During law school, I was selected as a Human Rights Scholar by the Rapoport Center for Human Rights and Justice and interned with the Protection and Advocacy agency serving Texans with disabilities.  Since joining DRA in 2015, my practice has focused on disability rights cases concerning equal access to public services and programs, technology, health care, and financial institutions.  I have been an attorney on this case from the outset and, together with Mr. Seaborn, served as class counsel for *Ochoa*, referenced above.

c. <u>Rebecca Serbin</u>: Ms. Serbin is a Senior Staff Attorney at DRA.  She received her B.A. *magna cum laude* from Yale University in 2010 and her J.D. *cum laude* from the University of Pennsylvania Law School in 2013.  Prior to joining DRA, Ms. Serbin was a litigation associate at a New York law firm and clerked for the Honorable Michael A. Chagares of the U.S. Court of Appeals for the Third Circuit and the Honorable G. Murray Snow of the U.S. District Court for the District of Arizona.  Ms. Serbin began working on this case in the fall of 2021 and served as class counsel for *Westchester Indep. Living Center, Inc.*, referenced above.

d. <u>Erin Gallagher</u>: Ms. Gallagher is a Staff Attorney at DRA.  She received her B.A. from Tufts University in 2010 and her J.D. *magna cum laude* from New York University School of Law in 2015.  Prior to joining DRA, Ms. Gallagher litigated civil rights class actions on behalf of children in foster care, clerked for the Honorable Joan M. Azrack of the U.S. District Court for the Eastern District of New York, and worked as a

litigation associate at a New York law firm. When she joined DRA in fall 2021, she immediately began working on this case. She is also counsel in *Cline*, referenced above.

41. DRA is committed to monitoring this Agreement through the duration of the Settlement Period. DRA, along with our co-counsel, have the resources required do so in a cost-effective, efficient, and thorough manner.

### CLASS COUNSEL QUALIFICATIONS – DAVID FERLEGER

42. David Ferleger is highly qualified, as a litigator, teacher, and scholar in the field of disability law. His legal experience began fifty years ago with his 1972 graduation from the University of Pennsylvania Law School. He earned his B.A. from the University of Pennsylvania in 1969.

43. Mr. Ferleger has a national law and consulting practice, concentrating in U.S. Supreme Court and other appellate work, resolving disputes, public interest, civil rights, and disability law. In the Eastern District of Pennsylvania, he filed and litigated the landmark *Halderman v. Pennhurst State School and Hospital* through several arguments in the Supreme Court of the United States (465 U.S. 89 (1984); 451 U.S. 1 (1981); 673 F.2d 645 (3d Cir. 1982) (on remand); 612 F.2d 84 (3d Cir. 1979)), participated in other Supreme Court litigation, and has been sole counsel in numerous groundbreaking lawsuits across the country.

44. Mr. Ferleger has served federal courts, presiding over hearings and assisting courts in roles including as Special Master for Hon. Ellen Bree Burns (D. Conn.) in *United States v. State of Connecticut* (1997-2006); Court Monitor over implementation of large class actions such as *Jensen v. Minn. Department of Human Services* (Hon. Donovan Frank), and *Johnson v. Bradley* (M.D. Fla.); and technical advisor for implementation in *Demby v. Maryland Department of Health and Hygiene* (D. Md.). Mr. Ferleger was appointed Special Assistant Attorney General for the Commonwealth of Massachusetts to represent the Governor and

Department of Developmental Services[1] in *Ricci v. Okin*, 978 F.2d 764 (1st Cir. 1992); 823 F. Supp. 984 (D. Mass. 1993) *(five complex class actions) (1991 – 1994)*.

45. Mr. Ferleger is the author of *Planning for Access: Sidewalks and the ADA,* Planning and Environmental Law (July 5, 2012). ADA litigation experience includes both individual cases and, on appeal, such cases as *Gil v. Winn-Dixie Stores, Inc.*[2] (website accessibility); *Frame v. City of Arlington*[3] (sidewalks, crosswalks); and *Antoninetti v. Chipotle Mexican Grill, Inc.*[4] (public accommodations ADA access). His books include the *Handbook for Expert Witnesses* and *The Future of Disability Law*.

46. He is also the author of numerous law review articles, including most recently on the ADA: *Getting from Points A to Points B: Wayfinding, Public Accommodations, and the ADA*, 170 U. Pa. L. Rev. Online (2022); *A Reconceptualization of Website Accessibility under the ADA: Resolving the Inter-Circuit Conflict Post-Pandemic*, 39 Santa Clara High Tech. L.J. 63 (2022) (co-author).

47. Mr. Ferleger is a founding member and a former board member of the Academy of Court Appointed Masters (ACAM) and has published on the use of special masters and other judicial adjuncts. ACAM (now ACAN) awarded him its 2019 *Civil Justice* Award. He has taught at the New York University Law School and the University of Pennsylvania Law School. Mr. Ferleger is a Fellow of the American Association on Intellectual and Developmental Disabilities.

48. Mr. Ferleger is committed to monitoring this Agreement through the duration of the Settlement Period. He, along with co-counsel, have the resources required do so in a cost-effective, efficient, and thorough manner.

---

[1] This department has been renamed since the time of Mr. Ferleger's appointment; I use the current name here.
[2] 993 F.3d 1266 (11th Cir. 2021); 21 F.4th 775 (11th Cir. 2021); No. 17-13467-CC, 2022 U.S. App. LEXIS 5561 (11th Cir. Mar. 2, 2022).
[3] 657 F.3d 215 (5th Cir. 2011) (en banc), 616 F.3d 476 (2010) and 575 F.3d 432 (2009), cert. den., 132 S.Ct. 1561 (2012).
[4] 131 S.Ct. 2113 (2011) (denying certiorari)

49. I have conferred with all other counsel to confirm these statements regarding their experience are accurate.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 13, 2022 in Portland, Oregon.

Meredith J. Weaver