**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **LIBERTY RESOURCES, INC.; DISABLED IN ACTION OF PENNSYLVANIA, INC; PHILADELPHIA ADAPT; TONY BROOKS; LIAM DOUGHERTY; FRAN FULTON; and LOUIS OLIVO**<br><br>**Plaintiffs.**<br><br>**V.**<br><br>**CITY OF PHILADELPHIA.**<br><br>**Defendant,**<br><br>**Mark Fultz, Thomas Hamill, Gregory Lasky,  Dean Ragone and Louis Veney.**<br><br>**Objectors.** | **Case Number**<br>**19-cv-3846**<br><br><br><br>**OBJECTORS OPPOSTION TO THE PROPOSED CLASS ACTION SETTLEMENT AND IN SUPPORT OF MOTION TO DISMISS.** |

 Objectors Mark Fultz, Thomas Hamill Gregory Lasky and Dean Ragone hereby file the filing

opposition to the  proposed class action settlement in regard to curb cuts in Philadelphia.

**MEMORANDUM OF LAW IN SUPPORT OF OBJECTION OF THIS CLASS ACTION.**

    **A.  FACTUAL BACKGROUND**

1.     Plaintiff seeks a class action settlement based on an allegation that Plaintiffs' sustained

injuries' in a small number of streets without proper curb cuts.  Ashcroft v. Iqbal, 556 U.S. 662

(2009) held for this Court to have jurisdiction the Plaintiffs must plead their injuries with

particularity. Plaintiffs only alleged a small sample of injury.

2.    The ADA, allowed city governments until 1995 to provide curb cuts for the disabled 28

C.F.R. sec §35.150(d)(2).

3.    The United States Department of Justice (Department of Justice) in enforcement actions

arising under Title II of the ADA has consented to give certain cities - such as Atlanta, Georgia - three years additional years to provide curb cuts.

4.      Settlement agreement between the United States of America and Atlanta, Georgia, under the Americans with Disabilities Act DJ 204-19 216. Atlanta, GA https://www.ada.gov/atlanta_pca/atlanta_sa.htm; Detroit, MI https://www.ada.gov/detroitmi.htm; Milwaukee, WI https://www.ada.gov/milwaukee_pca/milwaukee; Swansea, MA www.ada.gov/swanseahttps://mass.streetsblog.org/2020/04/10/whats-in-mayor-walshs-2021-streets-budget.

5.      To wit, the class action settlement negates the right of any disabled person in Philadelphia from filing suit under the ADA or Pennsylvania law to better their own personal circumstances by having accessible streets.

6.      The objectors also deeply believes that enabling counsel to conduct these class action schemes across the country will have a negative impact on the ADA and disabled rights moving forward. A 1.1 million fees to allow Philadelphia to violate the law an additional 12 years is unconscionable.

7.       A District Judge in the settlement phase of a class action suit is a "fiduciary of the class" and held to the "the high duty of care that the law requires of fiduciaries." Reynolds v. Beneficial National Bank, 288 F.3d 277, 280 (7th Cir. 2002).

10.     Plaintiffs failed to give notice to the Department of Justice, as required by the Class Action Fairness Act of 2005 and Federal Rule of Civil Procedure 23(e)(2).

11.     Plaintiffs failed to give notice to the Pennsylvania nor the 49 other states as required by the Class Action Fairness Act of 2005.

12.     At no time have Plaintiff counsel explained why Philadelphia is receiving 15 years in",

longer than the Department of Justice regulation of three years. 28 C.F.R. sec §35.150(d)(2).

13.      Despite purporting to be a nationwide class action; class counsel failed to give proper

notice to disabled individuals throughout the nation. For example, no notice was given to disabled

Individuals who may not reside in but regularly visit the Philadelphia area.

14.     Plaintiffs' class action fails the commodity test. Mielo v. Steak 'N Shake Operations, Inc.,

897 F.3d 467, 487-488 (3d. Cir. 2018),  Allen v. Ollies' Bargain Outlet, Inc. 37 F.4th 890 (3rd Cir.

2022) and Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338 (2011) which held because unique

questions of Fact and Law Predominate, Commonality Did  not exist  in regard to inaccessible

slopes and routes under the ADA. Plaintiffs fail to alert the Court of the case law.

15. Attached are certifications from Futz Hamill, Lasky, Ragone who opposed the class action

settlement based on the reasons set forth in this memorandum


## STATEMENT OF ISSUES.

1.  Whether the plaintiffs' claims lack the requisite level of commonality. Mielo v. Steak 'N

2.  Shake Operations, Inc., 897 F.3d 467, 487-488 (3d. Cir. 2018), Allen v. Ollies' Bargain

    Outlet, Inc. 37 F.4th 890 (3rd Cir. 2022) and Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338

    (2011).

3.  Whether the settlement is contrary to the interest of the disabled public in that it nullifies

    Congress and the executive branches specific regulation mandating curb cuts to be installed

    within three years. 28 CFR 35.150(d)(2). What right does a lawyer have to nullify Federal

    law.

4.  Whether a class action is even necessary.

5. Whether class counsel failed to satisfy a condition precedent, as mandated by congress, when it failed to notify the Department of Justice and the states of the class action.

6. Whether Plaintiffs have standing.

## LEGAL ARGUMENT ONE

## LACK OF COMMONALITY.

Commonality requires plaintiff to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This language is "easy to misread, since any competently crafted Complaint literally raises common 'questions. . . Reciting these questions is not sufficient to obtain class certification." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338. (2011). The appropriate inquiry under this prong is whether there are issues of fact and law that are common to all members of the class. The issue is not, as misstated by Plaintiffs - whether curb cut locations in fact violate the ADA and the causes of the alleged barriers. This is a site-specific inquiry that involves unique questions of fact and law and is not capable of efficient resolution through class action litigation.

The 3rd Circuit in Mielo v. Steak 'N Shake Operations, Inc., 897 F.3d 467, 487-488 (3d. Cir. 2018) held similar ADA class actions are not proper because of the lack of commonality:

> we conclude that Plaintiffs' class presents a similar commonality challenge. Although all class members might allege a violation of the ADA—even the very same provision of the ADA—this only establishes that putative class members "merely" allege to "have all suffered a violation of the same provision of law." Id. at 350. For purposes of satisfying Rule 23(a)(2), that is not enough, because, like Title VII in Dukes, the ADA can be violated in many different ways…Even assuming, arguendo, that a proper interpretation of the class definition would limit the class to members who suffered injuries within a Steak 'n Shake parking facility, the wide variety of regulations quoted above reveal that there are still various types of ADA violations that could occur specifically in a parking facility. Plaintiffs' own complaint, for example, lists seven different categories

4

of parking facility violations. JA 90–92. The complaint refers to: (1) parking space slopes; (2) access aisle slopes; (3) slopes relating to the route leading to a facility entrance; (4) lack of proper parking signage; (5) lack of proper "van accessible" designations; (6) improper mounting of "accessible" parking signage; and (7) "curb ramp" slopes. Id. Although all seven of these categories allegedly constitute ADA violations, they harm class members in materially different ways. A class member, for example, complaining that "accessible" parking signage was "mounted less than 60 inches above the finished surface o[f] the parking area," JA 91, has experienced harm different from that of a class member complaining that "[t]he surfaces of one or more access aisles had slopes exceeding 2.1%." As Dukes makes clear, suffering "a violation of the same provision of law" is not enough. Dukes, 564 U.S. at 349. Instead, class members' claims must "depend upon a common contention" that "is capable of class wide resolution . . . in one stroke." Id. at 350. The wide variety of potential ADA violations captured in the broad class definition certified by the District Court does not lend itself to such a resolution.

The 3rd Circuit recently affirmed the logic of Mielo also in an ADA context dismissed..  Allen v. Ollie Bargain Outlet, Inc. 37 F.4th 890 (3 rd Cir. 2022) in reaffirming <u>Mielo)</u> held a class action is not appropriate in an ADA setting regarding blocked aisles in route:

The District Court also abused its discretion when finding commonality for a separate reason. The District Court certified a class embracing all persons with qualified mobility disabilities who have "experienced access barriers in interior paths of travel."… That class definition conflicts with our decision in Steak Shake. A class that includes any and all access barriers is overbroad.

In Steak and Shake, the trial court certified a class consisting of persons with qualified disabilities who "encountered accessibility barriers at any Steak and Shake restaurant." 897 F.3d at 487–88. We reversed the trial court commonality finding for two independent reasons.

First, the class representatives alleged injuries were based on excessively steep parking slopes, but the class was not limited to restaurant patrons who suffered an injury in a parking lot. Id. at 489–90.

Second, and more relevant here, even if the class definition were limited to parking facilities, we observed, "the wide variety of [ADA] regulations ... reveal that there are still various types of ADA violations that could occur specifically in a parking facility." Id. at 490. Access barrier0.s could include excessively steep parking lots but could also include inadequate signs. Id. "The wide variety of potential ADA violations captured in the broad class definition," we held, meant that the claims could not be litigated together all at once. Id. The class definition here similarly applies to any "access barriers." … Plaintiffs

argue that Steak and Shake is distinguishable because the class is limited to access barriers in interior paths of travel, not every part of a store, but that entirely ignores our second reason for finding no commonality. In Steak and Shake, we warned against the broad term accessibility barriers," as it sweeps in a broad array of potential claims with little in common. The same is true here. Some "access barriers" are fixtures, like pillars, fixed tables, or aisle shelves. There is no evidence those types of fixed barriers result from any common policy or employee practice. Plaintiffs have not shown that Ollie has any centralized blueprint or policy that requires stores to build narrow aisles or place pillars, tables, and shelving in the middle of the way. . Without evidence of a centralized store blueprint, we cannot say claims against those types of access barriers in interior paths of travel can be productively litigated together.

Not surprisingly, Plaintiffs' does not discuss the commonality issue not alerting this Court to

Allen because it would be asking this Court ignore the 3rd. Circuit as well <u>TransUnion LLC v.</u>

<u>Ramirez, 141 S. Ct. 2190</u> and <u>Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338 (2011).</u> Massive

amount of curb cuts and routes have much more diverse claims than simple parking lots or aisles.

In the present case there are a wide variety of potential ADA violations involving the

construction/remediation of curb cuts. In detail curb cuts must comply with the 2010 ADA

Standards, in relevant portion

as follows:

**406 CURB RAMPS.**

406 Curb Ramps. 406.1 General. Curb ramps on accessible routes shall comply with 406, 405.2
through 405.5, and 405.10. 406.2 Counter Slope. Counter slopes of adjoining gutters and road surfaces immediately adjacent to the curb ramp shall not be steeper than 1:20. The adjacent
surfaces at transitions at curb ramps to walks, gutters, and streets shall be at the same level.

Figure 406.2 Counter Slope of Surfaces Adjacent to Curb Ramps 406.3 Sides of Curb Ramps. Where provided, curb ramp flares shall not be steeper than 1:10. Figure 406.3 Sides of Curb Ramps 406.4 Landings. Landings shall be provided at the tops of curb ramps. The landing clear length shall be 36 inches (915 mm) minimum. The landing clear width shall be at least as wide as the curb ramp,

excluding flared sides, leading to the landing. EXCEPTION: In alterations, where there is no landing at the top of curb ramps, curb ramp flares shall be provided and shall not be steeper than 1:12.

Figure 406.4 Landings at the Top of Curb Ramps 406.5 Location. Curb ramps and the flared sides of curb ramps shall be located so that they do not project into vehicular traffic lanes, parking spaces, or parking access aisles. Curb ramps at marked crossings shall be wholly contained within the markings, excluding any flared sides. 406.6 Diagonal Curb Ramps. Diagonal or corner type curb ramps with returned curbs or other well-defined edges shall have the edges parallel to the direction of pedestrian flow. The bottom of diagonal curb ramps shall have a clear space 48 inches (1220 mm) minimum outside active traffic lanes of the roadway. Diagonal curb ramps provided at marked crossings shall provide the 48 inches (1220 mm) minimum clear space within the markings. Diagonal curb ramps with flared sides shall have a segment of curb 24 inches (610 mm) long minimum located on each side of the curb ramp and within the marked crossing. Figure 406.6 Diagonal or Corner Type Curb Ramps 406.7 Islands. Raised islands in crossings shall be cut through level with the street or have curb ramps at both sides. Each curb ramp shall have a level area 48 inches (1220 mm) long minimum by 36 inches (915 mm) wide minimum at the top of the curb ramp in the part of the island intersected by the crossings. Each 48-inch (1220 mm) minimum by 36 inch (915 mm) minimum area shall be oriented so that the 48 inch (1220 mm) minimum length is in the direction of the running slope of the curb ramp it serves. The 48-inch (1220 mm) minimum by 36 inch (915 mm) minimum areas and the accessible route shall be permitted to overlap. Figure 406.7 Island Cut Through and Ramp As in Mielo which involved parking lot curb cut violations, class members are harmed in materially different ways. Consequently, the class should not have been certified due to a lack of commonality.

## LEGAL ARGUMENT TWO

**THE PROPOSED CLASS ACTION SETTLEMENT FUNDAMENTALLY NOT FAIR, REASONABLE NOR ADEQUATE IN THAT NULLIFIES FEDERAL LAW 28 CFR 35.150 (d)(2).MOREOVER, PLAINTIFFS'HAVE NO POWER TO NULLIFY  FEDERAL LAW.**

Objectors are baffled at the fact that the Philadelphia") would be granted fifteen years to install curb cuts - when the Department of Justice ('DOJ') regulations mandated that they be completed by within three years and other cities have agreed to the three year requirement.; and when other cities have been ordered to do so in just three years 3 years.  (and without the need for a class action). Pursuant to 28 CFR § 35.150(c) such remediation's were to be made within three

years of January 26, 1992, since then it has been common practice of the DOJ to require compliance within three years of any issued order, settlement, or consent decree. Since 1992; pursuant to 28 CFR § 35.150(d)(2) the Philadelphia has been under the continuing duty to provide for a transition plan concerning streets, roads, and walkways. Allowing the City an additional fifteen years for compliance (when such should have been completed by 1995) is not a victory for the disabled. Cities such as Atlanta, Detroit, Milwaukee by consent three year terms for curb cuts pursuant to 28 CFR sec 35. 150(d)(2). -   https://www.ada.gov/atlanta_pca/atlanta_sa.htm https://www.ada.gov/detroitmi.htm; https://www.ada.gov/milwaukee_pca/milwaukee.

In Reynolds v. Beneficial Nat. Bank, 288 F.3d 277 (7th Cir. 2002), Judge Posner wrote:

> "We and other courts have gone so far as to term the district judge in the settlement phase of a class action suite a fiduciary of the class, who is subject therefore to the high duty of care that the law requires of fiduciaries" (citing Duhaime v. John Hancock Mut. Life Ins. Co., 183 F.3d 1 (1st Cir. 1999) and Grunin v. Int'l House of Pancakes, 513 F.2d 114 (8th Cir. 1975)).The trial court's approval of the settlement in the present matter … that "because class-actions are rife with potential conflicts of interest between class counsel and class members, district court judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." See Mirfasihi v. Fleet Mortgage Corp., 356 F.3d 781 (7th Cir. 2004). The district court's inquiry in this matter does approach "careful scrutiny" – on the contrary, the inquiry was closer to non-existent.

 Why must disabled persons wait so long for the restoration of their civil rights? They cannot know because the record is bare of any evidence.  In  Rogers v. Etowah Cty., 717 F. Supp. 778 (N.D. Ala. 1989) ( the trial court struck down a class-action which would have postponed the class prisoner's relief for only three months) and Van Horn v. Trickey, 840 F.2d 604 (8th Cir. 1988) ("Although in approving a settlement the district court need not undertake the type of detailed investigation that trying the case would involve it must nevertheless provide the appellate court

with a basis for determining that its decision rests on well-reasoned conclusions and not mere boilerplate." This court is obligated to act as a fiduciary for absent class members. See <u>Ehrheart v. Verizon Wireless, 609 F.3d 590 (3d Cir. 2010),</u> "Federal Rule of Civil Procedure 23(e) requires a district court to approve any settlement of a certified class before the settlement becomes final. In evaluating a class action settlement under Rule 23(e), a district court determines whether the settlement is fundamentally fair, reasonable, and adequate. The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements." See In re AT & T Corp., 455 F.3d 160 (3d Cir. 2006) (quoting In re Cendant Corp. Litig., 264 F.3d 201 (3d Cir. 2001)).

By allowing this class action to move forward under the current settlement terms the district court would  allow Philadelphian , with the help of the Plaintiffs, to circumvent congressional intent and executive branch authority by allowing five times as long to correct its civil rights violations. The district court must determine with evidence about the facts of the case, only conclusions – the record is bare as to why the court would allow a longer period then was enacted by Congress in 28 CFR § 35.150(d)(2). In what other setting would a court willingly allow the extension of a clear civil rights violation in the face of clear law?

Moreover, under the Supremacy Clause 28 CFR 35.150(d)(2) it is  the law of the land. There is no argument that private citizens can nullify federal law. The courts would never accept a plan to notify Brown v. Board of Education of Topeka, 347 U.S. 483 (1954) by having in a class action a group of African citizens in South Carolina agreeing to delay desegregation 30 years with their lawyer receiving over a million dollars.

**LEGAL ARGUMENT THREE**

**A CLASS ACTION WAS NOT NECESSARY**.

Plaintiffs Could Have Prosecuted Their Case and Achieved Similar or Better Results Without a Class Action  Dionne v. Bouley, 757 F.2d 1344 (1st Cir. 1985) "In determining whether to grant class certification, the court may properly take into account that same relief can, for all practical purposes, be obtained through individual injunction without complications of class action; if such is the case, court may be justified in concluding that class relief is not appropriate" (citing Rule 23(b)(2) of the Federal Rules of Civil Procedure).

In ADA litigation the Plaintiffs, and their attorneys, are empowered by Congress to play the role of private attorneys general to seek injunctive relief without the negative consequences of class actions. Indeed, there are few class actions in ADA suits. Due to the foregoing reasoning, courts have generally disfavored class actions within the ADA realm, and for good reason – because they ultimately harm the disabled. Justice Scalia penned, 'a class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 348 (2011). Class actions typically do not meaningfully benefit class members, but they do enrich class counsel. Class actions are not driven by market forces, but rather the profit motive has been distorted to incentivize copycat, abusive filings:

> Finally, class actions as currently practiced have no basis in this country's legal tradition, have effected a radical change in the risk defendants face for many types of claims, and promote collectivization at the expense of individual liberty.  Class actions infringe on the individual property rights by removing the individual's right to choose how, when, and if they chose to prosecute a claim. That is, in a class action, the decision as to whether a claim will be prosecuted is left to the class representative in theory, but to the class counsel in reality. In any event, the decision is taken from the individual holder of the property right, unless he happens to be the class representative. Thus, the "class action inevitably constrains an individual's ability to direct the course of his interaction with the judicial process because class representatives (guided by counsel) make all the decisions about how the individually possessed claims will be pursued." Money damages class actions at least provide class members with

the opportunity to opt out and pursue claims on their own. Mandatory injunctive relief classes, by contrast, do not allow class members to opt out. Thus, they further exacerbate the infringement on individual liberty inherent in class actions by removing from a class member the basic choice of whether to participate in the collective and passive litigation of his rights.  For example, in recent antitrust litigation against the leading credit card brands and card issuing banks, the class sought approval of a $6 billion settlement that included a release of all future damages claims; the class was mandatory in nature, so members had no opportunity to opt out. Under the proposed settlement, leading companies, such as Amazon, Target, and Home Depot, would have had their claims against the defendants released forever despite the fact that those companies were actively litigating against the defendants. The decision to accept that William P. Barnette, writing for the Federalist Society Review, Volume 22. July 13, 2021. https://fedsoc.org/commentary/publications/there-is-no-conservative-case-for-class-actions#_ftnref81 release would have been made not by those companies, but by class counsel and their putative class representatives. As is the case here the class sought to take from certain of its members the foundation of the procedural due process guarantee - the individual litigant's autonomy in deciding whether to pursue her claim and if so, how best to conduct that litigation.

In his book "Wholesale Justice: Constitutional Democracy and the Problem of the Class Action Lawsuit," scholar Martin H. Redish recognized that this exception frequently leads to abuse because:

 "in all too many class action suits, there is, for all practical purposes, no class being represented. Instead, the attorneys themselves are the real parties in interest." In an illustration of this ongoing scheme by class counsel: "before going to prison, prominent plaintiffs' securities litigator William Lerach put the matter more colorfully, noting that 'I have the greatest practice of law in the world, I have no clients.'" Put frankly, class action lawyers act with impunity, of their own accord, and rarely in the best interests of their "clients." To that same end, Judge Henry Friendly called class actions "blackmail settlements." Professor Redish continues; in a traditional class action, "courts are on watch for a kind of 'legalized blackmail': a greedy and unscrupulous plaintiff might use the threat of a large class  action, which can be costly to the defendant, to extract a settlement far in excess of the individual claims' actual worth." The opposite is true of the settlement class where defendant's motivations underlying the creation of a settlement class is purely economic. The defendant wants a single, comprehensive, and predictable settlement. One that provides certainty, not only on the monetary amount on total settlement claims and individual claims but also assurance that all claims have been paid. Above all, the defendant wants to avoid multiple rounds of escalating claims and they would have no way, outside

of bankruptcy, to control the number of settlements and the amount of damages paid.  Martin H. Redish, Wholesale Justice: Constitutional Democracy and the Problem of the Class Action Lawsuit Stanford, CA, Stanford University Press, 2009.

There are limited protections afforded to class members, who in this case happen to be disabled. The Court stands as guardian in these cases and must ensure protection of the class and its members. Judge Posner, noted the Court's role as a fiduciary in class action matters, <u>Reynolds v. Benefical. 288 F.3d 277 (7th Cir. 2002)</u>:

> Rule of Civil Procedure 23(e) requires court approval of any settlement that effects the dismissal of a class-action. Before such a settlement may be approved, the district court must determine that a class-action settlement is fair, adequate, and reasonable, and not a product of collusion. Joel A. v. Giuliani, 218 F.3d 132, 138 (2d Cir.2000). The principal issue resented by these appeals is whether the district judge discharged the judicial duty to protect the members of a class in class-action litigation from lawyers for the class who may, in derogation of their professional and fiduciary obligations, place their ecuniary self-interest ahead of that of the class. This problem, repeatedly remarked by judges and cholars, see, e.g., Culver v. City of Milwaukee, 277 F.3d 908, 910 (7th Cir.2002); <u>Greisz v. Household Bank (Illinois), N.A., 176 F.3d 1012, 1013 (7th Cir.1999); Rand v. Monsanto Co., 926 F.2d 596, 599 (7th Cir.1991); Duhaime v. John Hancock Mutual Life Ins. Co., 183 F.3d 1, 7 (1st Cir.1999);</u> John C. Coffee, Jr.,  Class Action Accountability: Reconciling Exit, Voice, and Loyalty in epresentative Litigation,&quot; 100 Colum. L.Rev. 370,-385-93 (2000); David L. Shapiro.;Class Actions: The Class as Party and Client,&quot; 73 Notre Dame L.Rev. 913, 958-60 and n. 132 (1998), requires <u>13 Reynolds v. Benefical. 288 F.3d 277 (7 th Cir. 2002)</u> district judges to exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions. We and other courts have gone so far as to term the district judge in the settlement phase of a class action suit a fiduciary of the class, who is subject therefore to the high duty of care that the law requires of fiduciaries. Culver v. City of Milwaukee, supra, 277 F.3d at 915; <u>Stewart v. General Motors Corp., 756 F.2d 1285, 1293 (7th Cir.1985);</u> In re Cendant Corp. Litigation, 264 F.3d 201, 231 (3d Cir.2001); <u>Grant v. Bethlehem Steel Corp., 823 F.2d 20, 22 (2d Cir.1987).</u>"

In review of the conduct of class counsel in this matter it becomes clear that they have not acted in the best interests of their clients nor the disabled community.

**LEGAL ARGUMENT FOUR**

**THE MATTER SHOULD BE DISMISSED FOR FAILURE TO SATISY CONDITIONS PRECENDENT BY FAILING TO NOTIFY THE DOJ AND THE STATES.**

The class lawyers' failure to notify the United States Department of Justice and the State of Pennsylvania is a clear violation of the Class Action Fairness Act of 2005 and Federal Rule of Civil Procedure 23(e)(2). There exists no authority under the Federal Rules of Civil Procedure for a Court to retroactively excuse a condition precedent such as compliance with the Class Action Fairness Act of 2005. The class lawyers, have submitted no proof of compliance to notify necessary parties, as required by law. Despite purporting to be a nationwide class action class, counsel failed to give proper notice throughout the nation to potential class members. Thus, this class action violates the due process rights of all disabled individuals. 4 Pursuant to the Class Action Fairness Act of 2005 and Federal Rule of Civil Procedure 23(e)(2), notice to the Department of Justice and Pennsylvania  of this class action suit and settlement was required. Counsel for all parties failed to give the required notice, running afoul of the Class Action Fairness Act of 2005 and Federal Rule of Civil Procedure 23(2). 28 USC § 1715.

The violation of 28 USC § 1715 in this matter is material; the Department of Justice has an interest in ensuring that the ability of private litigants to enforce their rights under 42 U.S.C. § 121 is not unduly restricted. This class action lawsuit provided for no opt out clause and because the Department of Justice has limited resources, private litigation plays an important role in the enforcement of federal nondiscrimination mandates. Under 28 U.S.C. § 517, the Attorney General may send any officer of the Department of Justice "to attend to the interests of the United States in a suit pending in a court of the United States. To reiterate, the Department of Justice has a standing policy of opposing ADA class actions lawsuits. The Objector strongly suggests the

13

Department of Justice would have opposed this class action in large part because of the friendly settlement terms. The allowance of fifteen or more years for Philadelphia while the Department of Justice proffered settlements with Atlanta, GA, Detroit MI, and provides for three years runs counter to the stated goals of the ADA and congressional intent under 28 CFR 35.150(d)(2).


## LEGAL ARGUMENT FIVE

## THE PLAINTIFFS' DO NOT JURISDICTION TO PROSECUTE THIS MATTER.


In <u>TransUnion LLC v. Ramirez, 141 S. Ct. 2190</u>; Justice Kavanagh addressed whether a violation of a federal statute providing for a private right of action, without concrete harm, will provide standing in federal court. His decision began by stating "no concrete harm, no standing"; the complaint and the full record in the present matter fails to plead any of the elements necessary to show that there was any concrete harm or injury suffered by the Plaintiffs. The complaint itself does not state when Plaintiffs suffered an injury - as required in regard to what curb cuts except in a few intersections. <u>Ashcroft v. Iqbal, 556 U.S. 662 (2009)</u> and <u>Manning v. Boston Medical, 725 F.3d 34(1 st Cir. 2013)</u> for this Court to confer jurisdiction). The complaint is bare of such detail and Plaintiffs, within their certifications, only mention a few curb cuts each; this is not enough to confer standing to file a class action lawsuit involving over thousands of intersections.  <u>Clark v. Burger King Corp, 255 F.Supp.2d 334, 344-346 (D.N.J. 2003)</u>.



<u>s/A. Brady Jr.</u>

ANTHONY J. BRADY, JR, ESQUIRE
Atty I.D. # 41321

14

1 Rose Avenue
Maple Shade, New Jersey 08052
Email: ladbrady@gmail.com