IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LIBERTY RESOURCES, INC., et al.   :          CIVIL ACTION
                                  :
          v.                      :
                                  :
CITY OF PHILADELPHIA              :          NO. 19-3846

MEMORANDUM

Bartle, J.                                          May  1, 2023

          Plaintiffs[1] brought this class action against the City
of Philadelphia in which they allege disability discrimination
in the installation, alteration, and maintenance of Philadelphia
sidewalk curb ramps in violation of Title II of the Americans
with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131 et seq.[2]  The
court certified a class for injunctive relief only under Rule
23(a) and (b)(2) of the Federal Rules of Civil Procedure.  The
parties have now reached a settlement.

          The court granted preliminary approval of the proposed
settlement and thereafter held a hearing on its fairness,

---

1.   Plaintiffs include three organizations that advocate for
the rights of individuals with disabilities:  Liberty Resources,
Inc.; Disabled in Action of Pennsylvania, Inc.; and Philadelphia
ADAPT.  There are also four individual plaintiffs with
disabilities affecting mobility:  Tony Brooks, Liam Dougherty,
Fran Fulton, and Louis Olivo.

2.   Plaintiffs further allege the City has violated Section 504
of the Rehabilitation Act, 29 U.S.C. §§ 794 et seq.  The court
has treated these claims as coterminous because claims under
both laws are subject to the same "substantive standards for
determining liability."  McDonald v. Pa. Dep't of Pub. Welfare,
62 F.3d 92, 95 (3d Cir. 1995).

reasonableness, and adequacy pursuant to Rule 23(e)(2).  Before the court is the joint motion of plaintiffs and the City for final approval of the settlement agreement.  Plaintiffs have also filed an unopposed motion for an award of attorneys' fees and costs.

I

Plaintiffs initiated this action to compel the City to comply with the ADA by curing inaccessible conditions at intersections with missing or defective curb ramps.  Title II of the ADA provides, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132. Regulations interpreting this provision impose certain burdens on public entities in maintaining sidewalk accessibility.  Under 28 C.F.R § 35.151, when a public entity resurfaces a street, at adjoining intersections they are required to install ADA-compliant curb ramps where none exist and upgrade noncompliant curb ramps.  In addition, 28 C.F.R. § 35.133 requires public entities to maintain its existing curb ramps in a condition that ensures they are accessible.

Nearly thirty years ago, at the inception of the ADA, this court ordered the City to install sidewalk curb ramps at

-2-

intersections when it resurfaces the adjoining streets.  <u>Kinney</u> <u>v. Yerusalim</u>, 812 F. Supp. 547, 553 (E.D. Pa.), <u>aff'd</u>, 9 F.3d 1067 (3d Cir. 1993); <u>see also</u> <u>Kinney v. Yerusalim</u>, Civ. A. No. 92-4101 (E.D. Pa. May 23, 1994) (Doc. # 27).  The City followed this practice until 2014, when it started the "Curb Ramp Partnership Program."  Under that program, the City stopped upgrading curb ramps as a matter of course during street resurfacings.  Instead, the City visually inspected and installed curb ramps only at locations where citizens requested them.  The City earmarked approximately $3.2 million, twenty percent of its annual street resurfacing budget, for curb ramp installation.  The City estimated that it would cost on average $7,500 to install a new curb ramp or upgrade an existing one. At that rate, plaintiffs estimated that it would have taken almost 170 years for the City to upgrade every curb ramp in its street network.

Plaintiffs commenced this action on August 26, 2019. Sometime in early 2020, in response to this lawsuit, the City revised its policy again and reverted to installing curb ramps on streets with every resurfacing.  Nonetheless, plaintiffs contended that thousands of curb ramps remained missing or defective.

II

The parties fiercely litigated this case until the eve
of trial.  At the outset, the court granted the motion of the
City to dismiss plaintiffs' complaint to the extent plaintiffs
claimed the City was liable on a theory of denying "program
access" under 28 C.F.R. §§ 35.149, 35.150(a).  The court also
dismissed plaintiffs' claims for injunctive relief to compel the
City to undertake a Self-Evaluation and create a Transition Plan
under 28 C.F.R. §§ 35.105, 35.150(d).  See Liberty Resources,
Inc. v. City of Philadelphia ("Liberty Resources I"), Civ. A.
No. 19-3846, 2020 WL 3642484 (E.D. Pa. July 6, 2020).

The court then certified the following class under
Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure:

> all persons with disabilities or impairments
> that affect their mobility--including, for
> example, people who use wheelchairs or other
> mobility devices, as well as those who are
> blind or have low vision--and who use or
> will use pedestrian rights of way in the
> City of Philadelphia.

Liberty Resources, Inc. v. City of Philadelphia ("Liberty
Resources II"), Civ. A. No. 19-3846, 2020 WL 3816109 (E.D. Pa.
July 7, 2020).

Plaintiffs and the City conducted significant
discovery.  The City produced voluminous records that detailed
the locations of thousands of allegedly defective or missing
curb ramps, the dates and locations of street resurfacing work,

-4-

and the City's policies on curb ramp installation.  Plaintiffs supplied discovery as well.  The parties each engaged expert witnesses, and they served detailed reports.  The parties fully briefed a motion to compel filed by the City regarding documents on which one of the plaintiffs' expert relied in producing his expert report.

The parties then filed cross-motions for partial summary judgment.  The court granted the City's motion in part and denied the plaintiffs' motion.  See Liberty Resources, Inc. v. City of Philadelphia ("Liberty Resources III"), Civ. A. No. 19-3846, 2021 WL 4989700 (E.D. Pa. Oct. 27, 2021).  Relevant here, the court held that plaintiffs would need to establish the City's liability as to each specific noncompliant curb ramp and could not simply allege that the City's policies on curb ramp installation, alteration, and maintenance were unlawful.  See id. at *4-5.

Trial in this action was scheduled for February 2022. The parties filed motions in limine as well as responses in opposition.  Less than two weeks before trial was to commence, the parties filed a joint motion to stay trial so that they could engage in settlement negotiations.  The parties spent much of 2022 negotiating this settlement.

Eventually, on October 14, 2022, the parties filed a joint motion for preliminary approval of the present settlement.

The court granted that motion on October 19, 2022.  In doing so,
the court found that the proposed method of disseminating notice
of the settlement--publishing the relevant information on the
City's website and in local English- and Spanish-language
newspapers as well as distributing the notice to local
disability rights organizations--was reasonable under Rule
23(e)(1).  See Doc. # 144, at 7-8.  The City then served notice
on the appropriate state and federal officials pursuant to the
Class Action Fairness Act.  See 28 U.S.C. § 1715(d).[3]  The court
has been advised by the parties that the 90-day waiting period
has now expired and no objections have been served by any of
these officials.

        A group of five individuals objected to the present
settlement agreement.  They also filed a motion to intervene in

---

3.    Under the Class Action Fairness Act, "[a]n order giving
final approval of a proposed settlement may not be issued
earlier than 90 days after" the defendant has served notice of
the settlement on the "appropriate State official of each State
in which a class member resides and the appropriate Federal
official."  28 U.S.C. § 1715(b), (d).   Pursuant to this
statute, the City served notice on the Pennsylvania Attorney
General and the United States Department of Justice on October
18, 2022.  The City did not serve notice on officials in the
remaining 49 states and the U.S. territories until January 19,
2023.  For this reason, the court deferred resolving the joint
motion for final approval of settlement agreement until at least
90 days after the City served notice on the officials in those
states.  This court has routinely found that § 1715 is satisfied
as long as the federal, state, and territorial officials are
provided notice and an opportunity to be heard, which has
occurred here.  E.g., In re Processed Egg Prod. Antitrust
Litig., 284 F.R.D. 249, 258 n.12 (E.D. Pa. 2012).

this action, which the court denied.  See Liberty Res., Inc. v.
City of Philadelphia, Civ. A. No. 19-3846, 2023 WL 2588167, at
*1 (E.D. Pa. Mar. 21, 2023).  The court, however, agreed to
defer ruling on their objections until it reviewed the present
motion.

        The joint motion of the parties for final approval of
their settlement agreement was filed on January 23, 2023.  The
court then held a hearing on the fairness of the proposed
settlement agreement on February 7, 2023, at which the objectors
presented argument.

                              III

        Objectors first contend that the class in this case
should not have been certified because it does not meet the
commonality requirement of Rule 23(a)(2), that is, there are no
"questions of law or fact common to the class."  This court
found that the commonality requirement was satisfied because
plaintiffs' claims "give rise to numerous questions of law and
fact that will be common to the class as a whole, including
whether the City's policies and practices have resulted in its
failure to provide compliant, accessible curb ramps whenever the
City resurfaces or alters streets."  Liberty Resources II, 2020
WL 3816109, at *3.  The objectors primarily contend that
establishing the City's liability for each noncompliant curb
ramp is a "site-specific inquiry that involves unique questions

                             -7-

of fact and law" because there are "a wide variety of potential
ADA violations involving the construction/remediation of curb
cuts."

Assuming without deciding that objectors have the
right to object to challenge the court's certification of the
class at this stage,[4] this objection does not have merit.  There
are questions of law and fact with answers that are common to
all class members and unaffected by an individual class member's
circumstances.  Whether the City has failed to install curb
ramps after resurfacing streets is one of them.  Similarly,
whether the City has failed to maintain existing curb ramps in
operable conditions is a question with an answer that is
applicable to the class as a whole.  Finding these issues to
satisfy commonality is consistent with the long-standing
principle that commonality may be "based primarily on the fact
that defendant's conduct is central to the claims of all class
members irrespective of their individual circumstances and the
disparate effects of the conduct."  Baby Neal v. Casey, 43 F.3d

---

4.   The court has already denied objectors' motion to intervene
in this matter.  See Liberty Res., Inc. v. City of Philadelphia,
Civ. A. No. 19-3846, 2023 WL 2588167 (E.D. Pa. Mar. 21, 2023).
The class in this matter has been certified for nearly three
years.  Moreover, the order the court entered granting the joint
motion for preliminary approval of class settlement invited
objections only to "aspect[s] of the proposed settlement
agreement."  See Doc. # 143, at 9.  Nonetheless, the court will
address all objections in the abundance of caution.

48, 56–57 (3d Cir. 1994); see also Remick v. City of
Philadelphia, Civ. A. No. 20-1959, 2022 WL 742707, at *8–9 (E.D.
Pa. Mar. 11, 2022), appeal dismissed, No. 22-8013, 2022 WL
4365713 (3d Cir. July 21, 2022).  Commonality is not defeated
simply because curb ramps violate different ADA regulations or
because class members do not uniformly encounter the same
noncompliant curb ramps in the same manner.

      Objectors cite two opinions addressing class
certification in ADA actions in which our Court of Appeals held
that commonality was not satisfied.  The classes in both cases
are distinguishable from the certified class in this action.
First, objectors cite Mielo v. Steak 'n Shake Operations, Inc.,
897 F.3d 467 (3d Cir. 2018).  That case concerned accessibility
barriers within the facilities of a chain fast food restaurant.
The accessibility barriers in the district court's certification
order included any possible physical feature of a restaurant
that violated the ADA, including inaccessible parking spaces,
aisles, tables, and seating.  In addition, the class included
all persons who had or would encounter an accessibility barrier
at any restaurant location throughout the United States.

      The Court of Appeals reversed the district court's
order granting class certification.  It held that commonality
was not established because of "just how large the potential
universe of ADA violations covered by [the] broad class

-9-

definition."  Id. at 488.  Even if the class had been limited to
those who experienced accessibility barriers in the restaurants'
parking lots, the variety of different ADA violations "harm[ed]
class members in materially different ways" such that they did
not present a common contention capable of classwide resolution:

> A class member, for example, complaining
> that "accessible" parking signage was
> "mounted less than 60 inches above the
> finished surface o[f] the parking area," has
> experienced harm different from that of a
> class member complaining that "[t]he
> surfaces of one or more access aisles had
> slopes exceeding 2.1%."

Id. at 490 (citation omitted).  However, in a footnote, the
Court indicated that if the class definition were "limited to
slope-related injuries occurring within a parking facility," it
would be "much more likely" to satisfy the commonality
requirement.  Id. at 490 n.23.

        The certified class in this action is similarly
limited.  It includes only persons who will encounter
accessibility issues as to curb ramps.  Accessible curb ramp
design is governed by uniform standards.  Liberty Resources III,
2021 WL 4989700, at *2-4.  It is true that these standards vary
from curb ramp to curb ramp, depending on factors such as when
the adjoining street was most recently altered or whether there
are site-specific constraints bearing on feasibility.  Id. at
*4.  However, the range of potential ADA violations that could

arise at curb ramps is far narrower than those asserted in Steak
'n Shake.

Objectors also rely on Allen v. Ollie's Bargain
Outlet, Inc., 37 F.4th 890 (3d Cir. 2022).  In that case, the
district court had certified a class of all persons who had
encountered or would encounter "access barriers in interior
paths of travel" within any of defendant's bargain stores
throughout the United States.  Id. at 902.  The Court of Appeals
reversed on two grounds the district court's determination that
commonality had been satisfied.  First, the Court held that the
plaintiffs could not represent a class of all persons who had
encountered accessibility barriers at defendant's stores
throughout the United States because plaintiffs only supplied
reliable evidence of the defendant's policies at Pennsylvania
locations.  Relying on Steak 'n Shake, the court further held
that the class of all individuals affected by access barriers in
interior paths of travel was too broad to satisfy commonality:

> In Steak 'n Shake, we warned against the
> broad term "accessibility barriers," as it
> sweeps in a broad array of potential claims
> with little in common. The same is true
> here. Some "access barriers" are fixtures,
> like pillars, fixed tables, or aisle
> shelves. . . . Plaintiffs have not shown
> that Ollie's has any centralized blueprint
> or policy that requires stores to build
> narrow aisles or place pillars, tables, and
> shelving in the middle of the way.

Id. at 903.

Again, the class here is much more limited than the class our Court of Appeals rejected in Ollie's Bargain Outlet. First, this pending action is distinguishable because it geographically limited.  It includes only individuals who encountered or will encounter accessibility barriers within Philadelphia.  Second, unlike the varying regional policies of the defendant's stores in Ollie's Bargain Outlet, there is no dispute that all the alleged ADA curb ramp violations at issue in this case are products of the City of Philadelphia's common policy or practice.  Third, the possible ADA violations that may arise from an inaccessible or nonexistent curb ramp is less diverse than the violations that may occur from all accessibility barriers in all aspects of the interior of a bargain store.

In sum, objectors have not demonstrated that the class was improperly certified.

Objectors also contend that plaintiffs lack standing to maintain this action under Article III of the constitution based on the Supreme Court's recent ruling in TransUnion LLC v. Ramirez, 141 S. Ct. 2190 (2021).  Specifically, they contend plaintiffs' complaint is deficient because it "does not state when Plaintiffs suffered an injury - as required in regard to what curb cuts except in a few intersections."  In objectors' view, the named plaintiff's allegations concerning the injuries

-12-

they personally have suffered are "not enough to confer standing
to file a class action lawsuit involving over thousands of
intersections."

Objectors erroneously conflate the Article III
standing analysis with the Rule 23 class certification
requirements.  In class actions, the court focuses its standing
inquiry "solely on the class representative(s)."  Steak 'n
Shake, 897 F.3d at 478.  TransUnion did not disrupt this basic
tenet of class action litigation.  Rather, the crux of
TransUnion is that a plaintiff cannot prove that he or she has
standing simply by alleging that the defendant has violated a
statutory right established by Congress.  The Court merely
reiterated the principle that standing requires an injury that
amounts to "concrete harm."  141 S. Ct. at 2214.

There can be no doubt, and objectors do not dispute,
that the individual class representatives here have alleged
concrete injuries.  In their complaint, they identified the
specific intersections they traverse, the curb ramp barriers
they face along those routes, and the particularized injuries
they suffered due to these barriers, which include physical
injury, delay and inconvenience, and fear.  These concrete
allegations of injury are all that is necessary for them to
demonstrate standing to maintain this action as class
representatives.

Plaintiffs need not allege that they have suffered concrete injuries at every intersection with a noncompliant curb ramp in the City of Philadelphia.  For example, although our Court of Appeals held that the class in Steak 'n Shake was improperly certified, it nonetheless explained that plaintiffs' allegations of accessibility issues in the restaurants they encountered were enough to confer Article III standing to sue over accessibility issues in all the defendant's restaurants. See 897 F.3d at 479-80.  Here, plaintiffs have standing to litigate the similar claims of absent class members which all derive from the City's policies on curb ramp installation, alteration, and repair.  Requiring plaintiffs to allege the accessibility issues at every barrier subject to the same policy would needlessly throw a hurdle in the way of efforts to obtain meaningful widespread relief from pervasive disability discrimination.  "The effect of such a rule would be piecemeal compliance. . . . This not only would be inefficient, but impractical."  Steger v. Franco, Inc., 228 F.3d 889, 894 (8th Cir. 2000).

Finally, objectors assert that that this lawsuit did not need to be maintained as a class action.  This objection appears to be nothing more than a generalized grievance with the class action mechanism.  It is without merit.

IV

A class action under Rule 23 may be settled "only with
the court's approval."  Fed. R. Civ. P. 23(e).  Before approving
a settlement, the court must hold a hearing and find that the
settlement agreement is "fair, reasonable, and adequate."
Fed. R. Civ. P. 23(e)(2).  Whether a settlement agreement should
be approved is "left to the sound discretion of the district
court."  In re Nat'l Football League Players Concussion Injury
Litig., 821 F.3d 410, 436 (3d Cir. 2016) (quoting In re
Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions, 148
F.3d 283, 299 (3d Cir. 1998)).

The court considers two sets of factors in assessing
the fairness of a settlement agreement.  First, the court
analyzes the pertinent elements set forth in Rule 23(e)(2):

> (A) the class representatives and class
> counsel have adequately represented the
> class;
>
> (B) the proposal was negotiated at arm's
> length;
>
> (C) the relief provided for the class is
> adequate, taking into account:
>
>> (i) the costs, risks, and delay of
>> trial and appeal;
>>
>> (ii) the effectiveness of any
>> proposed method of distributing
>> relief to the class, including the
>> method of processing class-member
>> claims;
>>
>> (iii) the terms of any proposed
>> award of attorney's fees,
>> including timing of payment; and

> (iv) any agreement required to be
> identified under Rule 23(e)(3);
> and

(D) the proposal treats class members
equitably relative to each other.

Second, the court considers the "traditional" factors
that our Court of Appeals delineated in Girsh v. Jepson, 521
F.2d 153, 157 (3d Cir. 1975):

> (1) the complexity, expense, and likely
> duration of the litigation; (2) the reaction
> of the class to the settlement; (3) the
> stage of the proceedings and the amount of
> discovery completed; (4) the risks of
> establishing liability; (5) the risks of
> establishing damages; (6) the risks of
> maintaining the class action through the
> trial; (7) the ability of the defendants to
> withstand a greater judgment; (8) the range
> of reasonableness of the settlement fund in
> light of the best possible recovery; and (9)
> the range of reasonableness of the
> settlement fund to a possible recovery in
> light of all the attendant risks of
> litigation.

There is an "overriding public interest in settling
class action litigation." In re Warfarin Sodium Antitrust
Litig., 391 F.3d 516, 535 (3d Cir. 2004). Settlement is
particularly favored "in class actions and other complex cases
where substantial judicial resources can be conserved by
avoiding formal litigation." Id. (quoting In re Gen. Motors
Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig., 55 F.3d 768,
784 (3d Cir. 1995)). As such, the court is "hesitant to undo
agreement that has resolved a hard-fought, multi-year

litigation" such as this one.  In re Baby Prod. Antitrust

Litig., 708 F.3d 163, 175 (3d Cir. 2013).

     To further this policy of favoring settlement, our

Court of Appeals has instructed district courts to apply a

presumption of fairness to a proposed settlement when "(1) the

settlement negotiations occurred at arm's length; (2) there was

sufficient discovery; (3) the proponents of the settlement are

experienced in similar litigation; and (4) only a small fraction

of the class objected."  Warfarin, 391 F.3d at 535.  As

explained in greater detail below, the parties conducted

negotiations at arm's length with the able assistance of

Magistrate Judge Elizabeth T. Hey and reached this settlement

after exchanging extensive discovery and taking numerous

depositions.  Counsel for both parties are experienced in this

type of litigation.  Finally, only five individuals objected to

the settlement in contrast to the massive size of the certified

class.  Thus, the court finds that the presumption of fairness

applies here.

V

     The court next considers whether the settlement is

fair under the Rule 23(e)(2) considerations.

     First, the court finds that the class representatives

and class counsel have adequately represented the class

throughout the litigation.  See Fed. R. Civ. P. 23(e)(2)(A).  In

-17-

reviewing plaintiffs' motion for class certification, the court determined that, for the purposes of Rule 23(a)(4), the class representatives would fairly and adequately protect the interests of the class.  Liberty Resources II, 2020 WL 3816109, at *3.  The court also found that class counsel had the experience and competence to litigate this matter.  See id.

The inquiry into the adequacy of representation at the final settlement approval stage under Rule 23(e)(2)(A) requires an additional review of class counsel's "actual performance . . . acting on behalf of the class."  Fed R. Civ. P. 23(e)(2) Advisory Committee Notes.  Critical to this inquiry is whether class counsel had an "adequate information base," considering the "nature and amount of discovery," which informed the decision to agree to the settlement.  Id.

The parties, as noted above, have conducted extensive fact and expert discovery.  Class counsel represents that the City produced over 7,000 pages of documents and produced three City officials for depositions.  Class counsel engaged three expert witnesses, including two architectural experts who each surveyed curb ramps and assessed their compliance with technical accessibility standards.  They also deposed both of the City's rebuttal expert witnesses.  The court is satisfied that class counsel's decision to settle was adequately informed by this voluminous discovery.  Accordingly, the court finds that class

-18-

counsel has adequately represented the interests of the certified class in this action.

The court next considers whether the proposed settlement was "negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). The parties were ready to try this case. After the court's October 27, 2021 ruling on the cross-motions for summary judgment, each side filed motions in limine and oppositions. It was not until two weeks before trial that the parties jointly sought a stay in proceedings to facilitate settlement agreement. The great extent of adversarial proceedings that took place in this action prior to that stay cannot be disputed.

In addition, the parties engaged in extensive settlement negotiations, which began as early as October 2019. In addition to the numerous discussions among counsel, the parties participated in eight settlement conferences before Magistrate Judge Hey. "The participation of an independent mediator in settlement negotiations virtually ensures that the negotiations were conducted at arm's length and without collusion between the parties." Taha v. Bucks Cnty., Civ. A. No. 12-6867, 2020 WL 7024238, at *4 (E.D. Pa. Nov. 30, 2020) (cleaned up); see also Fed. R. Civ. P. 23(e)(2) Advisory Committee Notes. Finally, the court notes that the parties did not negotiate the amount of class counsel's proposed attorney's

fees award until after they agreed on the substance of the
settlement.  The court finds the settlement agreement was
negotiated at arm's length.

The court must also consider whether "the relief
provided for the class is adequate."  Fed R. Civ. P.
23(e)(2)(C).  The Rule sets forth nonexhaustive factors to guide
this determination.  The pertinent ones here are "the costs,
risks, and delay of trial and appeal" as well as "the terms of
any proposed award of attorney's fees, including timing of
payment."[5]  Id.

The settlement will provide significant relief to
individuals with disabilities that affect their mobility.  It
will allow them to navigate Philadelphia's streets in a safer
manner.  Under the agreement, the City will install and
remediate 10,000 curb ramps over a fifteen-year period.  It has
agreed to complete 2,000 ramps every three years, with tri-
annual cumulative milestones in addition to transparent annual
progress reporting requirements.  It will implement a system
whereby Philadelphia residents may submit requests for the City
to cure inaccessible curb ramps.  In addition, the agreement

---

5.  Because of the nature of the solely injunctive relief
sought in this class action, the inapplicable factors under Rule
23(e)(2)(C) are "the effectiveness of any proposed method of
distributing relief to the class, including the method of
processing class-member claims" and "any agreement required to
be identified under Rule 23(e)(3)."

sets aside funding for class counsel to monitor the City's
compliance, and this court will retain jurisdiction for purposes
of enforcement.  In sum, the agreement requires the City to
prioritize curb ramp accessibility so that class members can
more easily access jobs, schools, and other aspects of community
life.

The objectors disagree that the relief provided under
this settlement is adequate.  The crux of their objection is
that the fifteen-year term of the agreement is too long.  They
contend that 28 C.F.R. § 35.150 obligates the City to complete
this work within three years.  Thus, they argue that this
settlement "nullifies" that regulation.  They also argue that
the fifteen-year term is unreasonably long when compared with
other ADA pedestrian accessibility settlements with three-year
terms that the United States Department of Justice has reached
with other cities.

The court overrules the objections to the adequacy of
the relief provide under the agreement.  First, objectors are
incorrect that § 35.150 requires a shorter term for this
agreement.  Section 35.150 does not govern the new construction
or alteration of curb ramps.  Liberty Resources I, 2020 WL
3642484, at *3-5.  Instead, the regulation compels public
entities to make accessible their "services, programs, or
activities" and to create a "transition plan" whereby a public

-21-

entity must conduct a self-assessment of the condition of its
pedestrian facilities and create a remediation plan.  In
granting the City's motion to dismiss partially the plaintiffs'
complaint, the court ruled that the regulation does not apply
because sidewalk curb ramps are not a service, program, or
activity, and that the ADA does not permit a private right of
action to force the City to create a transition plan.  See id.
Rather, the pertinent regulations on installation and
maintenance of sidewalk curb ramps, §§ 35.133, 35.151, do not
impose any time limits on public entities.

        Second, the court finds that the fifteen-year period
is substantively reasonable.  Objectors reference settlements
reached between cities and the Department of Justice with three-
year terms, such as with Atlanta, Detroit, and Milwaukee,[6] but
those agreements are inapposite.  None of those agreements was
the product of federal court litigation.  The enforcement
mechanism of those agreements provides that the Department of
Justice must file a separate lawsuit.  Furthermore, those

---

6.    Settlement Agreement Between the United States of America
and Atlanta, Georgia Under the Americans with Disabilities Act,
https://archive.ada.gov/atlanta_pca/atlanta_sa.htm (Dec. 10,
2009); Settlement Agreement Between the United States of America
and City of Detroit, Michigan,
https://archive.ada.gov/detroitmi.htm (Feb. 27, 2004);
Settlement Agreement Between the United States of America and
the City of Milwaukee, Wisconsin,
https://archive.ada.gov/milwaukeeriverwlk.htm (July 6, 2006).

agreements permit the cities to request extensions for
compliance which may "not be unreasonably withheld or delayed."
See, e.g., Settlement Agreement Between the United States of
America and Atlanta, Georgia Under the Americans with
Disabilities Act,
https://archive.ada.gov/atlanta_pca/atlanta_sa.htm (Dec. 10,
2009).  Rather, the parties have identified settlements in
several similar ADA pedestrian accessibility class actions with
compliance terms that range from twelve to twenty years.[7]  The
court finds that the private enforcement settlements are
comparable and that the fifteen-year period is reasonable by
comparison.

        Further, the relief provided under the settlement is
adequate when weighed against the burdens that would be placed
on the parties if this case were to be tried.  "Legal
complexity" and "factual complexity . . . weigh in favor of
settlement."  William B. Rubenstein, 4 Newberg and Rubenstein on
Class Actions § 13:52 (6th ed. 2022).  This case was rife with

---

7.   Consent Decree, Muehe v. City of Boston, Civ. A. No.
21-11080 (D. Mass. July 2, 2021), Doc. No. 12-2, at 61 (over
twelve years); Consent Decree, Hines v. City of Portland, Civ.
A. No. 18-869 (D. Or. Sept. 27, 2018), Doc. No. 40-1, at 14
(twelve years); Amended Final Judgment and Order Approving Class
Action Settlement, Reynoldson v. City of Seattle, Civ. A. No.
15-1608 (W.D. Wash. Nov. 1, 2017) (eighteen years), Doc. No. 61,
4-5; Settlement Agreement and Release of Claims, Ochoa v. City
of Long Beach, Civ. A. No. 14-4307 (C.D. Cal. Mar. 10, 2017),
ECF No. 145-2, at 47-48 (twenty years).

legal and factual complexity.  For example, the court noted the
complexity of the legal framework for ADA claims related to curb
ramp installation, alteration, and maintenance in its summary
judgment opinion:

> A public entity's obligation to install curb
> ramps, and the applicable design standard,
> varies depending on when the adjoining
> street was altered or constructed. . . .
> [Section] 35.151 affords public entities
> certain defenses, and the availability of
> those defenses depends on site-specific
> factors such as feasibility, which is
> measured by the existing physical or site
> constraints at the time of construction.
> Section 35.151 also provides for different
> design requirements for curb ramps installed
> in different time periods.

Liberty Resources III, 2021 WL 4989700, at *4 (citations and
internal quotation marks omitted).

In addition, "to prove violations of § 35.151,
plaintiffs must prove violations as to specific curb ramps at
specific intersections."  Id. at *5.  That is, they could not
hold the City liable on the basis that its "general policies do
not conform to the regulation."  Id. at *4.  Thus, trial in this
matter would have necessitated factual findings on hundreds of
individual curb ramps.  The settlement avoids undue strain on
the resources of the court as well as those of class counsel and
the City.

The court must take into account "the terms of any
proposed award of attorney's fees, including timing of payment."

Fed. R. Civ. P. 23(e)(2)(C)(iii).  Here, the court scrutinizes
whether there has been "a tradeoff between merits relief and
attorney's fees."  William B. Rubenstein, 4 <u>Newberg and
Rubenstein on Class Actions</u> § 13:54 (6th ed. 2022).  As
explained further below, plaintiffs seek $949,178.93 in
attorney's fees, which is a reasonable award in light of the
time and effort class counsel expended in maintaining this
action.  In fact, the fee award is a significant reduction from
the lodestar.  This is a class action in which only injunctive
relief was sought.  The fee award does not impact the relief
that the settlement agreement provides.[8]  In addition, the
parties represent that they only began to negotiate the attorney
fee award amount after they had reached an agreement on the
substantive aspects of the settlement.  For all these reasons,
the court has no doubt that the substance and the timing of the
attorney's fee award under the settlement weighs in favor of
approval.

        The final factor is whether the settlement "treats
class members equitably relative to each other."  Fed. R. Civ.

_____

8.  Under the settlement, the City will also pay class
counsel's fees and costs for work necessary to monitor the
City's compliance with the agreement for its fifteen-year
duration.  Those fees are capped at $60,000 per each three-year
compliance period.  The court finds that these fees are
reasonable given the broad nature of the injunctive relief under
the settlement.

P. 23(e)(2)(D).  Here, the injunctive relief provided under the
settlement affects all class members equally.  E.g., Sourovelis
v. City of Philadelphia, 515 F. Supp. 3d 343, 358 (E.D. Pa.
2021).  Furthermore, the court notes that the settlement's
release of claims treats unnamed class members even more
favorably than it treats the named plaintiffs.  For all
plaintiffs, the release precludes any new injunctive and
declaratory relief actions over curb ramps during the
settlement's fifteen-year term.  However, the settlement
agreement only prohibits the named plaintiffs from bringing
lawsuits for monetary damages.[9]  To the extent this factor is
relevant, it too weighs in favor of approval of the settlement.

VI

The court will finally review the settlement under the
relevant Girsh factors.[10]  Because this class action seeks only

_____

9.  Objectors contend the settlement's release of claims
"negates the rights of any disabled person in Philadelphia from
filing suit under the ADA or Pennsylvania law to better their
own personal circumstances by having accessible streets."
However, the settlement does not preclude money damages claims
by unnamed class members.  Furthermore, the settlement requires
the City to provide a mechanism by which members of the public
can report noncompliant curb ramps and to report in a
transparent manner its progress in complying with the curb ramp
installation, alteration, and maintenance milestones.
Accordingly, the agreement will provide adequate alternative
avenues for individuals with disabilities affecting mobility to
seek forward-looking relief.

10.  The factors that are irrelevant for present purposes are:
"(4) the risks of establishing damages"; "(7) the ability of the

injunctive relief, certain <u>Girsh</u> factors are inapposite.  Many
of the relevant factors overlap with the Rule 23(e)(2) factors
set forth above.  For example, as to <u>Girsh</u> factors 1 and 4--"the
complexity, expense, and likely duration of the litigation"; and
"the risks of establishing liability"--the court reiterates its
finding under Rule 23(e)(2)(C): the settlement eschews the
factual and legal complexities in litigating the City's
liability for noncompliant curb ramps, which will conserve the
resources of the parties and of the court.  Similarly, the
court's finding under Rule 23(e)(2)(A) also mirrors the analysis
under the third <u>Girsh</u> factor, "the stage of the proceedings and
the amount of discovery completed."  In making this settlement,
the parties were informed by voluminous discovery and were
otherwise prepared to try the case.

          The court must consider <u>Girsh</u> factor 2, "the reaction
of the class to the settlement."  This requires the court to
look to "the number and vociferousness of the objectors" in
context with the size of the class.  <u>Chester Upland Sch. Dist.</u>
<u>v. Pennsylvania</u>, 284 F.R.D. 305, 325 (E.D. Pa. 2012) (quoting
<u>Gen. Motors</u>, 55 F.3d at 812).  As mentioned above, five

---

defendants to withstand a greater judgment"; "(8) the range of
reasonableness of the settlement fund in light of the best
possible recovery"; and "(9) the range of reasonableness of the
settlement fund to a possible recovery in light of all the
attendant risks of litigation."

individuals in a single filing raise objections to the fairness
of the settlement.  In their class certification motion,
plaintiffs established numerosity by "cit[ing] data from the
United States Census Bureau indicating that more than 143,000
non-institutionalized Philadelphia residents have an ambulatory
disability and more than 49,000 non-institutionalized
Philadelphia residents have a vision disability."  Liberty
Resources II, 2020 WL 3816109, at *3.  In addition, the class
includes not only Philadelphia residents but also individuals
who reside elsewhere and "who use or will use pedestrian rights
of way in the City of Philadelphia."  Id. at *2.  A settlement
is more likely to be fair when, as here, the small number of
objectors pales in comparison to the overall size of this class.
Williams v. City of Philadelphia, Civ. A. No. 08-1979, 2016 WL
3258377, at *4 (E.D. Pa. June 13, 2016) (citing In re Cendant
Corp. Litig., 264 F.3d 201, 235 (3d Cir. 2001)).  Furthermore,
the court notes that five class members, including three named
plaintiffs, have submitted declarations voicing support for the
settlement.  The court finds that the reaction of the class
weighs in favor of approving the settlement.

        The Sixth Girsh factor assesses "the risks of
maintaining the class action through the trial."  The City has
not challenged the certification of plaintiff's class during
this litigation.  Moreover, because the class does not exclude

-28-

individuals based on their residence outside of Philadelphia, it is unlikely that plaintiffs will cease to remain members of the class.  When "there is no apparent reason why the Court would decertify or modify the class at any time during the litigation . . . the sixth Girsh factor is neutral."  Ripley v. Sunoco, Inc., 287 F.R.D. 300, 313 (E.D. Pa. 2012).

Based on the considerations under Rule 23(e)(2) and under Girsh, the court finds that the settlement in this matter is fair, reasonable, and adequate.  The relief provided is clearly in the public interest.  Accordingly, the court will grant the joint motion of the parties for final approval of the settlement agreement.

V

The court must also review the unopposed motion of plaintiffs for attorney's fees and nontaxable costs.  After negotiations, the City has agreed to pay to plaintiffs an award of $1,100,000, which includes $949,178.93 in attorney's fees and $150,821.07 in costs.

Prevailing parties in certified class actions brought under the ADA may recover attorney's fees and nontaxable costs. See Fed. R. Civ. P. 23(h); 42 U.S.C. § 12205.  "When a court approves a settlement agreement and retains jurisdiction, there is a judicially-sanctioned material alteration in the legal relationship of the parties sufficient to confer prevailing

party status on the plaintiff under fee-shifting statutes, such
as the ADA . . . ."  <u>Jimmie v. Dep't of Pub. Welfare of Pa.</u>,
Civ. A. No. 09-1112, 2010 WL 4977331, at *2 (M.D. Pa. Dec. 2,
2010) (quoting <u>Truesdell v. Phila. Hous. Auth.</u>, 290 F.3d 159,
164-65 (3d Cir. 2002)).  Here, the court has approved a
settlement agreement under which the City has agreed to take on
additional obligations with respect to curb ramp installation,
alteration, and maintenance.  Moreover, the court will retain
jurisdiction for the purpose of enforcement of the agreement.
Accordingly, plaintiffs are the prevailing party in this action
and are entitled to recover reasonable attorney's fees and
nontaxable costs.

　　　　The court must next determine the reasonable value of
the time class counsel spent in litigating this matter.  Our
Court of Appeals has instructed that courts should apply the
lodestar formula when reviewing fee petitions in actions
primarily seeking injunctive relief such as this one.  <u>E.g.</u>,
<u>Adam X. v. N.J. Dep't of Corr.</u>, Civ. A. No. 17-188, 2022 WL
621089, at *10 (D.N.J. Mar. 3, 2022) (citing <u>Gen. Motors</u>, 55
F.3d at 821).  Under the lodestar formula, the court will
multiply the "reasonable hourly rate" by the "number of hours
reasonably expended."  <u>E.g.</u>, <u>Loughner v. Univ. of Pittsburgh</u>,
260 F.3d 173, 177 (3d Cir. 2001).

An attorney's reasonable hourly rate is "the
"prevailing market rate[ ] in the relevant community" of an
attorney with "experience and skill" comparable to that of the
prevailing party's attorney.  Id. at 180.  The court finds that
the hourly rates that class counsel seek are reasonable.[11]  They
are generally in line with the Community Legal Services attorney
fee schedule,[12] which "has been approvingly cited by the Third
Circuit as being well developed and has been found by the
Eastern District of Pennsylvania to be a fair reflection of the
prevailing market rates in [the] Philadelphia [legal market]."
Maldonado v. Houstoun, 256 F.3d 181, 187 (3d Cir. 2001) (cleaned
up).  Moreover, other courts in geographic areas with similar
market attorney rates have recently awarded fees to class
counsel at comparable rates to those which class counsel seeks
in this action.  See Adam X., 2022 WL 621089, at *11.
Accordingly, the court finds that class counsel seeks fees at
hourly rates that are reasonable.

---

11.  Plaintiffs seek fees for the work of thirteen Disability
Rights Advocates staff members.  Their hourly rates range from
$275 for paralegals to $835 for the organization's director of
litigation who has practiced for nearly thirty years.  See Doc.
# 152-3, at 7-8.

12.  See Attorney Fees, Community Legal Services of
Philadelphia, https://clsphila.org/about-community-legal-
services/attorney-fees/ (Jan. 19, 2023).

The court must also determine how many hours class
counsel reasonably expended on this matter.  The court has
reviewed the billing records that class counsel submitted with
its motion.  Here, plaintiffs contend that class counsel spent
3,377 hours of work on this matter spanning from November 2017,
when they began investigating pedestrian conditions in
Philadelphia, through April 2022, when the parties reached
agreement on the substantive terms of the settlement.  Class
counsel represent that they completed nearly 1,500 hours which,
for various reasons, it does not seek attorney's fees.  This
action has been pending for nearly four years.  Given the
breadth of this action's subject matter and the amount of
adversarial litigation that took place up until the settlement
agreement, the number of hours class counsel spent is
reasonable.

Based on the foregoing findings, class counsel's
lodestar is $1,627,563.  As mentioned above, class counsel and
the City have agreed to a proposed award of $1,100,000, which
includes $949,178.93 in fees along with $150,821.07 in costs.
The settled fee amount represents an approximate 41.7% discount
from the lodestar.  Suffice it to say, attorneys for plaintiffs
have agreed to forgo fees for a significant number of hours
expended, which "provides additional support for the requested
attorney's fees."  Blofstein v. Michael's Fam. Rest., Inc., Civ.

A. No. 17-5578, 2019 WL 3288048, at *11 (E.D. Pa. July 19, 2019).[13]

        Finally, the court must determine whether the nontaxable costs that plaintiffs seek through their fee petition are recoverable.  Class counsel asserts that the total sum of their nontaxable costs expended on this matter was $150,821.07.  This figure includes money expended for valid purposes including, among other things, expert witness fees, legal research, travel to visit clients and to attend court, and postage and delivery services.  Courts have routinely awarded costs to prevailing parties in ADA actions for each of these types of expenditures.  See, e.g., Central Bucks Sch. Dist. v. Q.M., Civ. A. No. 22-1128, 2022 WL 17339037, at *16-18 (E.D. Pa. Nov. 29, 2022).  The court finds the costs are all recoverable and otherwise reasonable.

---

13. Objectors cursorily accuse class counsel of seeking a fee award that is too high, effectively insinuating that class counsel are self-dealing at the expense of class members.  As mentioned above, the parties did not begin to negotiate attorney's fees until after they reached an agreement on the substance of the settlement.  Because this is an injunctive relief-only class action, there is no risk that the fee award will detract from any class member's recovery.  Finally, class counsel seek a significantly discounted fee award.  This objection is baseless.